LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RODNEY SANCHEZ, *on behalf of himself,*<br>*FLSA Collective Plaintiff and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>CLIPPER REALTY, INC.,<br>    d/b/a CLIPPER REALTY,<br>CLIPPER REALTY OP L.P.,<br>    d/b/a CLIPPER REALTY L.P.<br>CLIPPER REALTY CONSTRUCTION LLC,<br>CLIPPER 107 CH LLC,<br>    d/b/a CLOVER HOUSE, and<br>CLIPPER EQUITY LLC,<br>    d/b/a CLIPPER EQUITY,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff RODNEY SANCHEZ ("Plaintiff" or "SANCHEZ"), on behalf of himself and

others similarly situated, by and through his undersigned attorneys, hereby files this Class and

Collective Action Complaint against Defendants, CLIPPER REALTY INC. d/b/a CLIPPER

REALTY ("Clipper Realty"), CLIPPER REALTY OP L.P., CLIPPER REALTY

CONSTRUCTION LLC, CLIPPER 107 CH LLC d/b/a CLOVER HOUSE (collectively the

"Clipper Realty Defendants"), and CLIPPER EQUITY LLC d/b/a CLIPPER EQUITY ("Clipper

Equity") (Clipper Equity together with the Clipper Realty Defendants, collectively, the

"Defendants"), and states as follows:

1

## INTRODUCTION

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2.    Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.    Plaintiff also alleges, pursuant to NYLL § 191, that he and others similarly situated are entitled to recover from Defendants liquidated damages due to Defendants' untimely payments of wages.

4.    Plaintiff brings individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*, that he is entitled to recover from Defendants for Defendants' unlawful discrimination against him on the basis of his disability and for their retaliation against him for asserting his rights under the foregoing statutes.

5.    Despite Plaintiff's multiple efforts to contact the Union regarding his wage issues, he was told that the Union did not intend to pursue a grievance on his behalf, and the Union also encouraged him to bring this claim in court. Here, Plaintiff is not claiming that the Union breached its duty of fair representation nor claiming that Defendants failed to pay any compensation owed under the CBAs. Rather, Plaintiff is claiming that he is owed certain compensation under the FLSA and NYLL. The CBA makes no explicit reference to arbitrating charges arising under the FLSA

or NYLL. Thus, the CBA does not manifest a clear and unmistakable waiver by Union members of their rights to bring statutory claims in court.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.       Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as all Defendants are entities subject to New York's personal jurisdiction.

## PARTIES

8.       Plaintiff, RODNEY SANCHEZ, is a resident of New York County, New York.

9.       Defendants are real-estate companies, which buy, sell, develop, and provide property management for residential and commercial properties in the New York area.

10.       Defendant Clipper Realty owns, as a parent company, all Defendants except for Clipper Equity.

11.       While Clipper Equity is not a subsidiary of Clipper Realty, Clipper Equity and all the Clipper Realty Defendants operate as a single common enterprise and as joint employers for the employees at their jointly managed buildings.  Both Clipper Equity and Clipper Realty share (1) common ownership, management, and executive officers in David Bistricer, J.J. Bistricer, Sam Levinson, Jacob Schwimmer, and their family members (2) engage in interrelated operations, and (3) share centralized management.

12.       Clipper Equity and the Clipper Realty Defendants own different buildings throughout New York.  Despite owning different buildings in New York, Defendants' actions, public statements, and corporate documents, as detailed below in paragraph 15 and its subparts,

demonstrate that Defendants jointly manage the employees located at their owned and/or operated buildings.

13.     The Clipper Realty Defendants, own and operate the following buildings in New York:

      a.  1955 First Avenue in Manhattan, New York, NY 10029, which is 8 stories containing 232 units (the "Aspen Property").

      b.  10 West 65th Street, New York, NY 10023, which contains 82 residential units.

      c.  1010 Pacific Street, Brooklyn, NY 11238, a potential 175-unit residential building currently being redeveloped.

      d.  50 Murray Street, New York, NY 10007 53 Park Place, New York, NY 10007 two neighboring buildings in the Tribeca, one which is 21 stories and the second which is 12 stories, containing both residential and retail-space (the "Tribeca Houses").

      e.  1403 New York Ave, Brooklyn, NY 11210, which is a 59-building residential housing complex containing 2,493 rentable units (the "Flatbush Gardens").

      f.  141 Livingston Street in Brooklyn, Brooklyn, NY 11201, which is a 15-story office building.

      g.  107 Columbia Heights, Brooklyn, NY 11201, 11-story residential building containing approximately 160 units (the "Clover House").

