UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RODNEY SANCHEZ, *on behalf of himself, FLSA Collective Plaintiff and the Class,*

                              Plaintiff,

                    -v.-

CLIPPER REALTY, INC., *doing business as Clipper Realty*; CLIPPER REALTY OP L.P., *doing business as Clipper Realty L.P.*; CLIPPER REALTY CONSTRUCTION LLC; CLIPPER 107 CH LLC, *doing business as Clover House*; and CLIPPER EQUITY LLC, *doing business as Clipper Equity,*

                              Defendants.

---

21 Civ. 8502 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Rodney Sanchez worked as a porter in a Brooklyn apartment building from September 2019 to September 2020. He brings a putative class action against his purported former employers — Clipper Realty, Inc., Clipper Realty OP L.P., Clipper Realty Construction LLC, Clipper 107 CH LLC, and Clipper Equity LLC (collectively, "Defendants") — alleging violations of federal and state wage-and-hour laws. Defendants maintain that this Court cannot adjudicate those claims because Plaintiff agreed to submit them to arbitration through a collective bargaining agreement negotiated by his union. For reasons that follow, the Court disagrees and denies Defendants' motion to compel arbitration. The Court also denies Defendants' partial motion to dismiss, finding that Plaintiff has plausibly alleged that Defendants constitute a single integrated enterprise, and thus that each Defendant may be

considered Plaintiff's employer for purposes of federal and state employment laws.

## BACKGROUND[1]

### A.     Factual Background

#### 1.     Plaintiff's Employment at Clover House

Defendants are in the business of buying, selling, developing, and managing residential and commercial real estate in and around New York. (FAC ¶ 9).  Clipper Realty, Inc., a business corporation incorporated in Maryland, is the parent company of Clipper Realty OP L.P., Clipper Realty Construction LLC, and Clipper 107 CH LLC (collectively, the "Clipper Realty Defendants").  (*Id.* at ¶¶ 10, 18).  Clipper Equity LLC is a limited liability company incorporated in New York.  (*Id.* at ¶ 22).  In the aggregate, Defendants own and operate buildings with "thousands of rental units."  (*Id.* at ¶¶ 13-14).

Plaintiff worked as a porter at one such building, a residential development located at 107 Columbia Heights, Brooklyn, New York, 11201 ("Clover House"), from an unspecified date in or about September 2019 until

---

[1]     This Opinion draws its facts from the First Amended Complaint (Dkt. #34 (the "FAC")), the well-pleaded allegations of which are taken as true for the purposes of this Opinion, and the exhibits attached thereto.  The Court sources additional facts from the submissions of the parties in connection with Defendants' motion to compel arbitration and/or dismiss in part.  These include the declaration of Rodney Sanchez in opposition to Defendants' motion (Dkt. #47 ("Sanchez Decl.")), as well as various exhibits to the declaration of Isabella Benjamin in support of Defendants' motion, including the Collective Bargaining Agreement between Clover House and the Building Maintenance Employees Union, Local 486 (Dkt. #42-1 (the "CBA")), and the March 23, 2022 amendment to the CBA (Dkt. #42-2 (the "2022 Addendum")).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to compel arbitration and/or dismiss in part as "Def. Br." (Dkt. #41); to Plaintiff's memorandum of law in opposition to Defendants' motion as "Pl. Opp." (Dkt. #46); and to Defendants' reply memorandum as "Def. Reply" (Dkt. #51).

September 15, 2020. (FAC ¶ 41). He alleges that Defendants subjected him and similarly situated employees to four unlawful labor practices throughout his employment. Specifically, he claims that Defendants (i) failed to pay him for ninety hours of training (*id.* at ¶¶ 42-43); (ii) required him to work through his lunch breaks without pay (*id.* at ¶¶ 44-49); (iii) paid him biweekly rather than weekly as required by state law (*id.* at ¶ 50); and (iv) failed to provide him with mandatory wage statements and notices (*id.* at ¶¶ 52-53).

On or about August 18, 2020, Plaintiff underwent back surgery to address injuries he sustained in a car accident. (FAC ¶ 55). When he returned to work on September 15, 2020, he brought Defendants a note from his doctor explaining that, on a temporary basis, he should not lift items weighing more than fifty pounds. (*Id.*). Although only a "small percentage" of Plaintiff's work involved heavy lifting, Defendants fired him that same day. (*Id.* at ¶¶ 55-57).

### 2. The Alleged Enterprise

Plaintiff alleges that Defendants "operate as a single common enterprise and as joint employers for the employees at their jointly managed buildings." (FAC ¶ 11). Taking Plaintiff's allegations as true, the Court observes that Defendants have common ownership and management in David Bistricer, J.J. Bistricer, Sam Levinson, and Jacob Schwimmer (*id.* at ¶ 15(a)-(c)); share a central office as well as executive support, a financial controller, and payroll services (*id.* at ¶ 15(e), (g), (l)); jointly manage several buildings, including Clover House (*id.* at ¶ 15(f), (h)); have the same contact information (*id.* at ¶ 15(i)); and link to one other's websites (*id.* at ¶ 15(m)).

Additionally, Plaintiff alleges that multiple Defendants had a hand in his and others' employment.  For example, Plaintiff asserts that while the Clipper Realty Defendants supervised his day-to-day work, Clipper Equity managed his payroll and approved his leave requests.  (FAC ¶ 16; *see also id.*, Ex. H).  Similarly, although Plaintiff worked only at Clover House, some of his paychecks were issued by Clipper 107 CH LLC and others were issued by Clipper Realty Construction LLC.  (*Id.* at ¶ 17; *see also* Sanchez Decl., Ex. A).  Plaintiff's direct supervisor, pay rate, workweek, and other conditions of employment remained constant despite the fluctuation in his payor.  (*Id.* at ¶ 17).  And Plaintiff identified four coworkers — including a supervisor, a doorman, and a heating, ventilation, and air conditioning technician — who were transferred between Defendants' buildings as needed.  (*Id.* at ¶ 15(j)).

