UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RODNEY SANCHEZ, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

-v.-

CLIPPER REALTY, INC.,
d/b/a CLIPPER REALTY,
CLIPPER REALTY OP L.P.,
d/b/a CLIPPER REALTY OP L.P.,
CLIPPER REALTY CONSTRUCTION LLC,
CLIPPER 107 CH LLC,
d/b/a CLOVER HOUSE,
CLIPPER EQUITY LLC,
d/b/a CLIPPER EQUITY,

Defendants.

---

21 Civ. 8502 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Rodney Sanchez brings this action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, against his former employers, which he defines to include Defendants Clipper Realty, Inc., d/b/a Clipper Realty; Clipper Realty OP L.P., d/b/a Clipper Realty OP L.P.; Clipper Realty Construction LLC; Clipper 107 CH LLC, d/b/a Clover House; and Clipper Equity LLC, d/b/a Clipper Equity (collectively, "Defendants").  Plaintiff alleges that Defendants failed to pay him his full wages due to their unlawful policy of time shaving.  He now moves for conditional certification of a collective action and related relief under Section 216(b) of FLSA.  Plaintiff also moves for equitable tolling of the statute of limitations on behalf of putative collective members.  For the reasons that follow, the Court grants Plaintiff's motion for

conditional collective certification in part; approves of Plaintiff's proposed notice of the collective action, to be distributed to putative collective members (the "Proposed Notice"), with certain modifications; and denies Plaintiff's motion for equitable tolling.

## BACKGROUND[1]

### A.    Factual Background[2]

#### 1.    The Parties and Relevant Policies

Plaintiff worked for Defendants as a porter at several of Defendants' residential properties from approximately September 2019 to September 2020. (FAC ¶ 41; Sanchez Decl. ¶¶ 1, 4, 10).  Plaintiff's primary place of work was

---

[1]    This Opinion draws its facts from the Complaint (Dkt. #1 ("Compl.")) and the First Amended Complaint (Dkt. #34 ("FAC")).  The Court also relies, as appropriate, on the Declarations of Rodney Sanchez (Dkt. #84 ("Sanchez Decl.")); Israel Lugo (Dkt. #81 ("Lugo Decl.")); Larry Hutchinson (Dkt. #82 ("Hutchinson Decl.")); Marcus Rhea (Dkt. #83 ("Rhea Decl.")); and C.K. Lee (Dkt. #80 ("Lee Decl.")), submitted in connection with Plaintiff's motion for conditional certification, and certain of the exhibits attached thereto ("[Name] Decl., Ex. [ ]").

For ease of reference, the Court refers to Plaintiff's memorandum of law in support of his motion for conditional certification as "Pl. Br." (Dkt. #79); to Defendants' memorandum of law in opposition to Plaintiff's motion as "Def. Opp." (Dkt. #89) (citations to page numbers in Defendants' opposition memorandum refer to the page numbers assigned by the Court's ECF system); to Plaintiff's reply memorandum of law as "Pl. Reply" (Dkt. #95); to Plaintiff's supplemental letter in support of Plaintiff's motion as "Pl. Supp." (Dkt. #98); and to Defendants' letter reply to Plaintiff's supplemental letter as "Def. Supp." (Dkt. #103).

[2]    Plaintiff bears the burden on a Section 216(b) motion for conditional certification. Accordingly, the Court focuses primarily on Plaintiff's account of the facts at this stage of the litigation.  See *Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for a motion for conditional certification).  The Court "grant[s] the plaintiff the benefit of the doubt given the posture of this motion." *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)).  By contrast, the Court cannot and does not consider the factual assertions contained in Defendants' opposition brief.  *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015); see also *Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015).

107 Columbia Heights in Brooklyn (also known as "Clover House"), but he also sometimes worked at 50 Murray Street in Manhattan.  (*Id.*).

Defendants are real estate companies that buy, sell, develop, and manage residential and commercial properties in the New York City area.  (FAC ¶ 9).  According to Plaintiff, Defendants operate as a single enterprise and as joint employers of the employees of their jointly managed properties.  (*Id.* ¶¶ 11, 16).  Defendants utilize employees "interchangeably" among their properties, and Defendants' property managers each oversee multiple buildings owned and managed by Defendants.  (Sanchez Decl. ¶¶ 4-5).  Defendants also share a single human resources department to manage employees across properties (*Id.* ¶ 7 & Ex. B).

Shortly after he was hired by Defendants, Plaintiff was required to undergo a two-week training period, as would any incoming porter or construction worker.  (Sanchez Decl. ¶ 2).  During his training period, Plaintiff assisted with the construction of the façade of the residential property at Clover House and assisted with porter duties at the same property.  (*Id.* ¶¶ 1-2).

Following the training period, and throughout his employment with Defendants, Plaintiff was scheduled to work as a porter five days per week, Wednesday through Sunday.  (Sanchez Decl. ¶ 3).  On Thursdays, Plaintiff was scheduled to work from 12:00 p.m. until 8:00 p.m.  (*Id.*).  On all other days, Plaintiff was scheduled to work from 3:00 p.m. until 12:00 a.m., with one hour off per shift for lunch, for a total of forty hours per week.  (*Id.*; FAC ¶ 44).  After his two-week training period, Plaintiff was paid $18.00 per hour  (Sanchez

Decl. ¶ 3), an hourly rate similar to that paid to other proposed collective members (*see, e.g.*, Lugo Decl. ¶ 4).

Plaintiff alleges that, throughout his employment, he was not paid for all of the hours that he worked.  Plaintiff describes Defendants' regular practice of "time shaving" — intentionally limiting the number of hours reported on Plaintiff's time sheet, even if Plaintiff worked for more hours than reported — which resulted in Plaintiff not being paid for at least six hours of work per week, for each week that Plaintiff worked for Defendants following his training period.  (FAC ¶ 46; Sanchez Decl. ¶ 16).  More specifically, Plaintiff claims that:

- Plaintiff and other employees were not compensated for any of the ninety hours that they worked during their respective training period.  (FAC ¶ 43; Sanchez Decl. ¶ 2; Hutchinson Decl. ¶ 3).

- Plaintiff and other employees were required to work through their lunch breaks without being paid for that time.  (FAC ¶ 46; Hutchinson Decl. ¶ 6).

- Prior to January 2020, when Defendants installed clock-in machines in all managed property locations, Plaintiff and other employees were required to use "sign-in sheets" to log their worked hours.  (Sanchez Decl. ¶ 15).  However, Marc Gordon, Plaintiff's building manager, instructed Plaintiff and other employees to record only their scheduled work hours on the sign-in sheets, even if they worked additional hours before or after their scheduled shifts.  (*Id.*).

