UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RODNEY SANCHEZ, *on behalf of himself, FLSA Collective Plaintiff and the Class*,<br><br>                                        Plaintiff,<br><br>                -v.-<br><br>CLIPPER REALTY, INC., *d/b/a CLIPPER REALTY, et al.*,<br><br>                                        Defendants. | 21 Civ. 8502 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

The instant wage and hours case has yielded three opinions from this Court and one from the Second Circuit. In the first opinion, *Sanchez* v. *Clipper Realty, Inc.*, 638 F. Supp. 3d 357 (S.D.N.Y. 2022) (*"Sanchez I"*), *aff'd*, No. 22-2917-cv, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (*"Sanchez III"*), the Court found that although the union of which Plaintiff Sanchez was a member had the authority to bind him to a collective bargaining agreement (or "CBA") during the term of his employment, Plaintiff was not bound by amendments to the CBA in March 2022 that purported to require arbitration of disputes between the parties as to "any federal, state, and/or local law or regulation" — here, the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). *Sanchez I*, 638 F. Supp. 3d at 468-71. In relevant part, the Court found that (i) the CBA in place during the time of Plaintiff's employment did not "clearly and unmistakably compel arbitration of Plaintiff's FLSA and NYLL claims," and (ii) the March 2022 Addendum and the 2023 CBA, which did have

sufficiently specific arbitration provisions, were not binding on Plaintiff because his employment had ended before their issuance. *Id.* In its second opinion, this Court granted Defendants' motion to stay the case while they sought interlocutory appeal of the Court's denial of their motion to compel arbitration. *Sanchez* v. *Clipper Realty, Inc.*, No. 21 Civ. 8502 (KPF), 2022 WL 17091007 (S.D.N.Y. Nov. 21, 2022) ("*Sanchez II*").

After the Second Circuit affirmed this Court's decision denying the motion to compel arbitration, *see Sanchez III*, 2023 WL 7272062, at *1-2, the parties continued with discovery and Plaintiff submitted a motion for conditional certification of a collective action under Section 216(b) of the FLSA. This motion precipitated the fourth opinion in this case, in which this Court granted in part Plaintiff's motion for conditional certification, approved in large part Plaintiff's proposed notice of the collective action, and denied Plaintiff's motion for equitable tolling. *Sanchez* v. *Clipper Realty, Inc.*, No. 21 Civ. 8502 (KPF), 2024 WL 3159821, at *1 (S.D.N.Y. June 25, 2024) ("*Sanchez IV*"). As relevant here, the Court granted the motion to conditionally certify a collective action

> limited to: (i) porters, handymen, concierges, and repairmen, *i.e.*, the specific types of employees that Plaintiff has sufficiently detailed being subject to Defendants' common policy or plan; and (ii) employees who worked at Clover House, 50 Murray Street, and 53 Park Place, *i.e.*, the buildings at which Plaintiff and the declarants attest to experiencing the alleged common policy or plan.

*Sanchez IV*, 2024 WL 3159821, at *8. However, the Court excluded from the collective those "employees who are bound by the 2022 Addendum or the

collective bargaining agreement between the Union and Clover House effective March 1, 2023, through February 28, 2025." *Id.* at *9; *see also id.* at *6 (discussing the "'two schools of thought' with respect to whether courts should exclude from a proposed collective putative collective members who are subject to an arbitration agreement with the employers involved in the proceeding").

After meeting and conferring with defense counsel, Plaintiff's counsel submitted a revised proposed collective notice, which this Court approved by endorsement dated July 16, 2024. (Dkt. #116). That same day, the Court endorsed a briefing schedule for Plaintiff's contemplated motion for interlocutory appeal of that portion of *Sanchez IV* withholding notice from putative members of the collective who were subject to the 2022 Addendum or the 2023 CBA. (Dkt. #117). The parties briefed Plaintiff's motion throughout July and August 2024. (*See* Dkt. #122 (Plaintiff's memorandum in support ("Pl. Br.")); Dkt. #127 (Defendants' memorandum in opposition ("Def. Opp.")); Dkt. #128 (Plaintiff's reply memorandum in further support ("Pl. Reply"))).

Broadly speaking, Plaintiff argues that this Court's recognition of the divide among courts in the Second Circuit as to the appropriateness of including employees subject to arbitration agreements within FLSA collectives militates in favor of interlocutory appeal, insofar as the issue implicates a "controlling question of law," as to which there is "substantial ground for difference of opinion," for which resolution would materially advance the instant litigation. (*See* Pl. Br.). Defendants object, arguing that the Court's decision as to the conditional certification of a collective action under FLSA is

3

an exercise of its discretion that did not involve a "controlling question of law," and that Plaintiff has failed to demonstrate "substantial reason to doubt the correctness of the Court's ruling." (*See* Def. Opp.). In the remainder of this Order, the Court resolves Plaintiff's motion.