14.     Defendant Clipper Equity owns and operates buildings in New York with thousands of residential units, including the building located at 125 Parkside Avenue, Brooklyn, NY 11226.

15.     The Clipper Realty Defendants and Defendant Clipper Equity are engaged in a single common enterprise and operate as joint employers for their collective employees:

      a.  All the Defendants share a common ownership and executive officers in David Bistricer, J.J. Bistricer, Sam Levinson, and Jacob Schwimmer. *See* **Exhibit A,** Clipper Realty 2021 Proxy Statement.

      b.  One hundred percent (100%) of Defendant Clipper Realty's special voting stock is wholly owned by David Bistricer, J.J. Bistricer, Sam Levinson, and

Jacob Schwimmer. *See* **Exhibit A**.  Further, Defendant Clipper Realty owners David Bistricer, J.J. Bistricer, Sam Levinson, Jacob Schwimmer, and their immediate family members own seventy percent (70%) of all stock in the company. *See* **Exhibit A**

c.  Defendant Clipper Equity is a privately held corporation wholly owned by David Bistricer, J.J. Bistricer, Sam Levinson, Jacob Schwimmer, and their immediate family members. *See* **Exhibit A.**

d.  The Clipper Realty Defendants and Defendant Clipper Equity engage in joint ventures.  *See* **Exhibit A**.

e.  The Clipper Realty Defendants and Defendant Clipper Equity share executive support services, financial controller, and payroll service among their corporations.  Defendant Clipper Realty through its subsidiary entered into a broad mutual service agreement with Clipper Equity, within which both parties agree to share, "support services[,]" including "construction and information technology services[,]" "finance services (including operations controller, payroll, billing and bank…), and "executive support services." *See* **Exhibit B**, Mutual Service Agreements.

f.  The Clipper Realty Defendants and Defendant Clipper Equity jointly manage buildings such as the Clover House where Plaintiff worked.  *See* **Exhibit A,** Financial Statement on ACRIS showing Ownership of Clover House as Clipper Realty subsidiary; *see also* **Exhibit D**, Street Easy Listing of Clipper Realty property Clover House by Clipper Equity; **Exhibit C**, Advertising for Rent of Clover House by Clipper Equity.

g.  Defendants maintained a central office at 4611 12th Avenue, Suite 1L, Brooklyn, for executive management and key managerial and support staff. *See* **Exhibit E,** Listing Headquarter Address for Clipper Equity; *see also* **Exhibit F**, Listing same Headquarter Address for Clipper Realty.

h.  Defendants operate the locations listed on their shared websites jointly.

i.  The Defendants share the same phone number, fax number, and email address for inquiries both listed online on their websites and listed for contact on the Mutual Service Agreements between both Clipper Realty and Clipper Equity. *See* **Exhibit E**; **Exhibit F**; *see also* **Exhibit B**, Defendants' Mutual Service Agreements.

j.  Employees were used interchangeably by the Defendants.  Supervisors such as Mark Gordon were assigned to supervise multiple buildings owned and managed by Defendants.  Employees such as Ronald [LNU], who worked as a doorman for Clover House trained in another of Defendants' Brooklyn buildings before working at Clover House.  Larry [LNU] worked out of multiple of Defendants' buildings including Clover House.  Marcus [LNU] who worked as a heating, ventilation, air conditioning worker at Clover House transferred on an as needed basis to all of Defendants' buildings.

k.  Plaintiff himself was considered interchangeable between the Clipper Realty Defendants and Defendant Clipper Equity. Plaintiff was an employee working for a building owned by Clipper Realty, the Clover House. However, on August 25, 2021, after being notified of this lawsuit, Defendants sent Plaintiff a letter offering immediate "unconditional employment" at a different multi-family

residence owned by Defendant CLIPPER EQUITY referred to as "The Parkside" located at 123 Parkside, Brooklyn, NY 11226. The offer letter sent to Plaintiff offered immediate employment with a statement in bold letters stating, "Please note this position pays more than your former porter position at Clover." *See* **Exhibit G**, Offer Letter to Plaintiff.

l.   All paychecks of Defendants employees are issued through a centralized shared payroll department. *See* **Exhibit B**, Mutual Service Agreements.

m.  Defendant Clipper Equity's website at https://www.clipperequity.com/ displays the logos for both Clipper Equity and Clipper Realty and are continuously fixed at all times at the top of the webpage with each logo acting as a clickable link bringing users directly to either company's main homepage. *See* **Exhibit E.**

n.   Employees employed by Defendants were subject to the same wage policies, on-boarding documents, employee policies, human resources policies and workplace rules and guidelines.