### 3.    The Relevant Agreements

The Building Maintenance Employees Union, Local 486, NOITU-IUJAT (the "Union") represents all of Clover House's full-time and regular part-time porters, handymen, and concierges.  (CBA 1).  The Union entered into a collective bargaining agreement (the "CBA") with Defendant Clipper 107 CH LLC effective from early March 2020[2] until February 28, 2023.  (*Id.* at 10-11).  Section VIII of the CBA contains a dispute resolution mechanism.  Specifically, it provides:

> All complaints, disputes, and grievances arising between the parties to this Agreement, except as to non-

---

[2]    The CBA's effective date is not clear from the face of the agreement.  The CBA's cover page lists an effective date of March 1, 2020, but the Union did not sign the agreement until March 6th.  (CBA 11).  This discrepancy is not material to the present dispute.

4

> payment of dues, initiation fees and insurance fund
> [contributions], which may be sued for directly in a
> court of competent jurisdiction, at the option of the
> Union, involving questions of interpretation or
> application of any clause of this Agreement, or any act
> or conduct in relation thereto, directly or indirectly,
> shall be presented by the party asserting a grievance to
> the other party.  Both parties shall thereupon attempt
> to adjust the dispute, and if no adjustment can be
> arrived at within forty-eight (48) hours, the matter shall
> be submitted for mediation or arbitration to the Public
> Employment Relations Board (PERB), American
> Arbitration Association (AAA), the Federal Mediation
> and Conciliation Service (FMCS), one of whose staff
> members shall mediate the same upon the request of
> either party, or an Arbitrator mutually agreed to by both
> parties.

(*Id.* at 5).  The CBA further states that if a dispute is submitted to arbitration,

the arbitrator's decision is final and binding upon the parties.  (*Id.*).  It also

specifies that arbitration costs will be split equally between Clover House and

the Union.  (*Id.*).

The CBA was amended on March 23, 2022.  (*See generally* 2022

Addendum; *see also* CBA 3 (explaining that the CBA can be modified through a

writing signed by a representative of Clover House and a designated Union

official)).  The addendum modified CBA's dispute resolution provision as

follows:

> Except as to nonpayment of dues, initiation fees and
> insurance fund contributions, which may be sued for
> directly in a court of competent jurisdiction at the
> option of the Union, all complaints, disputes, and
> grievances arising between the parties to this
> Agreement, involving questions of interpretation or
> application of any clause of this Agreement, or any act
> or conduct in relation thereto, directly or indirectly,
> shall be presented by the party asserting a grievance to

5

> the other party.  Both parties shall thereupon attempt
> to adjust the dispute, and if no adjustment can be
> arrived at within forty-eight (48) hours, the matter shall
> be submitted for mediation to the Federal Mediation
> and Conciliation Service, one of whose staff members
> shall mediate the same upon the request of either party.
> If the parties cannot resolve the matter at mediation,
> the dispute shall be submitted to final and binding
> arbitration before an arbitrator mutually agreed to by
> both parties …  The arbitrator shall decide all questions
> of arbitrability.

(2022 Addendum 1).  Of potential significance to the instant motion, the

addendum further defines the term "grievance" to encompass any and all

disputes over rights and duties created by the CBA, as well as rights and duties

created by "any federal, state, and/or local law or regulation," and makes the

procedure outlined in the provision the "exclusive remedy" for any such

grievances.  (*Id.*).

**B.     Procedural Background**

Plaintiff initiated this action by filing a Complaint on October 15, 2021,

on behalf of a putative class of all non-exempt workers employed by

Defendants on or before October 15, 2015.  (Dkt. #1).  The Complaint alleges

breaches of the Fair Labor Standards Act (the "FLSA") and the New York Labor

Law (the "NYLL") on behalf of Plaintiff and the putative class, as well as claims

of disability discrimination and retaliation under the New York State Human

Rights Law (the "NYSHRL") and the New York City Human Rights Law (the

"NYCHRL") on behalf of Plaintiff alone.  (*Id.*).  On request of the parties, the

Court extended Defendants' deadline to respond to the Complaint until

December 17, 2021.  (Dkt. #18).

On December 17, 2021, Defendants requested leave to file a motion to compel arbitration and, alternatively, to dismiss the claims against all Defendants other than Clipper 107 CH LLC. (Dkt. #20). The Court ordered the parties to submit a letter stating whether they wished to engage in mediation prior to motion practice. (Dkt. #21). The parties indicated their joint preference to defer mediation until the after the resolution of the contemplated motion. (Dkt. #23).

On January 5, 2022, the Court granted Defendants' request for leave and set a briefing schedule for Defendants' motion. (Dkt. #24). Defendants moved to compel arbitration and/or dismiss in part and filed accompanying papers on February 7, 2022. (Dkt. #29-32). Also on February 7, 2022, Defendants requested permission to file the CBA with certain financial and benefit terms redacted. (Dkt. #26). Recognizing Defendants' legitimate privacy interest in the redacted information and noting that the redacted portions of the document were unlikely to affect the resolution of the motion, the Court granted Defendants' request. (Dkt. #33). Rather than file a brief in opposition, Plaintiff filed an Amended Complaint on February 25, 2022. (Dkt. #34).

The Court ordered the parties to file a joint status letter proposing next steps in the case. (Dkt. #35). After reviewing the parties' submission, the Court set a schedule for Defendants to renew their motion and stayed discovery pending resolution of that motion. (Dkt. #37).

Defendants filed a renewed motion to compel arbitration and/or dismiss in part and accompanying papers on March 24, 2022. (Dkt. #40-44).