- After Defendants installed clock-in machines in all locations, starting in January 2020, Plaintiff and other employees were required to arrive to work ten to fifteen minutes before they were expected to clock-in via the machines in order to complete certain pre-shift tasks specified by Gordon.  (Sanchez Decl. ¶¶ 10-11; *see also* Hutchinson Decl. ¶ 5).

- Approximately once a week, Gordon would hold a thirty-to-forty-five-minute meeting, either when employees were clocked-out on their lunch breaks or at the end of employees' scheduled shifts. (Sanchez Decl. ¶ 13). Employees were not compensated for the time spent in these meetings. (*Id.*).

- For approximately half of the days Plaintiff worked, Gordon required Plaintiff and certain other employees to clock-out before assisting with additional tasks at the end of the day, including "cleaning the cellar, cleaning up after the construction crew, taking the trash out, and cleaning the oil pit." (Sanchez Decl. ¶ 14; *see also* Hutchinson Decl. ¶ 7).

### 2. The Collective Allegations

Plaintiff asserts that the time shaving he experienced was not unique to him, but instead was representative of a pattern across all of Defendants' properties. Plaintiff accordingly brings this action on behalf of "all non-exempt employees," including "construction workers, porters, concierges, superintendents, handymen, plumbers, electricians, and custodians," and potentially others, who were employed with Defendants during the six years prior to the filing of the complaint (the "Proposed Collective"). (Compl. ¶ 26; FAC ¶ 28). In general, Plaintiff alleges that each of these employees, regardless of their position, was subject to the same treatment as Plaintiff with respect to time shaving. (Compl. ¶ 27; FAC ¶ 29).

### B. Procedural Background

Plaintiff initiated this action by filing a complaint on October 15, 2021 (the "Complaint"). The Complaint brings claims under the FLSA and the New York Labor Law (the "NYLL") on behalf of Plaintiff and the Proposed Collective. (Compl.). The Court referred the parties to mediation on December 14, 2021,

pursuant to a pilot program in this District involving claims under the FLSA. (Dkt. #19).  The parties requested that the Court defer its referral to the mediation program until the Court resolved any motions to compel arbitration or dismiss.  (Dkt. #23).  The Court granted the parties' request and withdrew the case from mediation on January 5, 2022.  (Dkt. #24).

On February 7, 2022, Defendants filed a motion to dismiss the Complaint or, in the alternative, to stay the proceedings and compel arbitration.  (Dkt. #30).  Plaintiff filed his first amended complaint on February 25, 2022 (the "First Amended Complaint" or "FAC") (Dkt. #34). Accordingly, Defendants' February 7, 2022 motion to dismiss the Complaint or to stay proceedings was terminated as moot.  (Dkt. #35).

Defendants thereafter filed a new motion to compel arbitration on March 24, 2022.  (Dkt. #41).  Defendants' motion argued that Plaintiff's claims were governed by a Collective Bargaining Agreement effective March 1, 2020, through February 28, 2023 (the "2020 CBA"), between Clover House and the Building Maintenance Employees Union, Local 486, NOITU-IUJAT (the "Union"), and thus that Plaintiff was required to bring the claims through an arbitration proceeding rather than in federal court.  (*Id.* at 1, 5).  In particular, Defendants argued that an addendum added to the 2020 CBA, executed March 23, 2022 (the "2022 Addendum"), compelled arbitration of Plaintiff's claims.  (*Id.* at 5-6).  The 2022 Addendum added an arbitration provision to the 2020 CBA and read, in relevant part:

> [A]ll complaints, disputes, and grievances arising between the parties to this Agreement, involving

6

> questions of interpretation or application of any clause of this Agreement, or any act or conduct in relation thereto, directly or indirectly, shall be presented by the party asserting a grievance to the other party.... If the parties cannot resolve the matter at mediation, the dispute shall be submitted to final and binding arbitration before an arbitrator mutually agreed to by both parties.... The arbitrator shall decide all questions of arbitrability.

(Dkt. #41 at 5 (quoting Dkt. #42-2 (the 2022 Addendum))).

Plaintiff opposed Defendants' motion to compel arbitration on April 7, 2022, arguing that neither the 2020 CBA nor the 2022 Addendum compelled arbitration. (Dkt. #46 at 3-4). Specifically, Plaintiffs argued that the 2020 CBA did not contain a "clear and unmistakable" waiver of Plaintiff's right to pursue his statutory claims in federal court (*id.* at 1-2 (quoting *Lawrence* v. *Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83 (2d Cir. 2016)), and that the 2022 Addendum — which was executed eighteen months after Plaintiff left Defendants' employment — did not apply to Plaintiff's claims (*id.* at 4).

On October 31, 2022, the Court denied Defendants' motion to compel arbitration. (Dkt. #55). The Court found that the 2020 CBA did not compel Plaintiff to arbitrate his statutory claims because the relevant language in the 2020 CBA could be construed to refer only to contract-related disputes, not statutory claims. (*Id.* at 17). The Court further found that while the 2022 Addendum did clearly compel arbitration, it did not apply to Plaintiff, who was neither part of the Union nor employed by Defendants when it was executed. (*Id.* at 23).

7

The Court subsequently granted Defendants' motion for a stay pending interlocutory appeal from the Court's October 31, 2022 Opinion and Order denying Defendants' motion to compel arbitration.  (Dkt. #61).  On November 17, 2023, the parties jointly informed the Court that the Court's decision had been affirmed on appeal.  (Dkt. #62).  On December 18, 2023, Defendants filed an answer to Plaintiff's First Amended Complaint.  (Dkt. #69).

On February 13, 2024, Plaintiff filed the instant motion for conditional certification.  (Dkt. #78-84).  Defendants filed their memorandum of law in opposition on March 5, 2024.  (Dkt. #89).  Plaintiff thereafter filed a reply memorandum of law in further support of his motion on March 12, 2024 (Dkt. #95), as well as a supplemental letter brief on April 2, 2024, in support of his motion regarding certain evidence uncovered during discovery (Dkt. #98). Finally, Defendants filed a response to Plaintiff's supplemental letter brief on April 5, 2024.  (Dkt. #99).

## DISCUSSION

### A.   Applicable Law

#### 1.   The Fair Labor Standards Act

The FLSA permits an aggrieved employee to bring what is known as a "collective" action against her employer for unlawful employment practices. Specifically, the statute authorizes "any one or more employees[,] for and in behalf of himself or themselves and other employees similarly situated," to bring a lawsuit against her employer.  29 U.S.C. § 216(b).