## APPLICABLE LAW

A district court may certify an order for interlocutory appeal where it finds that "such order [i] involves a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The party bringing the motion to certify an order for interlocutory appeal bears the burden of demonstrating that these criteria are met. *See Casey* v. *Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005).

"To satisfy prong one of [Section] 1292(b), [the moving party] must demonstrate that the question is both controlling and a question of law." *Tantaros* v. *Fox News Network, LLC*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020). The term "question of law" "'refer[s] to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Capitol Recs., LLC* v. *Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quoting *Consub Del. LLC* v. *Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007) (internal quotation marks omitted)); *accord CBRE, Inc.* v. *Pace Gallery of N.Y., Inc.*, No. 17 Civ. 2452 (ALC) (SN), 2022 WL 683744, at *4 (S.D.N.Y. Mar. 8, 2022). A question of law is "controlling" where "'[i] reversal

4

of the district court's opinion could result in dismissal of the action, [ii] reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or [iii] the certified issue has precedential value for a large number of cases.'" *Flo & Eddie, Inc.* v. *Sirius XM Radio Inc.*, No. 13 Civ. 5784 (CM), 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015) (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997) (citing *Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)); *accord Tantaros*, 465 F. Supp. 3d at 389.

As to the second prong of Section 1292(b), substantial ground for difference of opinion on an issue exists when "[i] there is conflicting authority on the issue, or [ii] the issue is particularly difficult and of first impression for the Second Circuit." *In re Enron Corp.*, Nos. 06 Civ. 7828 (SAS) & 07 Civ. 1957 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (internal quotation marks omitted). In determining whether there is conflicting authority on an issue, the question is, put simply, whether there are "differing rulings [by district court judges] within this Circuit" on the issue. *Yu* v. *Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017).

Finally, an interlocutory appeal materially advances the ultimate termination of a litigation when it "promises to advance the time for trial or to shorten the time required for trial." *Transp. Workers Union of Am., Loc. 100, AFL-CIO* v. *N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005); *see also Primavera Familienstifung* v. *Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y.

2001). In evaluating this factor, courts must consider the "institutional efficiency of both the district court and the appellate court." *SEC* v. *Rio Tinto PLC*, No. 17 Civ. 7994 (AT) (DCF), 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021). Courts "place particular weight" on this third factor, *Transp. Workers*, 358 F. Supp. 2d at 350, which, in practice, is closely connected to the first factor, *see, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014).

Courts must assess motions to certify an order for interlocutory appeal against the backdrop of the "basic tenet of federal law [that] delay[s] appellate review until a final judgment has been entered." *Koehler* v. *Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Indeed, "'[i]nterlocutory appeals are strongly disfavored in federal practice'" because "'[m]ovants cannot invoke the appellate process as a vehicle to provide early review of difficult rulings in hard cases. Only exceptional circumstances will justify a departure from [this] basic policy[.]" *Glatt* v. *Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696, at *1 (S.D.N.Y. Sept. 17, 2013) (quoting *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (internal quotation marks omitted)); *see also Hermès Int'l* v. *Rothschild*, 590 F. Supp. 3d 647, 651 (S.D.N.Y. 2022) ("Interlocutory appeals are designed to be rare and reserved for exceptional circumstances, lest they disrupt the orderly disposition of lawsuits in their due course." (citing *SEC* v. *Citigroup Glob. Mkts., Inc.*, 827 F. Supp. 2d 336, 337 (S.D.N.Y. 2011))). Accordingly, Section 1292(b) "must be strictly construed." *Wausau Bus. Ins. Co.* v. *Turner Constr. Co.,* 151 F. Supp. 2d 488,

491 (S.D.N.Y. 2001) (internal quotation marks omitted); *accord In re Facebook*, 986 F. Supp. 2d at 530.

At the same time, "[w]hen a ruling satisfies [the Section 1292(b)] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo* v. *Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 111 (2009)). As the Second Circuit has explained, "Congress passed [Section 1292(b)] primarily to ensure that the courts of appeals would be able to 'rule on … ephemeral question[s] of law that m[ight] disappear in the light of a complete and final record.'" *Weber* v. *United States*, 484 F.3d 154, 159 (2d Cir. 2007) (omission and second and third alterations in original) (quoting *Koehler*, 101 F.3d at 864); *see also id.* ("[By enacting section 1292(b),] Congress also sought to assure the prompt resolution of knotty legal problems." (citing Note, *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. § 1292(b)*, 88 HARV. L. REV. 607, 609 (1975))).