16.   Corporate Defendant, CLIPPER REALTY INC. d/b/a CLIPPER REALTY, is a business corporation duly organized under the laws of the state of Maryland with its principal place of business located at 4611 12th Avenue, Suite 1L, Brooklyn, New York 11219.

17.   Corporate Defendant, CLIPPER REALTY OP L.P., is a limited Partnership duly organized under the laws of the State of Delaware with its principal place of business located at 4611 12th Avenue, Suite 1L, Brooklyn, NY 11219.

18.   Corporate Defendant, CLIPPER REALTY CONSTRUCTION LLC, is a limited liability company duly organized under the laws of the state of Delaware with its principal place of business located at 4611 12th Avenue, Suite 1L, Brooklyn, New York 11219.

19.     Corporate Defendant CLIPPER 107 CH LLC d/b/a CLOVER HOUSE is a limited liability company duly organized under the laws of the State of Delaware with its address for service of process located at 4611 12th Avenue, Suite 1L, Brooklyn, NY 11219.

20.     Corporate Defendant, CLIPPER EQUITY LLC d/b/a CLIPPER EQUITY, is a limited liability company organized under the laws of the State of New York with its principal place of business located at 4611 12th Avenue, Suite 1L, Brooklyn, NY 11219, and an address for service of process located at PO Box 190-407, Brooklyn, NY 11219.

21.     This Court has personal jurisdiction over the Defendants in that they are incorporated in the state of New York or operate their headquarters from the State of New York.

22.     Each Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of each Defendant handles goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Defendants are thus employers subject to the jurisdiction of the FLSA.

23.     At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

24.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

25.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

26.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to construction workers, porters, concierges, superintendents, handymen, plumbers, electricians, and custodians) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

27.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

28.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

29.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including but not limited to construction workers, porters, concierges, superintendents, handymen, plumbers, electricians, and custodians) employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

30.     At all relevant times, Plaintiff and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

31.     Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

32.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

33.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to Defendants' corporate practices of (i) failing to pay wages including overtime wages for all hours worked due to time shaving, (ii) failing to pay Class Members on a weekly basis as required by New York Labor Law, (iii) failing to provide Class Members with proper wage statements with every payment of wages, and (iv)

10

failing to properly provide wage notices to Class Members, at date of hiring and dates of all wage changes, per requirements of the NYLL.

34.     Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

35.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual

members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

37.     Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

38.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e) Whether Defendants paid Plaintiff and Class Members for all hours worked given Defendants' time shaving practices;

f) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL; and

g) Whether Defendants provided proper wage notices to Plaintiff and Class Members per requirements of the NYLL.

h) Whether Defendants paid Plaintiff and Class Members their lawful wages on a weekly basis per the requirements of NYLL §191.

## STATEMENT OF FACTS

*Wage and Hour Allegations:*

39.     In or about September 2019, Plaintiff was hired by Defendants to work as a porter for one of Defendants' developments, Clover House located at 107 Columbia Heights, Brooklyn, NY 11201. Plaintiff's employment was terminated in or around September 15, 2020.

40.     As part of Plaintiff's hiring, he was required to undergo a training period as a porter and construction worker.  Plaintiff's training period lasted two (2) weeks.  During these two (2) weeks, he worked to assist in both the construction work occurring on the façade of the building and as a porter within the building.  Plaintiff worked a total of ninety (90) hours these first two (2) weeks, which were not compensated by Defendants.  After this point, Plaintiff worked solely as a porter for Defendants.

41.     Throughout the remainder of Plaintiff's employment, Plaintiff was scheduled to work five (5) days per week, from 3:00 p.m. until 12:00 a.m. with an hour off for lunch for a total of forty (40) hours per week.  After his first two weeks of employment, Plaintiff was paid at a rate of eighteen dollars ($18.00) per hour.

42.     FLSA Collective Plaintiffs and Class members were scheduled to work similar hours and at a similar rate of pay as Plaintiff.

43.     At all relevant times, Defendants automatically shaved one (1) hour per shift from employees' hours worked based on purported meal breaks. Based on Plaintiff's experience and observations, however, Plaintiff and all other employees were not able to take their meal breaks and were required to work through their lunch breaks. Nonetheless, Defendants automatically and

indiscriminately deducted a one (1) hour meal break from the employees' compensable work time for each shift instead of tracking actual break times (or the absence thereof) with their readily available punch clock system. Through these practices, Defendants categorically reduced their employees' compensable hours every week. As a result of Defendants' time shaving, Plaintiff, FLSA Collective Plaintiffs and the Class were not paid compensation for all hours worked.