Defendants also renewed their request to file a redacted version of the CBA (Dkt. #38), and the Court granted the request for the reasons described previously (Dkt. #45 (citing Dkt. #33)).  Plaintiff filed his opposition brief and accompanying papers on April 7, 2022.  (Dkt. #46-47).  Shortly thereafter, Plaintiff voluntarily dismissed his NYSHRL and NYCHRL claims without prejudice to their re-filing in a separate state court action.  (Dkt. #50).  The Court denied Defendants' request for leave to file a reply brief in excess of the page limit (Dkt. #49), and Defendants filed their reply brief and accompanying papers on April 14, 2022 (Dkt. #51-52).  Subsequently, Defendants filed a notice of supplemental authority (Dkt. #53), to which Plaintiff promptly responded (Dkt. #54).  The motion is thus fully briefed and ripe for the Court's consideration.

## DISCUSSION

### A.    The Court Denies Defendants' Motion to Compel Arbitration

#### 1.    Applicable Law

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts."  *Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (internal quotation marks and citations omitted).  A written agreement to arbitrate disputes arising from a contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  When a contractual party "fail[s], neglect[s], or refus[es] ... to arbitrate" under the terms of an

8

arbitration agreement, another party may petition a district court for an order compelling arbitration. *Id.* § 4. A court ruling on a petition to compel arbitration must decide: (i) whether the parties agreed to arbitrate; (ii) whether the scope of that agreement encompasses the claims at issue; (iii) where statutory claims are asserted, whether the relevant legislature intended those claims to be arbitrable; and (iv) if some but not all claims are arbitrable, whether to stay the balance of the proceedings pending arbitration. *JLM Indus., Inc.* v. *Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

Motions to compel arbitration are adjudicated under a framework similar to the summary judgment standard. *Meyer*, 868 F.3d at 74 (citing *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)). "[T]he court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and draws all reasonable inferences in favor of the non-moving party." *Id.* (internal quotation marks and citations omitted and alterations adopted). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 91 (2000). It may not satisfy this burden through "general denials of the facts on which the right to arbitration depends." *Oppenheimer & Co.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). Instead, the party opposing arbitration "must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.*

Given the strong federal policy in favor of arbitration, courts generally "resolve any doubts concerning the scope of arbitrable issues 'in favor of arbitrability.'" *Daly* v. *Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1117 (2020) (quoting *State of N.Y.* v. *Oneida Indian Nation of N.Y.*, 90 F.3d 58, 61 (2d Cir. 1996)).  In so doing, courts "will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotation marks and citation omitted).  The presumption in favor of arbitrability does not, however, extend to waivers of statutory causes of action contained in collective bargaining agreements.  *Wright* v. *Univ. Mar. Serv. Corp.*, 525 U.S. 70, 79-80 (1998); *see also Abdullayeva* v. *Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) ("[A]n exception to the scope presumption applies in the context of a union's waiver of its members' right to bring statutory claims in court.").  In those circumstances, a court will compel arbitration only if the waiver of union members' right to bring claims in court is "clear and unmistakable." *Abdullayeva*, 928 F.3d at 222.

## 2.    The Court May Consider the CBA

As a threshold matter, Plaintiff maintains that he cannot be compelled to arbitrate because the Court cannot consider the CBA (and, by extension, its dispute resolution provision) at this stage in the litigation.  (Pl. Opp. 14). Specifically, Plaintiff asserts that courts may not consider a CBA that was not "pled or attached to the complaints" in deciding a motion to dismiss and must instead convert the motion to one for summary judgment.  (*Id.* (quoting

10

*Nakahata* v. *N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202-03 (2d Cir. 2013))).  This argument, however, disregards the fact that motions to compel arbitration are not evaluated through the same framework as motions to dismiss.  In deciding motions to compel arbitration, "the court considers all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits[.]"  *Meyer*, 868 F.3d at 74 (internal quotation marks and citations omitted and alterations adopted).  In fact, courts routinely consider documents outside the pleadings when evaluating motions to compel arbitration, even when the relevant complaint does not allege a violation of a collective bargaining agreement.  *See, e.g.*, *Alexander* v. *Possible Prods., Inc.*, 336 F. Supp. 3d 187, 192 n.2 (S.D.N.Y. 2018) (considering arbitration provisions in CBA and employment contract submitted in support of motion to compel arbitration); *Faggiano* v. *CVS Pharmacy, Inc.*, 283 F. Supp. 3d 33, 34 & n.1 (E.D.N.Y. 2017) (same).  The Court may consider the CBA in the context of Defendants' motion to compel arbitration.

Plaintiff next argues that even if the CBA could be considered, it is not relevant because Defendants failed to prove that he was a member of the Union subject to the CBA.  (Pl. Opp. 14-15).  The Union is "the sole and exclusive bargaining agency for all ... full-time and regular part-time employees who work as Porters, Handymen and Concierge working at 107 Columbia Heights, Brooklyn, NY."  (CBA 1).  Plaintiff's allegations bring him squarely within this definition.  He alleges that he worked as a porter at that address from

September 2019 through September 2020, the entire duration of his employment with Defendants.  (FAC ¶ 41).  Additionally, the FAC details Plaintiff's "multiple efforts to contact the Union regarding his wage issues[.]" (*Id.* at ¶ 5).  These facts belie Plaintiff's assertion that "[n]o proof has been produced" of his union membership.  (*See* Pl. Opp. 14).  Plaintiff nonetheless maintains that he is not subject to the CBA because some of his paychecks were issued by Defendant Clipper Realty Construction LLC, a non-party to the CBA.  (*Id.* at 14-15; *see also* Sanchez Decl., Ex. A).  This fact does not plausibly remove Plaintiff from the Union, because it does not change his status as a "Porter[] … working at [Clover House]."  (*See* CBA 1).  Based on the well-pleaded facts before it, the Court finds that Plaintiff was a member of the Union during his employment at Clover House.