Unlike class actions brought under Federal Rule of Civil Procedure 23, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness for the purposes of certification.  *Compare Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (collective action) (noting that "no showing of numerosity, typicality, commonality and representativeness need be made" (quoting *Foster* v. *Food Emporium*, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000))), *with Wilner* v. *OSI Collection Services, Inc.*, 198 F.R.D. 393, 396 (S.D.N.Y. 2001) (class action) (requiring showing of "numerosity, commonality, typicality, and adequacy of representation"); *see also* Fed. R. Civ. P. 23(a).  Also unlike Rule 23 class actions, in which putative class members must affirmatively "opt-out" to avoid being bound by the judgment, in collective actions, "only potential plaintiffs who 'opt in' by filing written consents to join the collective action can be 'bound by the judgment or benefit from it.'"  *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *2 (S.D.N.Y. Sept. 16, 2013) (quoting *Gjurovich* v. *Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (internal quotation marks omitted)).

Finally, a court presiding over a collective action is tasked with approving, at its discretion, a plaintiff's proposed procedures for "noti[fying] … potential plaintiffs of the pendency of the [collective] action and of their opportunity to opt-in as represented plaintiffs."  *Myers* v. *Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Hoffmann-La Roche Inc.* v. *Sperling*, 493 U.S. 165, 169 (1989)).

## 2.    Certifying a FLSA Collective Action

While the FLSA "does not prescribe any procedures for approval of collective actions," *Contrera* v. *Langer*, 278 F. Supp. 3d 702, 712 (S.D.N.Y. 2017), district courts have discretion "to implement [§ 216(b)] ... by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs," *Geng* v. *Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *5 (S.D.N.Y. Sept. 9, 2019) (quoting *Myers*, 624 F.3d at 554) (internal quotations omitted). "Orders authorizing notice are sometimes referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification mechanism." *Contrera*, 278 F. Supp. 3d at 712 (quoting *Myers*, 624 F.3d at 555 n.10).

In the Second Circuit, the certification of a FLSA collective action proceeds in two stages.  *Myers*, 624 F.3d at 554-55; *accord Scott* v. *Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020).  The first step ("conditional certification") requires the district court to determine whether a plaintiff is "similarly situated" with other potential plaintiffs, such that those putative plaintiffs should receive notice of the pending action and an opportunity to join it.  *Myers*, 624 F.3d at 555.  A plaintiff's burden at this stage is low; to establish that she is "similarly situated" with other potential plaintiffs, she need only "make a modest factual showing that [she] and others together were victims of a common policy or plan that violated the law." *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016); *see also*

*Myers*, 624 F.3d at 555 ("[T]he purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." (internal quotation marks omitted)); *Damassia* v. *Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("[A] plaintiff's burden at this preliminary stage is 'minimal.'" (quoting *Wraga* v. *Marble Lite, Inc.*, No. 05 Civ. 5038 (JG) (RER), 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006))).

To establish the requisite "modest factual showing," a plaintiff may "rely[] on [her] own pleadings, affidavits, [and] declarations, or the affidavits and declarations of other potential class members." *Hallissey* v. *Am. Online, Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); *Anglada* v. *Linens 'N Things, Inc.*, No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *4 (S.D.N.Y. Apr. 26, 2007). "Indeed, courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." *Hernandez* v. *Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013). Still, "certification is not automatic," *Taveras* v. *D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018), and a plaintiff must put forth more than just "unsupported assertions" to warrant conditional collective certification, *Myers*, 624 F.3d at 555 (quoting *Dybach* v. *State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Taveras*, 324 F.R.D. at 41 ("Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations.").

On their end, courts "need not [at the conditional certification stage] evaluate the underlying merits of a plaintiff's claims[.]" *Damassia*, 2006 WL 2853971, at *3; *see also Hoffman* v. *Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). That is, at the first step of the collective certification inquiry, courts should avoid "'resolv[ing] factual disputes, decid[ing] substantive issues going to the ultimate merits [of the case], or mak[ing] credibility determinations.'" *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting *Lynch* v. *United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

The second stage of collective action certification ("final certification") occurs after the court-authorized notice is sent, putative plaintiffs have had the opportunity to opt into the collective action, and discovery has closed. *See, e.g.*, *McGlone* v. *Contract Callers, Inc.*, 49 F. Supp. 3d 364, 366-67 (S.D.N.Y. 2014). This second step involves a "more stringent factual determination," *Lynch*, 491 F. Supp. 2d at 368, and requires the court, "on a fuller record," to "determin[e] whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," *Myers*, 624 F.3d at 555. If the court determines that the opt-in plaintiffs are not in fact similarly situated, any collective that was conditionally certified at the first stage of the process may be "de-certified" and "opt-in plaintiffs' claims … dismissed without prejudice." *Id.*

Because Plaintiff requests only conditional certification at this juncture, the Court need only make a preliminary determination as to whether "similarly situated" potential plaintiffs exist. *Myers*, 624 F.3d at 555.

### 3. Arbitration Agreements and Conditional Collective Certification

District courts in the Second Circuit have followed "two schools of thought" with respect to whether courts should exclude from a proposed collective putative collective members who are subject to an arbitration agreement with the employers involved in the proceeding. *McLean* v. *Cornucopia Logistics, LLC*, No. 19 Civ. 0864 (JS) (AYS), 2021 WL 3709260, at *5 (E.D.N.Y. Aug. 20, 2021). The first approach permits notice of the collective action to be sent to putative class members without concern for the existence of applicable arbitration agreements, recognizing that the enforceability of any underlying arbitration agreements "will have to be determined at a later stage in the litigation." *Geng*, 2019 WL 4493429, at *15; *see also, e.g.*, *Romero* v. *La Revise Assocs., L.L.C.*, 968 F. Supp. 2d 639, 647 (S.D.N.Y. 2013) ("[T]he existence of differences between potential plaintiffs as to the arbitrability of their claims should not act as a bar to the collective action analysis."); *Hernandez* v. *Immortal Rise, Inc.*, No. 11 Civ. 4360 (RRM) (LB), 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012) ("While the Court may eventually have to determine enforceability of these agreements, 'the existence of arbitration agreements is irrelevant to class certification, because it raises a merits-based determination.'" (quoting *D'Antuono* v. *C & C of Groton, Inc.*, No. 11 Civ. 33 (MRK), 2011 WL 5878045, at *4 (D. Conn. Nov. 23, 2011))).