Finally, "even where the three legislative criteria of [S]ection 1292(b) appear to be met, district courts have unfettered discretion to deny certification if other factors counsel against it." *Transp. Workers Union of Am., Loc. 100*, 358 F. Supp. 2d at 351 (internal quotation marks omitted). "Such unfettered discretion can be for 'any reason, including docket congestion' and 'the system-wide costs and benefits of allowing the appeal[.]'" *In re Facebook*, 986 F. Supp. 2d at 530 (quoting *Klinghoffer*, 921 F.2d at 24).

7

## DISCUSSION

The Court acknowledges that there is merit to certain of Plaintiff's arguments in favor of interlocutory appeal. For one thing, courts in this Circuit remain divided on the propriety of including employees potentially subject to arbitration provisions within conditionally certified collectives. *See Sanchez IV*, 2024 WL 3159821, at *6 (collecting cases); *see also Zambrano* v. *Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2021 WL 4460632, at *10 (S.D.N.Y. Sept. 28, 2021) (collecting cases). And while three circuits have found that a valid arbitration agreement can preclude issuance of notice in a FLSA collective action in certain circumstances, *see Clark* v. *A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011-12 (6th Cir. 2023); *Bigger* v. *Facebook, Inc.*, 947 F.3d 1043, 1047 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019), the Second Circuit has yet to weigh in on the issue.

Conversely, Defendants are wrong that a court's resolution of a Section 216(b) motion is a discretionary action that forecloses interlocutory appeal. *See, e.g.*, *Provencher* v. *Bimbo Bakeries USA, Inc.*, No. 22 Civ. 198 (WKS), 2024 WL 5164688, at *1 (D. Vt. June 3, 2024) (granting interlocutory appeal to consider district court's ability to exercise personal jurisdiction over employees in other states); *cf. Davella* v. *Ellis Hosp., Inc.*, No. 20 Civ. 726 (MAD) (MJK), 2024 WL 98352, at *8 (N.D.N.Y. Jan. 9, 2024) (finding that motion for interlocutory appeal of two-step conditional certification process under FLSA presented a controlling question of law as to which there was a substantial

difference of opinion, but declining to certify interlocutory appeal after concluding that resolution would not materially advance the litigation); *Scott* v. *Chipotle Mexican Grill, Inc.*, No. 12 Civ. 8333 (ALC), 2017 WL 4326081, at *1 (S.D.N.Y. Sept. 25, 2017) (certifying for interlocutory review proper analysis for decertification of FLSA collective action), *aff'd in part, rev'd in part*, 954 F.3d 502 (2d Cir. 2020).

After reviewing the parties' submissions, however, the Court is concerned about a more fundamental issue, namely, that its imprecision in *Sanchez IV* may have caused a result different from that the Court intended. To review, unlike many of the decisions in which employers merely advert to arbitration provisions, this Court had the opportunity to review and pass on the enforceability of the 2022 Addendum and the 2023 CBA. *See Sanchez I*, 638 F. Supp. 3d at 362-63, 365-71; *see also, e.g., Davis* v. *Dynata, LLC*, No. 22 Civ. 1062 (SVN), 2023 WL 6216809, at *18 (D. Conn. Sept. 25, 2023) ("excluding from the potential collective those individuals whose claims would be subject to arbitration" pursuant to the court's earlier analysis of the enforceability *vel non* of various arbitration provisions); *cf. Bigger*, 947 F.3d at 1047 (allowing notice, except where "(1) no plaintiff contests the existence or validity of the alleged arbitration agreements, or (2) after the court allows discovery on the alleged agreements' existence and validity, the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice"); *In re JP Morgan Chase & Co.*, 916 F.3d at 503 ("Where a preponderance of the evidence shows

that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification. But if the employer fails to establish the existence of a valid arbitration agreement as to an employee, that employee would receive the same notice as others." (footnote omitted)). In other words, given its prior ruling on enforceability in *Sanchez I*, the Court felt comfortable excluding "the members of the Proposed Collective who are subject to the 2022 Addendum or 2023 CBA [and thus] are bound to arbitrate their FLSA claims." *Sanchez IV*, 2024 WL 3159821, at *9; *see also id.* at *10 ("The Court thus limits the collective to the above-mentioned types of employees who are bound by neither the 2022 Addendum nor the 2023 CBA."); *id.* at *14 ("*Third*, the notice must be modified to exclude the aforementioned employees who are subject to the 2022 Addendum or 2023 CBA.").