44.     As Plaintiff, FLSA Collective Plaintiffs, and Class members were similarly scheduled for a forty-hour work week, Defendants' improperly deducted lunch hours were typically uncompensated overtime hours.

45.     Throughout his employment with Defendants, Plaintiff regularly observed and spoke to his co-workers about Defendants' pay practices and policies. Based on Plaintiff's direct observations and conversations with other employees, Plaintiff, FLSA Collective Plaintiffs and Class Members were subjected to the same unlawful employment practices of time shaving.

46.     Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate for all hours worked in excess of forty (40) in each workweek due to time shaving to Plaintiff, FLSA Collective Plaintiffs and Class Members.

47.     After Plaintiff's training period during which he received no pay, Defendants paid Plaintiff wages, but failed to pay Plaintiff within seven (7) days of the end of the week in which Plaintiff earned his wages, in violation of NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiff and Class Members with checks every two (2) weeks. Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments

---

[1] See *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

48.     Defendants knew that Plaintiff and other similarly situated employees engaged in work over their lunch break, as Defendants were the ones to require such work.  Defendants knew that despite requiring such work they were automatically deducting an hour lunch break from employees' compensable time.   Moreover, Defendants knew such employees were manual workers, who are required to be paid on a weekly basis.  Defendants' violations in this action were willful.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

50.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

51.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

*Plaintiff SANCHEZ Individual Claims:*

52.      In or about August 18, 2020, Plaintiff got into a car accident and required back surgery. After back surgery, Plaintiff was set to get back to work on September 15, 2020. On September 15, 2020, Plaintiff showed up to work, but with a note from his doctor saying he should not lift items weighing more than fifty (50) pounds.  This limitation was a temporary one and resulted due to his surgery. On that same day, Defendants fired Plaintiff.   Plaintiff's union representative, Mark Gordon his supervisor, and Alexis Walberg (HR Representative) both told him "If you're not able to work at 100%, don't come back."

53.     Plaintiff's duties primarily consisted of tasks not involving the lifting of any weight. Plaintiff's duties included sweeping, mopping, vacuuming, or cleaning the floors, and stocking the bathrooms.

54.     Despite the small percentage of Plaintiff's work, which would be temporarily impacted by his temporary disability, Defendants refused to make any accommodation.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

55.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

56.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

57.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

58.     At all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

59.     At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages due because of time shaving, including overtime wages, in violation of the FLSA.

60.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs

should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

61.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

62.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

63.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

64.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, due to time shaving, plus an equal amount as liquidated damages.

65.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

66.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein

67.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

68.     Defendants knowingly and willfully failed to pay Plaintiff and Class Members the full amount of regular and overtime wages as a result of time shaving in violation of the NYLL.

69.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

70.     Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

71.     Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

72.     Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages due to time shaving, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## COUNT III

## DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292 *et seq*.)**
**(brought on Plaintiff RODNEY SANCHEZ's behalf only)**

73.     Plaintiff realleges and incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

74.     The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed,

color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

75. Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of his disability. Defendants knew Plaintiff had surgery and could not lift more than ten (10) pounds in the course of his duties as an employee for Defendants. Plaintiff met Defendants' requests and showed up ready to work on September 15, 2020.

76. Nevertheless, Defendants refused to allow Plaintiff to work and fired Plaintiff after he told them of his medical condition. Such retaliation is prohibited by the New York State Human Rights Law, which provides that it shall be an unlawful employment practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article." New York State Executive Law § 296(7).

77. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

**COUNT IV**

**DISCRIMINATION AND RETALIATION UNDER THE
NEW YORK CITY HUMAN RIGHTS LAW**

**(N.Y.C. Admin. Code § 8-101 *et seq*)
(brought on Plaintiff RODNEY SANCHEZ's behalf only)**

78. Plaintiff realleges and incorporates all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

19

79.     The New York City Administrative Code §8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

80.     Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff on the basis of his disability. Defendants knew Plaintiff had surgery and could not lift more than ten (10) pounds in the course of his duties as an employee for Defendants. Plaintiff met Defendants' requests and showed up ready to work on September 15, 2020.

81.     Nevertheless, Defendants refused to allow Plaintiff to work and they fired Plaintiff after he told them of his medical condition.

82.     Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages due to time shaving under the FLSA and NYLL;

d.  An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

e.  An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the NYLL;

f.  An award of all applicable damages under the NYSHRL and the NYCHRL;

g.  An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

i.  Designation of this action as a class action pursuant to F.R.C.P. 23;

j.  Designation of Plaintiff as Representative of the Class; and

k.  Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.

Dated: October 15, 2021              Respectfully submitted,

LEE LITIGATION GROUP, PLLC

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 1976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*