Plaintiff's final threshold argument regarding the CBA, that it only governs disputes between the Union and CBA signatory Clipper 107 CH LLC, also fails.  (*See* Pl. Opp. 8).  Although Plaintiff is not a named party to the CBA (*see* CBA A-12), the Union had legal authority to bind Plaintiff to its terms. Unions are legally authorized to negotiate collective bargaining agreements on behalf of their members, and in so doing, may waive members' right to bring claims in court.  *See* 29 U.S.C. § 159(a) (empowering unions to represent employees in collective bargaining over "conditions of employment"); *see also 14 Penn Plaza LLC* v. *Pyett*, 556 U.S. 247, 274 (2009) (determining that arbitration provisions in collective bargaining agreements are enforceable).  The Union thus had authority to bind Plaintiff to the CBA during the duration of

12

his employment as a Clover House porter.  *See Abdullayeva*, 928 F.3d at 223 (finding CBA binding on employee because "[a]t all relevant times, [employee] was a member of the Union and employed by [defendant employer]").  In sum, the Court can and will consider the CBA in the context of Defendants' motion to compel arbitration.

### 3.    Plaintiff Is Not Obligated to Arbitrate His FLSA and NYLL Claims

Having determined that Plaintiff is subject to the CBA, the Court now considers whether its dispute resolution provision precludes this Court's review of Plaintiff's remaining claims.[3]  In this regard, Defendants maintain that both the CBA and its addendum clearly evince the parties' intent to submit statutory claims to arbitration.  (Def. Br. 6-11).  Plaintiff protests that (i) the CBA's arbitration provision is too broad to encompass statutory claims, and (ii) while the 2022 Addendum may waive court adjudication of statutory claims, it does not bind him because it was executed after his employment at Clover House ended (and, indeed, after this litigation was initiated).  (Pl. Opp. 4-8).  The Court agrees with Plaintiff on both points.

It is not disputed that parties may commit themselves to arbitrate claims arising under the FLSA and the NYLL.  *See Lawrence* v. *Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016); *see also Epic Sys. Corp.* v. *Lewis*, 138 S. Ct. 1612, 1626-27 (2018) (deeming enforceable arbitration agreements waiving collective action rights under the FLSA).  The more difficult question is whether

---

[3]    Because Plaintiff voluntarily dismissed his discrimination claims under the NYSHRL and the NYCHRL (Dkt. #50), the Court does not decide whether any arbitration provision encompasses those claims.

a given arbitration provision extends to those statutory claims.  The answer
depends on the nature of the rights asserted.  If an employee's FLSA or NYLL
claims are "substantially dependent" on or "inextricably intertwined" with an
analysis of the CBA's terms of employment, then the Labor Management
Relations Act's (the "LMRA") cause of action for breach of a CBA, 29 U.S.C.
§ 185(a), preempts the other statutory claims, and the employee must follow
the CBA's grievance and arbitration procedures prior to bringing a claim in
federal court.  *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 394 (1987); *see also*
*Dougherty* v. *Am. Tel. & Tel. Co.*, 902 F.2d 201, 203-04 (2d Cir. 1990).

By contrast, union agreements to arbitrate statutory claims that are
"truly independent" from the CBA can be enforced only if the waiver is "clear
and unmistakable."  *Wright*, 525 U.S. at 80-81.  Parties clearly and
unmistakably waive their right to bring claims in court if: "[i] the arbitration
clause contains an explicit provision whereby an employee specifically agrees to
submit all causes of action arising out of his employment to arbitration; or
[ii] … the arbitration clause specifically references or incorporates a statute into
the agreement to arbitrate disputes."  *Alderman* v. *21 Club Inc.*, 733 F. Supp.
2d 461, 469 (S.D.N.Y. 2010); *see also Lawrence*, 841 F.3d at 84 (explaining
that a "clear and unmistakable" waiver "must, at the very least, identify the
specific statutes the agreement purports to incorporate or include an
arbitration clause that explicitly refers to statutory claims" (quoting *Ibarra* v.
*United Parcel Serv.*, 695 F.3d 354, 359-60 (5th Cir. 2012)).  Waiver provisions
that can be construed to refer only to contractual disputes, "even if the issues

14

involved are coextensive" with a statutory right, are not "clear and unmistakable." *Lawrence*, 841 F.3d at 85 (concluding that CBA that "broadly prohibits the employer from engaging in unlawful discrimination and compels arbitration of 'disputes' regarding this prohibition" did not make "unmistakably clear that 'disputes' included statutory discrimination claims"). This exacting standard "ensures that employees' right to bring statutory claims in court is not waived by operation of confusing, very general arbitration clauses." *Abdullayeva*, 928 F.3d at 223 (internal quotation marks omitted).

The clear and unmistakable standard governs the present analysis. Initially, Defendants argued that Plaintiff's FLSA and NYLL claims overlapped with Plaintiff's rights under the CBA such that the LMRA preempted or precluded court adjudication of those claims. (Def. Br. 11-15). After reviewing Plaintiff's responsive argument (*see* Pl. Opp. 8-12), Defendants rescinded their position (Def. Reply 3 ("Defendants *withdraw* their argument that Section 3 of the LMRA precludes and preempts Plaintiff's claims.")). Both sides now agree that the proper course is for the Court to determine whether there is an arbitration provision that clearly and unmistakably encompasses Plaintiff's FLSA and NYLL claims. (*See* Def. Reply 3; Pl. Opp. 8-12).