The second approach allows courts to find that "putative collective members who have signed binding arbitration agreements that cover their FLSA claims ... are not similarly situated to the named plaintiff." *McLean*, 2021 WL 3709260, at *5. "[I]n certain circumstances, namely, where it is clear that members of the proposed collective are unquestionably bound to arbitrate any FLSA claims, they need not be sent notice of any right to opt-in to a collective." *Id.*; *see also, e.g., Errickson* v. *Paychex, Inc.*, 447 F. Supp. 3d 14, 27 (W.D.N.Y. 2020) (finding that employees who signed arbitration agreements are not "similarly situated" to plaintiffs because of "defenses available to defendant ... individual to [the signatories]" (quoting *Boice* v. *M+W U.S., Inc.*, 130 F. Supp. 3d 677, 693 (N.D.N.Y. 2015))); *Morganelli* v. *Chemed Corp.*, No. 10 Civ. 0876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010) (excluding from collective certification employees who signed arbitration agreements because they "are subject to unique defenses that cannot be bifurcated or sub-classed away"). The Second Circuit has not yet ruled as to the superiority of either approach.

## B.   Analysis

### 1.   The Court Will Conditionally Certify a Collective Action Limited to Certain Types of Workers Employed at Certain Locations

Plaintiff seeks conditional certification of a collective of

> all current and former non-exempt employees (including, but not limited to[,] construction workers, porters, concierge, superintendents, handymen, plumbers, electricians, and custodians) employed by Defendants at any of their locations in New York State

on or after October 15, 2015, a date which is six (6)
years prior to the filing of th[e]Complaint.

(Pl. Br. 1).  Defendants oppose conditional certification on two bases.  *First*,
Defendants argue that Plaintiff has failed to present sufficient evidence
demonstrating that members of the Proposed Collective were subject to a
common policy or plan in violation of the FLSA.  (Def. Opp. 18).  *Second*,
Defendants assert that the Proposed Collective is overbroad, and if the Court
grants conditional certification, the putative collective should be limited to
employees who worked at one location (Clover House); who had the same role
as Plaintiff (porter); and who worked for the same supervisor as Plaintiff (Marc
Gordon).  (*Id.* at 19-22).  Defendants also assert that the Proposed Collective
should exclude any worker who was required to submit her FLSA claims to
arbitration, rendering her unable to bring FLSA claims in federal court.  (*Id.* at
16-17).  For the reasons that follow, the Court finds that conditional
certification of the Proposed Collective is warranted, with certain limitations on
its scope.

> ### a.    Plaintiff Has Met His Low Burden of Establishing a Common Policy or Plan That Violates the FLSA

Defendants first argue that Plaintiff has failed to make the requisite
"modest factual showing that [he] and others together were victims of a
common policy or plan that violated the law."  *Glatt*, 811 F.3d at 540.
Specifically, Defendants assert that Plaintiff's declarations are "conspicuously
lacking in detail" and are not specific enough to establish a common policy or

plan warranting conditional collective certification.  (Def. Opp. 18-19).  The Court disagrees.

Here, it cannot be said that Plaintiff relies solely on "unsupported assertions," *Myers*, 624 F.3d at 555 (quoting *Dybach*, 942 F.2d at 1567), and "conclusory allegations[,]" *Sanchez* v. *JMP Ventures, LLC*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014), in support of his motion for conditional certification.  In addition to his own affidavit — which describes in detail Defendants' time-shaving practices — Plaintiff provides significant additional evidence to substantiate his claims.  For example, Plaintiff proffers the declarations of three other current or former employees of Defendant (*see generally* Lugo Decl.; Hutchinson Decl.; Rhea Decl.); copies of his own earnings statements (*see generally* Lee Decl., Ex. F); and an analysis of his timesheets based on Defendants' produced discovery (*see generally id.*, Ex. G).

Together, Plaintiff's evidence paints a sufficiently clear picture of Defendants' common practice of requiring certain employees to perform hours of unpaid labor each week.  In his own affidavit, Plaintiff asserts that, after arriving at work each day, but before clocking in, he was required to check in with the respective building's doorman to discuss any urgent issues and to make a plan for the day — effectively starting his workday before his time was being recorded.  (Sanchez Decl. ¶ 10).  Declarants Lugo and Hutchinson both describe similar experiences during the course of their employment with Defendants.  (Lugo Decl. ¶ 6 ("Only after getting our walkie [talkie], any needed

equipment, getting dressed and, if it was start time for our shift, we would clock-in."); Hutchinson Decl. ¶ 5 ("Employees like me were expected to get there 15 minutes early to conduct [similar] pre-shift tasks, but could not clock-in before our shift.")).  Lugo further asserted that he knew of at least two other employees, in addition to the declarants herein, who were subject to the same check-in policy.  (Lugo Decl. ¶¶ 5-6 (describing speaking with "Terry," a concierge, and "Devon," a handyman, about not being paid for all hours worked and an identical start-of-shift routine)).

In sum, Plaintiff and several coworkers reported substantially similar factual details concerning Defendants' alleged time-shaving practices.  At the conditional certification stage, this is sufficient to satisfy Plaintiff's modest burden to establish that putative plaintiffs were subject to a common policy or plan violative of the FLSA.  *See, e.g.*, *Qiang Lu* v. *Purple Sushi Inc.*, 447 F. Supp. 3d 89, 95 (S.D.N.Y. 2020) (granting conditional certification after "[c]rediting [delivery persons'] statements about the[ir] hours worked and the pay [they] received"); *Islam* v. *LX Ave. Bagels, Inc.*, No. 18 Civ. 4895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name[d] or otherwise identif[ied] specific employees that were subject to the same unlawful compensation policies" (internal quotation marks omitted)); *Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (granting conditional certification where plaintiff provided details of conversations with coworkers about "not being able to take the entirety of their lunch break" and "never being paid

17

[their] full hourly wages" (internal citations omitted)); *Iriarte* v. *Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (granting conditional certification where plaintiff declared that he had "personal knowledge" of his employer withholding overtime wages from employees based on observations and conversations with coworkers).  Accordingly, the Court will not deny conditional certification on this basis.

### b.    The Court Limits the Scope of the Proposed Collective

In addition to contesting Plaintiff's allegations of a common policy or plan, Defendants also argue that Plaintiff's Proposed Collective is overbroad with respect to the types of employees Plaintiff seeks to include and the locations at which such employees worked.  (Def. Opp. 20-21).  While the Proposed Collective consists of all non-exempt employees (Lee Decl., Ex. A at 3), Defendants assert that any collective should be limited to porters who worked at Clover House, and, even more specifically, to employees who worked for supervisor Marc Gordon — such as Plaintiff himself (Def. Opp. 20-22). Defendants also maintain that conditional certification of the Collective should exclude any worker who was required to submit any FLSA claims to arbitration.  (*Id.* at 4, 8-9).  The Court addresses each objection in turn.