The problem, as the Court now realizes, is that its prior decision did not adequately contend with Plaintiff's argument in support of conditional certification that certain employees subject to the 2022 Addendum or the 2023 CBA may have been posted to other job sites that were not subject to either agreement. (*See* Dkt. #95 at 1 ("Defendants shift employees around between buildings requiring them to engage in non-union work."), 2 ("Mitigating circumstances also include the already known practice of requiring employees to engage in work for non-covered buildings or in non-covered roles.")). Plaintiff is likely correct that work performed by these employees at non-covered worksites would not be covered by the arbitration provision; at the very

least, this fact would seem to warrant such employees receiving notice of the collective.[1] Defendants appear to acknowledge as much in their opposition. Early on, they note that

> Plaintiff misconstrues the Order because the exclusion therein was expressly contingent on whether the employee at issue was bound by the 2022 Addendum and/or 2023 CBA. If an employee was not subject to the 2022 Addendum and/or 2023 CBA because they performed work at another … building or for any other reason, he or she would be entitled to a collective notice pursuant to the Order.

(Def. Opp. 2). Defendants reiterate the point at the end of their memorandum:

> Plaintiff does not appear to grasp the fact that the Order only excludes those who are subject to the 2022 Addendum or 2023 CBA. Thus, if certain individuals were not subject to 2022 Addendum and/or 2023 CBA because they worked at multiple buildings (as Plaintiff contends), they would have been included on the collective list and received a notice.

(*Id.* at 8).

The question for the Court is the same as that suggested by Plaintiff in his reply brief (*see* Pl. Reply 1-2): How can the parties, and the Court, be sure that employees who are subject to the 2022 Addendum or the 2023 CBA, but who also worked at a non-covered site during the time period covered by this litigation, were identified to Plaintiff and provided with notice of the action?

---

[1] The fact that employees of Defendants who were subject to a particular CBA may have worked at sites not subject to that CBA distinguishes this case from others in this Circuit in which all of the work performed by the employee was covered by an agreement with an arbitration provision. *See, e.g.*, *Errickson* v. *Paychex, Inc.*, 447 F. Supp. 3d 14, 26 (W.D.N.Y. 2020) (addressing claims brought by Implementation Coordinators and Implementation Project Managers whose work was covered in full by arbitration agreements); *Morangelli* v. *Chemed Corp.*, No. 10 Civ. 0876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010) (same result for case involving service technicians).

After all, *Sanchez IV* did not explicitly address Plaintiff's arguments concerning work at other locations. (*See* Dkt. #95 at 1-2; *see also* Pl. Reply 2 (noting that the Court's "directive is not qualified according to where individuals subject to the arbitration agreements actually performed work")). This uncertainty in the record is in tension with the Court's obligation to conclude that employees excluded from a putative collective are in fact foreclosed from participating by dint of an arbitration agreement. *See McLean* v. *Cornucopia Logistics, LLC*, No. 19 Civ. 0864 (JS) (AYS), 2021 WL 3709260, at *5 (E.D.N.Y. Aug. 20, 2021) ("where, as here, it is undisputed that arbitration agreements executed by all employees are valid and binding … [it] would waste everyone's time and resources to conditionally certify a group of individuals that the Court is virtually certain to decertify at step two" (internal quotation marks and citation omitted)). Accordingly, the Court directs Defendants to explain to it how they arrived at the list of names provided to Plaintiff for notice, with particular emphasis on how Defendants were certain that individuals excluded from notice because they were subject to the 2022 Addendum or the 2023 CBA performed no work that was outside of the scope of these agreements. Depending on the information it receives, the Court may reconsider its prior restrictions on notice. *See generally Esposito* v. *Suffolk Cnty. Cmty. College*, 517 F. Supp. 3d 126, 134 (E.D.N.Y. 2021) ("A district court possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final."), *aff'd*, No. 21-521-cv, 2023 WL 192671 (2d Cir. Jan. 17, 2023) (summary order).

## CONCLUSION

Before the Court can consider certifying the notice issue for interlocutory appeal, it must consider the threshold issue of whether notice was received in the manner the Court contemplated. Accordingly, the Court DENIES Plaintiff's motion for interlocutory appeal, without prejudice to its later renewal. In addition, the Court ORDERS Defendants to file a supplemental submission addressing the scope of notice issues raised in this Order on or before **April 4, 2025**. If Plaintiff wishes to respond to Defendants' submission, he shall do so on or before **April 18, 2025.** If either party believes that the existing schedule for briefing on Plaintiff's class certification motion should be delayed pending resolution of this issue, that party must promptly notify the Court.

The Clerk of Court is directed to terminate the motion at docket entry 121.

SO ORDERED.

Dated: March 10, 2025
New York, New York

*Katherine Polk Failla*

KATHERINE POLK FAILLA
United States District Judge