### a.   The CBA Does Not Clearly Compel Arbitration of Plaintiff's Statutory Claims

The original CBA does not clearly and unmistakably compel arbitration of Plaintiff's FLSA and NYLL claims. Section VIII of the CBA states that "[a]ll complaints, disputes, and grievances ... involving questions of interpretation or application of any clause of this Agreement, or any act or conduct in relation

thereto, directly or indirectly," must proceed through the contractual grievance procedures, and if not resolved, "shall be submitted for mediation or arbitration."  (CBA 5).  It does not specify that disputes arising under statute — federal or otherwise — are subject to arbitration.  Nor does it reference any specific statutes.  The CBA's general language thus does not demonstrate the "clear and unmistakable" waiver required to compel arbitration of statutory claims.  *See Lawrence*, 841 F.3d at 84 (determining that provision mandating arbitration of "any disputes," without reference to statutory claims, was not clear and unmistakable waiver); *see also Alderman*, 733 F. Supp. 2d at 470 (reaching same conclusion for provision governing "[a]ll disputes concerning the application, interpretation, or construction of [the CBA]"); *McLean* v. *Garage Mgmt. Corp.*, No. 10 Civ. 3950 (DLC), 2011 WL 1143003, at *5 (S.D.N.Y. Mar. 29, 2011) (finding same for provision requiring arbitration of disputes regarding "the interpretation or application of a particular clause of [the CBA] or … an alleged violation of a particular provision of [the CBA]" (alterations in original)).

Defendants argue that the arbitration provision's reference to disputes involving "any act or conduct in relation [to the CBA], directly or indirectly" must be read to cover statutory claims because the phrase would be superfluous otherwise.  (Def. Br. 10 n.6).  It is true that contracts are construed to give meaning to every word whenever possible.  *Int'l Multifoods Corp.* v. *Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002).  Here, however, the cited provision can be read as referring to non-statutory claims that do not

16

arise directly under the CBA, but can only be resolved with reference to it. *See Shearon* v. *Comfort Tech Mech. Co., Inc.*, 936 F. Supp. 2d 143, 155 n.3 (E.D.N.Y. 2013) (interpreting identical language to encompass quasi-contract unjust enrichment and quantum meruit claims).  And Defendants provide no authority, nor has the Court located any, that the interpretive rule against superfluity overrides the requirement that waivers of statutory claims must be clear and unmistakable.  Because the phrase can be construed to refer only to contract-related disputes, the CBA does not compel Plaintiff to arbitrate his NYLL and FLSA claims. *See Lawrence*, 841 F.3d at 84-85.

### b.    The 2022 Addendum Does Clearly Compel Arbitration of Statutory Claims, But Does Not Bind Plaintiff

Unlike the CBA, the 2022 Addendum does clearly and unmistakably require arbitration of FLSA and NYLL claims.  Although it does not identify those statutes by name, it mandates a grievance procedure for all disputes "with respect to any rights or duties created … under any federal, state, and/or local law or regulation[.]"  (2022 Addendum 1).  This plainly encompasses claims under the federal FLSA and the state NYLL.  The amended provision's explicit reference to statutory claims is sufficiently clear to constitute an enforceable waiver. *See Lawrence*, 841 F.3d at 84 (explaining that an arbitration clause must reference "the statutes in question or … statutory causes of action generally").  What is less clear is whether the 2022 Addendum, which was executed eighteen months after Plaintiff's employment at Clover House ended, binds Plaintiff.

In a summary order, the Second Circuit recently declined to compel arbitration based on a provision added to a CBA months after the plaintiff's employment and union membership ended.  *See generally Agarunova* v. *Stella Orton Home Care Agency, Inc.*, 794 F. App'x 138 (2d Cir. 2020) (summary order).  The plaintiff in that case worked for a home health care agency from 2008 until April 2015.  *Agarunova* v. *Stella Orton Home Care Agency, Inc.*, No. 16 Civ. 638 (MKB), 2019 WL 1332647, at *2 (E.D.N.Y. Mar. 25, 2019).  In 2012, the plaintiff's union and employer entered into a CBA that mandated arbitration of employees' contractual claims.  *Agarunova*, 794 F. App'x at 139.  In 2014, the union and employer agreed to undertake negotiations to potentially expand the arbitration provision to include statutory claims.  *Id.*  Then, in December 2015, eight months after plaintiff stopped working for the home health care agency, the union and her former employer modified the 2012 CBA to require arbitration of certain statutory wage-and-hour claims.  *Id.*; *see also Agarunova*, 2019 WL 1332647, at *3 (providing the full text of the modified arbitration provision).

The Second Circuit determined that the plaintiff was not bound by the 2015 arbitration provision "because she was no longer an employee nor represented by the union as of … the date of the signing of the 2015 [addendum]."  *Agarunova*, 794 F. App'x at 140.  It explained that courts look to state law principles to decide whether parties agreed to arbitrate, *id.* at 139-40, and cited an intermediate New York case that found that former employees were not bound by an arbitration provision added to a CBA because they were

no longer defendant's employees when it was executed, *id.* at 140 (citing *Konstantynovska* v. *Caring Pros., Inc.*, 103 N.Y.S.3d 364, 365 (1st Dep't 2019)). Other New York State cases have reached similar conclusions. *See, e.g.*, *Pustilnik* v. *Premier Home Health Care Servs., Inc.*, 164 N.Y.S.3d 446, 446 (1st Dep't 2022) (concluding that plaintiffs who were not employed by defendant when arbitration provision was modified were not bound by modification); *Hichez* v. *United Jewish Council of the E. Side*, 117 N.Y.S.3d 214, 215-16 (1st Dep't 2020) (same); *Lorentti-Herrera* v. *All. for Health*, 104 N.Y.S.3d 103, 104 (1st Dep't 2019) (same).