### i.    Employment Type and Location

As to the types of employees who should be included in the collective, the Court agrees with Defendants that the Proposed Collective casts too wide a net. Specifically, the Court finds that the collective in this action should be limited to: (i) porters, handymen, concierges, and repairmen, *i.e.*, the specific types of

employees that Plaintiff has sufficiently detailed being subject to Defendants'
common policy or plan; and (ii) employees who worked at Clover House,
50 Murray Street, and 53 Park Place, *i.e.*, the buildings at which Plaintiff and
the declarants attest to experiencing the alleged common policy or plan.[3]

"A FLSA collective may cover individuals with multiple job functions,
'provided that [all included types of employees] are subject to a common
unlawful policy or practice.'" *Gomez* v. *Kitchenette 123 Inc.*, No. 16 Civ. 3302
(AJN), 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (quoting *Zaldivar* v.
*JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 323 (E.D.N.Y. 2016)).  Where a
plaintiff fails to provide sufficient details that such common unlawful policy or
practice affected employees in certain job functions or roles, courts will limit
the collective to only those job functions as to which the plaintiff surmounted
her evidentiary burden.  *See, e.g.*, *id.* (conditionally certifying collective of
delivery persons, but not all tipped employees, because "the assertions in the
affidavit that go beyond delivery persons [were] insufficiently detailed to justify
certification of a broader collective").

---

[3]     Defendants argue that the putative collective should be limited by supervisor, namely
limited to employees who were supervised by Gordon during Plaintiff's employment.
(Def. Opp. 21-22).  Plaintiff and declarants Lugo and Hutchinson describe Gordon
requiring employees under his supervision to complete work tasks while off-the-clock.
(*See, e.g.*, Sanchez Decl. ¶ 15 (even if Plaintiff and coworkers worked more than their
scheduled hours, "Gordon instructed [employees] to record only [their] scheduled
hours" on their sign-in sheets); Lugo Decl. ¶ 8 (describing Gordon requiring Hutchinson
and others to continue working on the lunch break); Hutchinson Decl. ¶ 6 (similarly
describing Gordon requiring Hutchinson and others to work off-the-clock during the
lunch break)).  However, there is no evidence that Gordon was personally responsible
for the common policy of requiring employees to perform work without compensation.
Accordingly, the Court limits the collective by employees' location rather than by their
supervisor.

Because Plaintiff has put forward adequate evidence to show a common policy or plan based on his coworkers' statements, it follows that the putative FLSA violations extend to these coworkers' positions as well.  *See, e.g., Zhao* v. *Surge Priv. Equity LLC*, No. 22 Civ. 7314 (KPF), 2023 WL 3477591, at *6 (S.D.N.Y. May 16, 2023) (conditionally certifying a collective of "dry cleaners, pressers, packers, laundry workers, linen section workers, and ironing workers, as Plaintiff submitted information substantiating that workers in such positions were subject to a common unlawful compensation policy"); *Summa* v. *Hofstra Univ.*, 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) ("That there are variations in positions and job functions do not, at this preliminary stage, change the result....  [The] determination that collective certification was proper cannot be labeled clearly erroneous or clearly contrary to law.").  Specifically, in Plaintiff's declaration, he alleges that he was subject to Defendants' time-shaving practices in his role as a porter.  (Sanchez Decl. ¶¶ 1-2).  And Lugo's declaration describes his conversations with coworkers, revealing how others — specifically porters, handymen, concierges, and at least one HVAC repairman — were also subject to Defendants' time-shaving practices.  (Lugo Decl. ¶¶ 5-6).  These declarations are sufficient to link these job functions to Defendants' common policy or plan.  *See, e.g.*, *Yuefeng Shi* v. *TL & CG Inc.*, No. 19 Civ. 8502 (SN), 2020 WL 4586359, at *2 (S.D.N.Y. Aug. 10, 2020) ("A plaintiff may present evidence of a common policy through pleadings, affidavits, and declarations, including any hearsay statements contained therein.").

Plaintiff does not, however, provide any allegations establishing a common plan extending beyond the above-mentioned types of employees, nor beyond the specifically mentioned buildings where Plaintiff and the declarants worked.  (*See* Lugo Decl. ¶ 1 (declaring that Lugo worked at Clover House, 50 Murray Street, and 53 Park Place); Hutchinson Decl. ¶ 4 (declaring that Hutchinson covered building maintenance issues at 50 Murray Street and 53 Park Place, as well as unspecified "other buildings"); Sanchez Decl. ¶¶ 1, 4 (declaring that Sanchez worked primarily at Clover House and would also cover shifts at 50 Murray Street)).[4]  The Court thus finds that porters, handymen, concierges, and repairmen who worked at Clover House, 50 Murray Street, and 53 Park Place are the only types of employees to which Plaintiff has shown himself to be "similarly situated" with respect to the alleged FLSA violations.

### ii.      Employees Subject to Arbitration Agreements

The Court further finds that employees who are bound by the 2022 Addendum or the collective bargaining agreement between the Union and Clover House effective March 1, 2023, through February 28, 2025 (the "2023 CBA") — which incorporated the same arbitration agreement as the 2022 Addendum (*see generally* Dkt. #91-3 (2023 CBA)) — ought to be excluded from the collective.  As discussed above, courts in this Circuit and District routinely

---

[4]     Rhea's declaration asserts that he worked at twelve different locations while employed by Clipper.  (Rhea Decl. ¶ 3).  Because Rhea's declaration does not include allegations of the same common time-shaving policy and plan as Plaintiff's, Lugo's, and Hutchinson's respective declarations, however, the Court finds that Plaintiff has not met the modest burden necessary for the Court to conclude that Rhea or other employees working at locations in addition to the above-mentioned three addresses were "similarly situated" to Plaintiff.

permit plaintiffs to send notice of a collective action to putative collective members who may be subject to a controlling arbitration agreement. *See, e.g.*, *Geng*, 2019 WL 4493429, at *9 (conditionally certifying collective and "endorsing sending notice of a collective action to potential opt-ins who may be party to an arbitration agreement"). But, in other cases, "where it is clear that members of the proposed collective are unquestionably bound to arbitrate any FLSA claims," courts have found that such employees "need not be sent notice of any right to opt-in to a collective." *McLean*, 2021 WL 3709260, at *5. Here, because it is clear that the members of the Proposed Collective who are subject to the 2022 Addendum or 2023 CBA are bound to arbitrate their FLSA claims, the Court finds it prudent to exclude them.