Since *Agarunova*, however, at least once court in this District has found a later-amended CBA arbitration provision to be binding on former employees, albeit in a different procedural setting. *See 1199SEUI United Healthcare Workers E.* v. *PSC Cmty. Servs.*, 520 F. Supp. 3d 588, 605-08 (S.D.N.Y. 2021). That case involved a motion to confirm an arbitral award issued in favor of a class of union members against several home health care agencies for violations of wage-and-hour statutes. *Id.* at 596-98. The class included employees who had left the agencies' employ (and, consequently, their union) before the CBA's arbitration provision was amended to include statutory claims. *Id.* at 597. The arbitrator reviewed the CBA and its amendments and found that he had jurisdiction over the claims, irrespective of whether class

members' employment terminated prior to the amendment of the arbitration
provision.  *Id.*[4]

      Judge Koeltl confirmed the arbitral award over the employers' objection.
*PSC Cmty. Servs.*, 520 F. Supp. 3d at 605-08.  He explained that because the
original CBA delegated questions of arbitrability to the arbitrator, the court's
authority to second-guess the arbitrator's determination of his own jurisdiction
was severely limited.  *Id.* at 606-07.  "[G]iven the absence of temporal
limitations in the CBA or the [later amendment]" as well as "the appropriate
highly deferential review," Judge Koeltl could not say that the arbitrator's
retroactive application of the amended arbitration provision was so untethered
from the CBA that it justified disregarding the award.  *Id.* at 607.  As support,
Judge Koeltl relied on three pre-*Agarunova* cases from this District that had
bound former employees to supplemental agreements executed after their
employment.  *Id.* at 607-08 (citing *Rodriguez* v. *N.Y. Found. for Senior Citizens
Home Attendant Servs., Inc.*, No. 15 Civ. 9817 (VEC), 2016 WL 11707094, at *3
(S.D.N.Y. July 14, 2016); *Pontier* v. *U.H.O. Mgmt. Corp.*, No. 10 Civ. 8828 (RMB),
2011 WL 1346801, at *3 (S.D.N.Y. Apr. 1, 2011); *Duraku* v. *Tishman Speyer
Props., Inc.*, 714 F. Supp. 2d 470, 474 (S.D.N.Y. 2010)).  The opinion further
distinguished *Agarunova* on the grounds that *Agarunova* did not address
whether the CBA in that case delegated questions of arbitrability to the

---

[4]      The arbitrator declined jurisdiction over eight employees with pending state court cases.
*1199SEIU United Healthcare Workers E.* v. *PSC Cmty. Servs.*, 520 F. Supp. 3d 588, 597
(S.D.N.Y. 2021).

arbitrator.  *Id.* at 608; *see also Agarunova*, 794 F. App'x at 140 (finding that argument waived because it was raised for the first time on appeal).

This Court concludes that *Agarunova*, and not *PSC Community Services*, governs the present dispute.  This case involves a motion to compel arbitration, a very different context from the motion to confirm an arbitral award at issue in *PSC Community Services*.  Free from the "narrowly circumscribed and highly deferential" standard of review that governs motions to confirm arbitral awards, *see Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016), the Court is not persuaded that the Union had authority to negotiate on Plaintiff's behalf after his employment at Clover House ended.  The Union is the sole and exclusive bargaining agency for "full-time and regular part-time … Porters, Handymen and Concierge" working at Clover House.  (CBA 1).  When the CBA was amended in March 2022, Plaintiff was not a Clover House porter; he had not worked for Defendants since September 15, 2020.  (FAC ¶ 41).  Unions have "broad authority" to negotiate and administer CBAs on behalf of their members.  *See Commc'ns Workers of Am.* v. *Beck*, 487 U.S. 735, 739 (1988).  But this authority is premised on the assumptions that members can communicate their preferences to their union, and in turn, that the union will fairly represent their interests.  *See 14 Penn Plaza LLC*, 556 U.S. at 256.  Unions have no such duty to *former* members like Plaintiff, and no corresponding right to negotiate on their behalf.

Additionally, the contrary authority does not grapple with the fact that the existence of an arbitration agreement is determined by state contract law.

*See Nicosia*, 834 F.3d at 231.  When interpreting an unsettled issue of substantive state law, federal courts give "great weight" to the decisions of lower state courts.  *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 850 (2d Cir. 1992) (internal quotation and citation omitted).  When asked about the retroactive applicability of an amended CBA, New York courts have reached the same conclusion time and again: former employees are not bound by CBA amendments executed after the termination of their employment. *Konstantynovska*, 103 N.Y.S.3d at 365; *Pustilnik*, 164 N.Y.S.3d at 446; *Hichez*, 117 N.Y.S.3d at 215-16; *Lorentti-Herrera*, 104 N.Y.S.3d at 104.  The cases on which *PSC Community Services* relies — *Rodriguez, Pontier,* and *Duraku* — were all decided without the benefit of these later-issued New York decisions.  The Court sees no reason to depart from this consensus of state authority.

Finally, Defendants' argument that *Agarunova* is distinguishable is unavailing.  (*See* Def. Reply 2-3).  To review, *PSC Community Services* distinguished *Agarunova* because the CBA in that case delegated questions of arbitrability to the arbitrator, an argument not addressed in *Agarunova*.  520 F. Supp. 3d at 608.  In the instant case, by contrast, the original CBA makes no mention of who is to decide arbitrability.  (*See* CBA 5).[5]  Absent a contrary contractual agreement, arbitrability is the province of the Court.  *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) ("[T]he question of

---

[5]     The 2022 Addendum, by contrast, does specify that "t[]he arbitrator shall decide all questions of arbitrability."  (2022 Addendum 1).  Defendants do not argue that this provision controls, nor could they have based on *PSC Community Services*, which considered only the *original* CBA's delegation of questions of arbitrability.  *See* 520 F. Supp. 3d at 606.

arbitrability[] is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (internal quotations omitted and alteration adopted)).