By way of background, in its Opinion denying Defendants' motion to compel arbitration (*see generally* Dkt. #55), the Court held that the 2022 Addendum (*see generally* Dkt. #42-2 (2022 Addendum)) clearly compelled arbitration of the FLSA and NYLL claims brought by employees subject to the 2022 Addendum (Dkt. #55 at 17). More specifically, the Court found that the 2022 Addendum compelled arbitration of statutory claims brought by porters, handymen, and concierges at the Clover House property who were members of the Union (Dkt. #55 at 21; *see also* Dkt. #42-1 (2020 CBA, which the 2022 Addendum modified)). The Court further held that the 2022 Addendum would have compelled arbitration here, had Plaintiff been subject to it; but Plaintiff was neither a Union member nor employed by Defendants at the time the 2022 Addendum was executed. (Dkt. #55 at 17, 21-23). It follows that potential

collective members who are subject to the 2022 Addendum are "unquestionably bound to arbitrate any FLSA claims" and accordingly "need not be sent notice of any right to opt-in to a collective." *McLean*, 2021 WL 3709260, at *5. Further, because the 2023 CBA is identical to the 2022 Addendum, the Court finds, by way of extension, that employees subject to the 2023 CBA should also be excluded from the collective.[5] The Court thus limits the collective to the above-mentioned types of employees who are bound by neither the 2022 Addendum nor the 2023 CBA.

### 2.    The Court Orders Pre-Certification Discovery[6]

Having found that conditional certification is warranted, the Court next considers the remainder of Plaintiff's motion. Namely, Plaintiff seeks an order compelling Defendants "to produce within ten days of [this] Order a list of all [potential opt-in plaintiffs] in Excel format who were employed by Defendants at any point in the six years prior to the filing of the Complaint with the following information: names, titles, compensation rates, last known mailing addresses, email addresses, all known mobile telephone numbers[,] and dates

---

[5]    Defendants argue that Declarants Lugo and Hutchinson were subject to the 2022 Addendum. (Def. Opp. 17.) At this point in the conditional certification proceeding, the Court cannot (and need not) determine whether any declarants, including Lugo and Hutchinson, are part of the collective due to incomplete information as to these declarants' employment histories.

[6]    Plaintiff filed a letter motion to compel discovery on June 13, 2024. (Dkt. #109). Plaintiff argues that Defendants did not comply with this Court's April 9, 2024 Order — which required Defendants to produce a sample of certain records to Plaintiffs — by not producing records pertaining to employees of all of Defendants' properties included in Plaintiff's motion for collective certification. (*Id.* at 1-2). Defendants filed a reply letter on June 14, 2024, asserting that they had complied with their discovery obligations. (Dkt. #110). The Court finds that this Opinion renders Plaintiff's letter motion moot and orders pre-certification discovery as detailed herein. *See infra.*

of employment." (Pl. Br. 23).[7]  If the potential opt-in plaintiffs' names and contact information are insufficient to effectuate notice, Plaintiff also requests the social security numbers of potential opt-in plaintiffs for Plaintiff's counsel to "perform a skip trace to obtain a valid address." (*Id.*).  Defendants have not opposed Plaintiff's request, except with respect to the request for potential opt-in plaintiffs' social security numbers.  (Def. Opp. 24-25).

The Court finds that production of the potential opt-in plaintiffs' contact information detailed above, except for social security numbers, is warranted; the Court will provide Defendants within fourteen, rather than ten, days — consistent with Circuit-wide precedent — from the entry of this Opinion to make such production.  *See, e.g.*, *Benavides* v. *Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016) ("Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action." (internal citations omitted) (collecting cases)).

The Court agrees with Defendants that Plaintiff's request for social security numbers is, at this stage in the collective certification process,

---

[7]     Plaintiff initially requested the above-mentioned information for all "Covered Employees," which he defined as "all current and former non-exempt employees (including, but not limited to[,] construction workers, porters, concierge, superintendents, handymen, plumbers, electricians, and custodians) employed by Defendants at any of their locations in New York State" between October 15, 2015 (six years prior to the Complaint), and the present.  (Pl. Br. 1).  Because the Court has now limited the potential collective (*see supra* pp. 18-23), the Court refers to the potential opt-in plaintiffs as "potential opt-in plaintiffs" in place of "Covered Employees."

"inappropriate, or at the very least, premature." (Def. Opp. 24). *See Jacob* v. *Duane Reade, Inc.*, No. 11 Civ. 160 (JPO), 2012 WL 260230, at *9 (S.D.N.Y. Jan. 27, 2012) (denying production of social security numbers because plaintiffs "failed to justify the necessity of social security numbers"). Plaintiff has not provided the Court with any evidence to indicate that he will be unable to locate putative collective members absent their social security numbers. Accordingly, the Court denies, without prejudice to renew, Plaintiff's request for the production of potential opt-in plaintiffs' social security numbers.

The Court thus orders Defendants to produce potential opt-in plaintiffs' "names, titles, compensation rates, last known mailing addresses, email addresses, all known mobile telephone numbers[,] and dates of employment" within fourteen days of this Opinion. (Pl. Br. 23).[8]

### 3. The Court Orders Modified Notice

The Court next discusses the scope and substance of the notice that will be provided to putative members of the collective.[9] The Court has reviewed Plaintiff's Proposed Notice, submitted with his motion for conditional certification, which requests: (i) an opt-in notice period of six years (Pl. Br. 22); and (ii) permission to distribute notice by mail, email, and text message (*id.* at

---

[8]    Based on the Court's analysis of the appropriate temporal scope of the notice, Plaintiff is only entitled to the above-mentioned information for employees who worked for Defendants within three years prior to the filing of the Complaint in this case. *See infra* pp. 26-30.

[9]    Plaintiff also submitted a proposed "Consent to Sue" form alongside his Proposed Notice. (Lee Decl., Ex. A at 5). Defendants have not raised any objections to this proposed form, and accordingly, the Court grants Plaintiff's motion to distribute the form. However, Plaintiff is directed to amend the form to reflect this Opinion's limitations on the putative collective. *See supra* pp. 18-23.

24).  Plaintiff's Proposed Notice also includes an extensive list of potential types of employees whom he asserts (as above) should be included in the class.  (Lee Decl., Ex. A at 2).  Defendants, on the other hand, argue that the Proposed Notice is "overbroad and inappropriate" — but that, if the Court approves any notice, it should be far more narrowly circumscribed than Plaintiff's proposed version.  (Def. Opp. 24-25).