Although the 2022 Addendum evinces a clear consent to arbitrate statutory claims, it does not apply retroactively to Plaintiff, who was neither a union member nor employed by Defendants at the time it was executed.  The Court thus denies Defendants' motion to compel arbitration.[6]

## B.    The Court Denies Defendants' Partial Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Having concluded that this dispute is properly before it, the Court now turns to Defendants' motion to dismiss the claims against Clipper Realty, Inc., Clipper Realty OP LP, and Clipper Equity LLC (collectively, the "Moving Defendants").  *See Harris* v. *TD Ameritrade Inc.,* 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018) ("[A] district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss.").

### 1.    Applicable Law

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must plead sufficient factual allegations "to state a claim

---

[6]    The Court acknowledges Plaintiff's alternative argument that the 2022 Addendum is an unenforceable attempt to curtail the rights of putative class members.  (*See* Pl. Opp. 12-14).  While the Court does not reach this argument, it shares Plaintiff's skepticism about the circumstance surrounding the CBA's amendment.  The 2022 Addendum was executed eighteen months after Plaintiff left Defendants' employ and just one day before Defendants filed their second motion to compel arbitration in this case.  Given this timing, it is hard to see the 2022 Addendum as anything but an attempt to change the terms governing this litigation.  *See United States* v. *Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977) (Friendly, J.) (noting that courts are "not required to exhibit a naiveté from which ordinary citizens are free").

to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  When evaluating the viability of Plaintiff's claims, the Court must accept as true all well-pleaded factual allegations contained in the operative Complaint.  *Id.*  Additionally, the Court may consider any written instrument attached to the Complaint as an exhibit, any statements or documents incorporated by reference in the Complaint, documents that are "integral" to the Complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken.  *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)).

### 2.  Plaintiff Plausibly Pleaded That Defendants Comprise a Single Integrated Enterprise

The Moving Defendants maintain that the statutory claims against them must be dismissed because Plaintiff failed to allege facts that could establish them as his employer.  (Def. Br. 15-22).[7]  Only an "employer" can be liable for violations of the labor rights conferred by the FLSA and the NYLL.  *In re Michael*

---

[7]    Defendants concede that Clipper 107 CH LLC employed Plaintiff during the relevant period.  (Def. Br. 2-3).  Additionally, because Clipper Realty Construction LLC issued at least four of Plaintiff's paychecks (*see* Sanchez Decl., Ex. A), Defendants recognize that Plaintiff's allegations about that Defendant's employer status are sufficient to survive a motion to dismiss (Def. Br. 15 n.7).

*Stapleton Assocs. Ltd.*, No. 17 Civ. 5468 (AJN), 2018 WL 3962931, at *2 (S.D.N.Y. Aug. 17, 2018) (citing *Herman* v. *RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). The FLSA defines "employer" as a "person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The NYLL similarly defines "employer" to mean "'any person ... employing any individual in any occupation, industry, trade, business or service' or 'any individual ... acting as employer.'" *Irizarry* v. *Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013) (quoting N.Y. Lab. Law §§ 190(3), 651(6)). Because the two statutory definitions are "nearly identical," *Olvera* v. *Bareburger Group LLC*, 73 F. Supp. 3d 201, 206 (S.D.N.Y. 2014), courts in this Circuit "have interpreted 'employer' under the NYLL in the same way they interpret 'employer' in the FLSA," *Weiss* v. *Starr Rest. Org., LP*, No. 20 Civ. 8090 (JMF), 2021 WL 3099895, at *2 n.3 (S.D.N.Y. July 21, 2021) (internal quotation mark omitted); *see also Perez* v. *Rossy's Bakery & Coffee Shop, Inc.*, No. 19 Civ. 8683 (SLC), 2021 WL 1199414, at *7 (S.D.N.Y. Mar. 30, 2021) ("[T]here appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." (internal quotation marks omitted)).

Employment is a "flexible concept ... determined on a case-by-case basis by review of the totality of the circumstances." *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008). Whether a particular defendant is an employer is not a function of formal corporate relationships; instead, the inquiry is "grounded in 'economic reality[.]'" *Id.* at 141 (quoting

*Goldberg* v. *Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).  Generally, this analysis focuses on "whether the alleged employer [i] had the power to hire and fire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records."  *Id.* at 142 (internal quotation marks and citation omitted).  This is not a rigid test; the factors are nonexclusive and flexible "to give proper effect to the broad [statutory] language[.]"  *Id.* at 143 (citing *Zheng* v. *Liberty Apparel Co.,* 355 F.3d 61, 75-76 (2d Cir. 2003)).

When multiple, nominally separate entities are actually part of a single integrated enterprise, they may be considered one employer for employment law purposes.  *Juarez* v. *449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014).[8]  As the Second Circuit explains,

> In such circumstances, of which examples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management, ... an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger "single-employer" entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer.

---

[8]  The single integrated enterprise doctrine originated in the employment discrimination context.  *See Cook* v. *Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240-42 (2d Cir. 1995) (applying the doctrine to Title VII discrimination claim).  The Second Circuit has never applied it to a FLSA claim, but "courts in the Circuit have found 'sufficient support for its application' in the breadth of the FLSA's definition of an employer and the Second Circuit's interpretation thereof."  *Flores* v. *201 W. 103 Corp.*, 256 F. Supp. 3d 433, 440 (S.D.N.Y. 2017) (quoting *Coley* v. *Vannguard Urban Improvement Ass'n, Inc.*, No. 12 Civ. 5565 (PKC) (RER), 2016 WL 4179942, at *5 (E.D.N.Y. Aug. 5, 2016)); *see also, e.g.*, *Huang* v. *Shanghai City Corp.*, 459 F. Supp. 3d 580, 586-90 (S.D.N.Y. 2020) (applying the single integrated enterprise test to FLSA and NYLL claims); *Yap* v. *Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 557-59 (S.D.N.Y. 2015) (applying the test to FLSA claim); *Juarez*, 29 F. Supp. 3d at 367-68 (same).  *But see Hart* v. *Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 n.16 (S.D.N.Y. 2013) (declining to apply integrated enterprise test because the economic realities test was more prevalent).