In reviewing Plaintiff's Proposed Notice, the Court first addresses the temporal scope of the notice and opt-in periods.  Second, the Court discusses the form and method of notice distribution.  Third, the Court addresses the content of the notice.  Ultimately, the Court approves Plaintiff's Proposed Notice with certain modifications, as detailed below.

### a.    The Temporal Scope of the Notice and Opt-In Periods

The Court first addresses the appropriate temporal scope of the notice period, which corresponds to the time that an employee had to be employed by a particular defendant-employer to be eligible to receive notice of the collective. The Court next turns to the appropriate time frame for the opt-in period, which corresponds to the time that a potential collective member has to join the collective after notice has been sent.

### i.    The Notice Period

Plaintiff here seeks a notice period of six years and requests that the FLSA statute of limitations be tolled from the filing of the Complaint until Plaintiff has sent out notice to potential opt-in plaintiffs.  (Pl. Br. 22, 25). Defendants argue that a two- or three-year notice period is more appropriate,

as the FLSA has a maximum three-year statute of limitations, and object to Plaintiff's request for equitable tolling.  (Def. Opp. 23, 25-26).  The Court agrees with Defendants; finds that a three-year notice period is appropriate; and denies without prejudice to renew Plaintiff's request for equitable tolling.

The FLSA's statute of limitations for willful violations of its overtime provisions is three years.  *Glass* v. *A.K. Allen Co., Inc.*, No. 10 Civ. 804 (ADS) (ETB), 2010 WL 11632764, at *2 (E.D.N.Y. Oct. 21, 2010).  For non-willful violations of the FLSA's overtime provisions, the statute of limitations is two years.  (*Id.*).  Accordingly, in FLSA cases, courts frequently set a notice period spanning the three years preceding the filing of the complaint.  *See, e.g.*, *Mongiove* v. *Nate's Corp.*, No. 15 Civ. 1024 (NGG) (RML), 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016).  In the Second Circuit, some courts have allowed six-year notice periods "in conditionally certified FLSA collective actions which also involve NYLL claims," on account of the NYLL's six-year statute of limitations.  *Franze* v. *Bimbo Foods Bakeries Distrib.*, LLC, No. 17 Civ. 3556 (NSR) (JCM), 2019 WL 1417125, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases).  However, "when the motion before the court seeks certification under the FLSA rather than under Federal Rule[] of Civil Procedure Rule 23 in connection with NYLL claims," the more common practice is "to use a three-year rather than six-year notice period."  *Id.* (collecting cases).  This is because, as courts have recognized, authorizing a six-year notice period for a putative collective with FLSA-only claims may promote confusion as to which claims are valid under their respective statutes of limitations, should counsel later move

for class certification of NYLL claims.  *See, e.g.*, *Bhumithanarn* v. *22 Noodle Mkt. Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (collecting cases).

Because the motion before the Court is only for conditional certification of a collective under the FLSA, and because the Court cannot be assured at this stage that counsel will later seek certification of an NYLL class, much less be successful in doing so under Rule 23, the Court does not find a six-year notice period to be appropriate.  The Court additionally does not find a two-year notice period appropriate, as Plaintiff alleges willful conduct on the part of Defendants.  (*See, e.g.*, Pl. Br. 4, 6, 13).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class."  *Cook* v. *Frank Brunckhorst Co., LLC*, No. 23 Civ. 6333 (JAM), 2024 WL 1230231, at *9 (E.D.N.Y. Mar. 22, 2024) (quoting *Jie Zhang* v. *Wen Mei, Inc.*, No. 14 Civ. 1647 (JS) (SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015)); *see also Patton* v. *Thomson Corp.*, 364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y. 2005) (finding plaintiff's allegation of willful violation of FLSA justified a three-year notice period).  Accordingly, the Court authorizes notice to be sent to the relevant putative collective members for the three years prior to the filing of the Complaint on October 15, 2021.

Having determined that the appropriate notice period is the three years prior to the filing of the Complaint, the Court turns to the related issue of equitable tolling.  Plaintiff requests that the FLSA statute of limitations be tolled from the filing of the Complaint until Plaintiff is able to send notice to

potential opt-in plaintiffs.  (Pl. Br. 25).  Plaintiff argues that equitable tolling is essential here "to avoid the prejudice to actual or potential opt-in plaintiffs due to the extraordinary circumstances it takes for a motion for certification to be moved for and decided." (*Id.*).[10]  The Court disagrees.

"Because equitable tolling issues often arise as to individual opt-in plaintiffs ..., courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date." *Yap* v. *Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Gaspar* v. *Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Douglas* v. *Anthem Prods., LLC*, No. 18 Civ. 5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) (collecting cases and explaining that "[w]hether tolling is appropriate [for potential members of the FLSA collective action] is best addressed on an individual basis").  Accordingly, the Court finds that "it is unnecessary to determine this issue now, as 'it is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice.'" *Mendoza*, 2013 WL 5211839, at *10 (quoting

---

10      Plaintiff also argues that equitable tolling is appropriate because of "delay tactics" implemented by Defendants.  (Pl. Br. 26).  Specifically, Plaintiff avers that Defendants' motion to compel arbitration, addition of the 2022 Addendum to the Collective Bargaining Agreement, and appeal of this Court's denial of their motion to compel arbitration were all undertaken with the sole intention of delaying these proceedings. (*Id.*)  While the Court granted tolling during Defendants' ultimately denied appeal of their motion to compel arbitration (*see* Dkt. #55, 61-62), the Court need not grant equitable tolling here in accordance with District practices with respect to opt-in plaintiffs joining collective litigation (*see supra* p. 27).

*Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).  The Court will "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate."  *Yuefeng Shi*, 2020 WL 4586359, at *6; *see also Zhao*, 2023 WL 3477591, at *8; *Ramirez* v. *Liberty One Group LLC*, No. 22 Civ. 5892 (KPF), 2023 WL 4541129, at *11 (S.D.N.Y. July 14, 2023); *Katz* v. *Equinox Holdings, Inc.*, No. 20 Civ. 9856 (VEC), 2022 WL 2952143, at *3-4 (S.D.N.Y. July 26, 2022) (each adopting a similar approach).

### ii.    The Opt-In Period

Plaintiff's Proposed Notice includes a sixty-day opt-in period.  (Lee Decl., Ex. A).  Defendants do not oppose this time limit for the opt-in period.  Furthermore, courts in this Circuit routinely limit the opt-in period to sixty days.  *Sharma* v. *Burberry Ltd.*, 52 F. Supp. 3d 443, 465-66 (E.D.N.Y. 2014) (citations omitted); *see also, e.g.*, *Escano* v. *N&A Produce and Grocery Corp.*, No. 14 Civ. 4239 (PAC), 2015 WL 1069384, at *3 (S.D.N.Y. Mar. 11, 2015) (ordering a sixty-day opt-in period when plaintiff "[did] not explain why [plaintiff's requested ninety-day opt-in] period is necessary").  The Court thus accepts Plaintiff's proposed sixty-day opt-in period.