*Arculeo* v. *On-Site Sales & Mktg., Inc.*, 425 F.3d 193, 198 (2d Cir. 2005).  To determine whether related entities should be considered a single employer, courts adapt the traditional economic reality test to consider "[i] interrelation of operations; [ii] centralized control of labor relations; [iii] common management; and [iv] common ownership or financial control."  *Griffin* v. *Sirva Inc.*, 835 F.3d 283, 292 (2d Cir. 2016).  No factor is determinative, but "control of labor relations is the central concern."  *Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996).  Because this is a fact-specific inquiry, it is typically not decided at the motion to dismiss stage.  *Brown* v. *Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."); *see also Perez* v. *Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013) ("[O]n a motion to dismiss, the relevant inquiry is whether a defendant has been put on notice of the theory of employer liability[.]" (internal quotation marks and citation omitted)).  But if a plaintiff entirely fails to plead facts from which a factfinder can infer a defendant's control over plaintiff's employment, dismissal is appropriate.  *See Huang*, 459 F. Supp. 3d at 590; *Weiss*, 2021 WL 3099895, at *6.

Plaintiff has pleaded facts that, taken as true, suggest that all Moving Defendants operated as part of an integrated enterprise and thus qualify as a single statutory employer.  The common ownership, common management, and

interrelation of operations factors weigh in favor of an integrated enterprise finding. The Moving Defendants do not contest that they share common owners in David Bistricer, J.J. Bistricer, Sam Levinson, and Jacob Schwimmer (FAC ¶ 15(a)-(c)), or that Clipper Realty OP L.P. is a subsidiary of Clipper Realty, Inc. (*id.* at ¶ 10). Plaintiff's manager, nominally an employee of Clipper Realty, Inc., supervised employees at Clover House, which is owned by Clipper 107 CH LLC (*id.*, Ex. C), as well as a Tribeca property owned and operated by the Clipper Realty Defendants (*id.* at ¶ 15). Furthermore, the FAC suggests a high degree of interrelation among Defendants' operations. Among other things, they share a central office, finance and payroll department, phone number, email address, and at least four employees. (*Id.*). *See Bravo* v. *Est. Burger One LLC*, No. 12 Civ. 9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) (crediting single enterprise allegation sufficient where defendant restaurants jointly advertised, shared a common menu, moved employees among restaurants, and managed payroll from a central office); *Juarez*, 29 F. Supp. 3d at 367-68 (finding same based on shifting employees across locations, common ownership, and centralized management and payroll).

The most important factor — centralized control over labor relations — is a closer call. "In determining whether a plaintiff adequately alleges centralized control over labor relations … the central question is '[w]hat entity made the final decisions regarding employment matters related to the [plaintiff]?'" *Daikin Am. Inc.*, 756 F.3d at 227 (quoting *Cook*, 69 F.3d at 1240). The entity need not have "total control or ultimate authority over hiring decisions," but must

exercise "an amount of participation that is sufficient and necessary to the total employment process." *Cook*, 69 F.3d at 1241 (internal quotation omitted and alteration adopted).  This factor weighs slightly in favor of an integrated enterprise finding.   Plaintiff alleges that "Clipper Realty and Clipper Equity directly controlled the employees of the other," including through a centralized human resources department empowered to make decisions about employees' eligibility for leave.  (FAC ¶¶ 16-17).  This allegation is bolstered by emails between two Clipper Equity LLC representatives regarding the form Plaintiff had to complete to request paid family leave.  (*See id.*, Ex. H).  Only Clipper Realty Construction LLC and Clipper 107 CH LLC are listed as Plaintiff's employer on his paystubs (*see* Sanchez Decl., Ex. A), so the fact that another entity is involved in processing his leave request lends credibility to Plaintiff's integrated employer allegation.  *See Mooncake Foods*, 146 F. Supp. 3d at 559 (considering the fact that employee received a tax form from allegedly-related entity as support for common enterprise allegation).  Although Plaintiff does not allege that each Moving Defendant had authority over all major decisions regarding his employment, a jury could infer that they had *some* control over the extent and terms of his employment, particularly given the stronger allegations regarding the other factors.  *Cf. Weiss*, 2021 WL 3099895, at *5-6 (dismissing integrated enterprise allegation because employee failed to support contention that defendants transferred employees across entities and failed to

allege specific facts connecting him to the other entities); *Huang*, 459 F. Supp. 3d at 589, 592 (same).[9]

Whether Defendants are so interrelated as to constitute a single statutory employer is a close question, and, based on the allegations presented to date, Plaintiff's theory is far from airtight. But that closeness is exactly what makes this question a fact issue not susceptible to resolution at this early stage of litigation. Because discovery is needed to settle the issue definitively, the Court denies Defendants' partial motion to dismiss.

## CONCLUSION

For the reasons stated in this opinion, Defendants' motion to compel arbitration and/or dismiss in part is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 40.

The parties are hereby ORDERED to confer and submit a proposed case management plan on or before **November 21, 2022**.

SO ORDERED.

Dated:     October 31, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

[9]     On this factor, the Court gives little weight to Plaintiff's unsupported allegation that he was "hired by [all] Defendants." (FAC ¶ 41). *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (explaining that in assessing whether a pleading states a plausible claim to relief, courts disregard "mere conclusory statements").

30