### b.    The Form and Method of Distribution

Plaintiff requests that the Court permit him to distribute the notice by mail, email, and text messages.  (Pl. Br. 24).  Defendants do not oppose the form and method of distribution.  The Court thus approves sending the notice by mail, email, and text messages, each of which is a standard method of

notice distribution in this Circuit.  *See, e.g.*, *Ramirez*, 2023 WL 4541129, at *12 (approving sending notice by mail, email, and text messages); *Zhao*, 2023 WL 3477591, at *8 (same); *Geng*, 2019 WL 4493429, at *20 (same); *Knox* v. *John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017) (approving sending notice by mail and email).

### c.    The Content of the Notice

When assessing whether a proposed notice is appropriate, courts consider "the overarching policies of the collective suit provisions and whether the proposed notice provides accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate."  *Ting Qiu Qiu* v. *Shanghai Cuisine, Inc.*, No. 18 Civ. 5448 (ER), 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (quoting *Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)) (internal quotation marks omitted).  A notice must include, at a minimum:

> the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries.

*Hernandez* v. *City of New York*, No. 16 Civ. 3445 (RA), 2017 WL 2829816, at *7 (S.D.N.Y. June 29, 2017) (quoting *Jackson* v. *Bloomberg, L.P.*, 298 F.R.D. 152, 169-70 (S.D.N.Y. 2014)).

Here, Defendants take issue with the fact that the Proposed Notice:

- "[D]oes not explicitly state that the Court has not determined who is right or who is wrong";

- "[D]oes not say that the Court does not make any suggestion as to whether [a collective member] should or should not join the case"; and

- Fails to inform putative members of the collective of their "legal obligation to preserve all documents relating to their employment with Defendants, and that a failure to do so could result in court-imposed sanctions."

(Def. Opp. 24 (internal quotation marks omitted)).  Contrary to Defendants' arguments, the Proposed Notice states both that "[i]t has not been decided who is right and who is wrong," and that "[i]t is your right to join or not to join this lawsuit." (Dkt. #80-1 at 2-3).  More generally, the Proposed Notice makes it clear that its purpose is "to advise [potential collective members] of [their] right to participate in this lawsuit under the FLSA" and specifies that the notice "applies only to the FLSA collective action claims, not to the class action claim brought under the NYLL." (*Id.* at 2).

With respect to Defendants' argument that putative members should be informed of their "legal obligation to preserve all documents" relevant to the litigation, the Court finds that the notice should include this information. (Def. Opp. 24.  Notice should "advise potential plaintiffs that they may be required to provide information, appear for a deposition, or testify if they opt in." *Bittencourt* v. *Ferrara Bakery & Cafe, Inc.*, 310 F.R.D. 106, 117 (S.D.N.Y. 2015) (quoting *Jackson*, 298 F.R.D. at 170); *see also Salomon* v. *Adderly Industries, Inc.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012) (noting that in addition to

including in the notice information about the nature of the lawsuit, the fact that the court has not taken a position on the merits of the lawsuit, and how to join the lawsuit, "[c]ourts in this district have also held that potential litigants should be advised of the possibility that opt-in plaintiffs may be required to provide information, appear for a deposition, and/or testify in court").

In view of the foregoing, the Court will generally approve Plaintiff's Proposed Notice, albeit with a few modifications. *First*, and consistent with this Opinion, the notice must be modified to clarify that only porters, handymen, concierges, and repairmen — not all "non-exempt employee[s]" — are included in the collective. (Lee Decl., Ex. A at 3). *See supra* pp. 18-21. *Second*, the notice be amended to indicate that only the aforementioned employees who worked for Defendants at Clover House, 50 Murray Street, or 53 Park Place, within the time period of October 15, 2018 (three years prior to the filing of the Complaint), to the present, are eligible to "opt-in" to the collective. *See supra* pp. 19-21. *Third*, the notice must be modified to exclude the aforementioned employees who are subject to the 2022 Addendum or 2023 CBA. *See supra* pp. 21-23. *Fourth*, the notice must be modified to advise potential opt-in plaintiffs that they may be required to provide information, appear for a deposition, and testify in court. *See supra* pp. 32-33. *Fifth* and finally, the notice should be supplemented to include defense counsel's contact information. *See Norris* v. *ProCORE LLC*, No. 21 Civ 7014 (BMC), 2022 WL 1205143, at *6 (E.D.N.Y. Apr. 22, 2022) ("Inclusion of a defendant's identity and contact information is common in this [Circuit.]"); *see also Whitehorn*, 767

33

F. Supp. 2d at 451 (finding it "reasonable" to include defense counsel's contact information under a separate heading entitled "attorneys for defendants"); *Bah* v. *Shoe Mania, Inc.*, No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223, at *4 (S.D.N.Y. May 13, 2009) ("The notice must also include the contact information of counsel for Defendants as one source from whom potential plaintiffs could obtain information.").

## CONCLUSION

Plaintiff's motion for conditional certification of a collective and for Court facilitation of notice is GRANTED IN PART and DENIED IN PART. Specifically, the Court grants Plaintiff's motion for conditional certification of a collective of porters, handymen, concierges, and repairmen; who worked at Clover House, 50 Murray Street, or 53 Park Place; within the three years prior to the filing of the Complaint in this action. The Court further DENIES Plaintiff's request for equitable tolling of the statute of limitations at this time.

Plaintiff's motion to distribute the Proposed Notice to this putative collective is GRANTED in line with the modifications discussed in this Opinion. Plaintiff is directed to submit a revised proposed notice for the Court's approval consistent with this Opinion within 14 days of the date of issuance. Upon this Court's approval of the revised notice, notice may be issued consistent with its terms and this Court's orders.

Defendants are ORDERED to provide Plaintiff, in Microsoft Excel or equivalent format, the names, titles, compensation rates, last known mailing addresses, email addresses, all known telephone numbers, and dates of

employment for all employees within the putative collective within 14 days of the date of this Opinion.

Finally, the Court hereby DENIES Plaintiff's letter motion to compel discovery (Dkt. #109) as moot, consistent with the terms of this Opinion.

The Clerk of Court is directed to terminate the pending motions at docket entries 78 and 109.

SO ORDERED.

Dated:      June 25, 2024
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge