UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RODNEY SANCHEZ, *on behalf of himself,*
*FLSA Collective Plaintiff and the Class*

                   Plaintiff,

        -against-

CLIPPER REALTY, INC.,
      d/b/a CLIPPER REALTY,
CLIPPER REALTY OP L.P.,
      d/b/a CLIPPER REALTY L.P.,
CLIPPER REALTY CONSTRUCTION, LLC,
CLIPPER 107 CH LLC,
      d/b/a CLOVER HOUSE, and
CLIPPER EQUITY LLC,
      d/b/a CLIPPER EQUITY.

                   Defendants.
----------------------------------------------------------------X

**Case No.: 1:21-cv-08502**

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**BELL LAW GROUP, PLLC**

        /S/ Adam P. Grogan
By: _____
        Adam P. Grogan, Esq.
        Paul A. Bartels, Esq.
        116 Jackson Avenue
        Syosset, New York 11791
        Tel.: (516) 280-3008
        apg@belllg.com
        paul@belllg.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii, 4

LEGAL STANDARD ...........................................................................................................1

I.    It is Inappropriate to Decide Summary Judgment Simultaneously with Class Certification
      1

II.   Granting Plaintiffs' Summary Judgment Motion on a Class-Wide Basis Will Deprive
      Defendants of Their Opportunity and Right to Decertify the FLSA Collective Class ................3

III.  Defendants are Not a Single Integrated Enterprise.............................................................4

IV.   Plaintiffs' Motion for Summary Judgment Should Be Denied As There Remains
      Genuine Dispute of Material Facts ........................................................................................7

      A.    Defendants' Neutral Rounding Policies Are Permitted....................................................7

      B.    Plaintiffs Have Failed to Show That Plaintiffs Were Not Properly Compensated..........9

      C.    Any Alleged Uncompensated Time Is Noncompensable ...............................................12

      D.    Any Additional Alleged Uncompensated Time Is *De Minimis* ....................................14

      E.    Plaintiffs' Biweekly Pay Claims Are Inappropriate for Resolution on Summary
            Judgment .........................................................................................................................15

      F.    Summary Judgment is Inappropriate on Plaintiffs' Wage Statements and Notices Claim
            17

      G.    Plaintiffs are Not Entitled to Summary Judgment on Their Claims for Liquidated
            Damages ...........................................................................................................................20

      H.    Plaintiffs Are Not Entitled to Summary Judgment on the Statute of Limitations Issue22

CONCLUSION.....................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)........................................................19

*Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944)..............................................................17, 18

*Balderramo v. Go N.Y. Tours Inc.,* 668 F.Supp. 3d 207 (S.D.N.Y. 2023) ..............................20, 21

*Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) .........................9

*Benavides v. Serenity Spa Ny Inc.*, 2017 U.S. Dist. LEXIS 142137 (S.D.N.Y. 2017)............7, 8, 9

*Bergman v. Kids by the Bunch Too, Ltd.*, 2018 U.S. Dist. LEXIS 27119 (E.D.N.Y. 2018) .........19

*Bertrand v. Maram,* 495 F.3d 452 (7th Cir. 2007) ...................................................................6, 7, 9

*Bethune v. TW Telecom Holdings, Inc.,* 2011 U.S. Dist. LEXIS 24514 (S.D.N.Y. 2011)......17, 18

*Boone v. PrimeFlight Aviation Servs., Inc.*, 2018 U.S. Dist. LEXIS 28000 (E.D.N.Y. 2018)......12

*Brock v. Wilamowsky,* 833 F.2d 11 (2d Cir.1987).........................................................................26

*Brown v. Daikin Am., Inc.*, 756 F.3d 219 (2d Cir. 2014)..............................................................11

*Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir. 1994) ...................................6, 27

*Cuzco v. Orion Builders, Inc., 262 F.R.D 325 (S.D.N.Y. 2009)6, 7Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974)................................................................................................................7

*Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) ......................................................8

*Gallo v. Prudential Residential Serv*.,
22 F.3d 1219 (2d Cir. 1994) .....................................................................................................6

*Garzon v. Bldg. Servs. Inc.*, 2025 U.S. Dist. LEXIS 126441 (S.D.N.Y. 2025)............................24

*Grande v. 48 Rockefeller Corp.*, 2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. 2023) .....................12

*Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024)..............................................23, 25

*Guthrie v. Rainbow Fencing Inc., 2022 U.S. Dist. LEXIS 224799 (E.D.N.Y. 2022)*....................23

*Haight v. The Wackenhut Corp.*, 692 F.Supp 2d 339 (S.D.N.Y. 2010) ........................................18

*Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132 (2d Cir. 1999) ..................................................26

*In re Cablevision Consumer Litig.*, 2014 U.S. Dist. LEXIS 44983 (E.D.N.Y. 2014).....................7

*In re Michael Stapleton Assocs., 2018 U.S. Dist. LEXIS 140310 (S.D.N.Y. 2018)* .........................9

*Inclan v. N.Y. Hosp. Grp., Inc.,* 95 F.Supp 3d 490 (S.D.N.Y. 2015) .......................................27, 28

*Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013)...............................................................9

*Kavanagh v. Grand Union Co., Inc.*, 192 F.3d 269 (2d Cir. 1999)................................................17

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) ........................................................14

*Lawrence v. NYC Med. Prac., P.C.*, 2024 U.S. Dist. LEXIS 14339 (S.D.N.Y. 2024)....................8

*Levy v. Endeavor Air Inc.,*, 638 F.Supp. 3d 324 (E.D.N.Y. 2022) ..........................................20, 21

*Liu v. Chan,* U.S. Dist. LEXIS 130553 (E.D.N.Y. 2022)..........................................................20, 21

*Lundy v. Catholic Health Sys. Of Long Island Inc.,* 711 F.3d 106 (2d Cir. 2013) ........................17

*McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184 (2d Cir. 2007)*...............................................6

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988)27

*Mendez v. The Radec Corp.*, 260 F.R.D 38 (W.D.N.Y. 2009) ........................................................7

*Murray v. City of New York*, 2020 U.S. Dist. LEXIS 22783 (S.D.N.Y. 2020) .............................26

*Murray v. Miner,* 74 F.3d 402 (2d Cir. 1996)................................................................................11

*Nakahata v. New York-Presbyterian Healthcare Sys.*, 2012 U.S. Dist. LEXIS 127824 (S.D.N.Y.

    2012)...........................................................................................................................................14

*Neor v. Acacia Network, Inc.*, 2023 U.S. Dist. LEXIS 20754 (S.D.N.Y. 2023) .....................12, 26

*Pastrana v. Mr Taco LLC*, 2022 U.S. Dist. LEXIS 172937 (S.D.N.Y. 2022) ........................25, 27

*Perez v. G & P Auto Wash Inc.,* 930 F. Supp. 2d 423 (E.D.N.Y. 2013) ........................................19

*Perkins v. Bronx Lebanon Hosp. Ctr.,* 2016 U.S. Dist. LEXIS 151364 (S.D.N.Y. 2016), *aff'd* 715

    F.App'x 103 (2d Cir. 2018) ................................................................................................17

*Perry v. City of New York,* 2018 U.S. Dist. LEXIS 49773 (S.D.N.Y. 2018) ..........................26, 28

*Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund,* 214 F.3d 132 (2d Cir. 2000) .............6,7

*Pinheiro v. Interior Mogul LLC*, 2024 U.S. Dist. LEXIS 155942 (S.D.N.Y. 2024).....................24

*R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54 (2d Cir. 1997) ................................................................6

*Ramirez v. Rifkin,* 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) .....................................................27

*Rana v. Islam,* 887 F.3d 118, 123 (2d Cir. 2018) .........................................................................25

*Reich v. New York City Transit Authority*, 45 F.3d 646 (2d Cir. 1995) .......................................19

*Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir.1995).................................................................27

*Rule v. Brine, Inc., 85 F.3d 1002 (2d Cir. 1996)*............................................................................6

*Schering Corp. v. Home Ins. Co., 712 F2d 4 (2d Cir. 1983)6Steiner v. Mitchell,* 350 U.S. 247

    (1956)..........................................................................................................................................18

*Stewart v. Hudson Hall, LLC*, 2012 U.S. Dist. LEXIS 73173 (S.D.N.Y. 2021)...........................18

*Tay v. New York,* 2024 U.S. Dist. LEXIS 173097 (S.D.N.Y. 2024) ......................................12, 26

*Vasquez v. Victor's Café 52nd St., Inc.*, 2019 U.S. Dist. LEXIS 165963 (S.D.N.Y. 2019) ...........12

*Vazquez v. Lamont Fruit Farm, Inc.,* 2011 U.S. Dist. LEXIS 112600 (W.D.N.Y. 2011)...............7

*Wood v. Mike Bloomberg 2020, Inc.*, 746 F.Supp. 3d (S.D.N.Y. 2024) ........................................8

*Yingcai Hong v. JP White Plains, Inc.*, 2025 U.S. Dist. LEXIS 28915 (S.D.N.Y. 2025).......14, 26

*Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) ...........................................27

**Statutes**

29 C.F.R. § 785.48(a) .....................................................................................................................15

29 C.F.R. § 785.48(b) ................................................................................................................12, 13

29 U.S.C. § 203(d) ..........................................................................................................9

29 U.S.C. § 254(a) ....................................................................................................17, 18

29 U.S.C. § 255(a) ........................................................................................................27

29 U.S.C. § 260 ........................................................................................................25, 26

NY CLS Lab. § 191 ........................................................................................................20

NY CLS Labor § 198(1-a(i) ...........................................................................................22

NYLL § 190(4) ..............................................................................................................20

NYLL § 195 ...................................................................................................................25

NYLL § 198(1-a) ......................................................................................................22, 25

## Rules

Fed. R. Civ. P. 56.1 .........................................................................................................6

**LEGAL STANDARD**

"A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue." *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir. 1994); *see* Fed. R. Civ. P. 56.1. The moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle it to judgment as a matter of law. *See Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996).

Summary judgment is a drastic remedy that should be granted sparingly. *Gallo v. Prudential Residential Serv.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). The Court "must resolve all ambiguities, credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment, and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007). If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment shall be denied. *Schering Corp. v. Home Ins. Co.,* 712 F2d 4, 9-10 (2d Cir. 1983). The nonmoving party need not make a compelling showing; it need merely show that reasonable minds could differ as to the import of the proffered evidence. *R.B. Ventures, Ltd. v. Shane,* 112 F.3d 54, 59 (2d Cir. 1997). "[A]nd if . . . there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Id.*

I.   **It is Inappropriate to Decide Summary Judgment Simultaneously with Class Certification**

"A Court's decision on the merits … should not ordinarily occur before or simultaneous with a decision on class certification." *Cuzco v. Orion Builders, Inc.*, 262 F.R.D 325, 335

(S.D.N.Y. 2009)(citing *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund,* 214 F.3d 132, 135 (2d Cir. 2000) (*per curiam*)(citing *Bertrand v. Maram,* 495 F.3d 452, 455 (7th Cir. 2007)("Class-action status must be [decided]… early to clarify who will be bound by the decision."). *See also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974) (the United States Supreme Court rejecting the procedure of obtaining a determination "on the merits of the claims advanced on behalf of a class without any assurance that a class action may be maintained" as directly contrary to the command of Rule 23(c)(1)).

"[W]hen a plaintiff in a class action moves for summary judgment, there could be some unfair prejudice to the defendant if a class is certified, and notices sent to putative class members, after a judgment on the merits has been entered in favor of the class. At least in theory, some of the class members might have opted out, had they received notice of the action prior to the judgment on the merits, but would be less likely to do so if they know that the court has already ruled in favor of the class on some issues." *Benavides v. Serenity Spa Ny Inc.*, 2017 U.S. Dist. LEXIS 142137 (S.D.N.Y. 2017) (quoting) *In re Cablevision Consumer Litig.*, 2014 U.S. Dist. LEXIS 44983 (E.D.N.Y. 2014)(quoting *Mendez v. The Radec Corp.*, 260 F.R.D 38 (W.D.N.Y. 2009).

This is the case even when the issues being decided may be "a purely legal one," as in the "interest of fairness … it is premature to rule on this question, or any other dispositive issue … until the putative class members have been provided with notice and an opportunity to opt out of the suit." *Vazquez v. Lamont Fruit Farm, Inc.,* 2011 U.S. Dist. LEXIS 112600 (W.D.N.Y. 2011). "Once the group to be bound by the judgment has been defined, this Court properly may entertain appropriate dispositive motions and/or a proposed settlement." *Id.*, citing *Philip Morris Inc. v. Nat'l Asbestos Workers Medical Fund,* 214 F.3d 132, 135 (2d Cir. 2000) (*per curiam*) (noting that,

2

in general, issues related to class certification should be decided prior to a decision on the merits) (citing cases).

"The certifying court should not make any factual findings or merits determinations that are not necessary to the Rule 23 analysis…" *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012). "This is the case even though summary judgment briefing is underway." *Wood v. Mike Bloomberg 2020, Inc.*, 746 F.Supp. 3d (S.D.N.Y. 2024).

Here, as in the above-cited cases and numerous others in this Circuit, it is premature to decide any dispositive issues until the class has been defined and putative class members have been identified and provided with notice and an opportunity to opt out of the suit, as the alternative would result in unfair prejudice to Defendants in this action. *See Benavides v. Serenity Spa Ny Inc.*, 2017 U.S. Dist. LEXIS 142137 (S.D.N.Y. 2017).

**II.      Granting Plaintiffs' Summary Judgment Motion on a Class-Wide Basis Will Deprive Defendants of Their Opportunity and Right to Decertify the FLSA Collective Class**

It is a generally accepted practice for Defendants to seek to propound individual written discovery of any opt-in plaintiffs in an FLSA collective action, and granting summary judgment as to liability in this action on behalf of the class would deprive Defendants of their ability to conduct that discovery and the right to explore, discovery, and establish an evidentiary basis for defenses and meaningfully address the issues relevant to Defendants' anticipated motion to decertify the collective class. *See, generally, Lawrence v. NYC Med. Prac., P.C.*, 2024 U.S. Dist. LEXIS 14339 (S.D.N.Y. 2024). This is especially true where, as here, the Plaintiff, opt-in Plaintiffs, and potential class members all worked in different positions, in different buildings, under different supervisors, in different unions subject to different collective bargaining agreements, or no unions at all, and were therefore subject to different policies and procedures.

3

Thus, granting Plaintiffs' motion for summary judgment at this stage is inappropriate as it would effectively relieve Plaintiffs of their burden at the decertification stage entirely.

### III.    Defendants are Not a Single Integrated Enterprise

Plaintiffs contend that all Defendants operate as a "Single Integrated Enterprise" and thus constitute joint employers for purposes of all of the buildings but this allegation breaks down under analysis.

Only an "employer" can be liable for violations of the labor rights conferred by the FLSA and the NYLL. *In re Michael Stapleton Assocs.,* 2018 U.S. Dist. LEXIS 140310 (S.D.N.Y. 2018). The FLSA defines "employer" as a "person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The NYLL similarly defines "employer" to mean "'any person ... employing any individual in any occupation, industry, trade, business or service' or 'any individual ... acting as employer.'" *Irizarry v. Catsimatidis*, 722 F.3d 99, 117 (2d Cir. 2013).

Whether a particular defendant is an employer is not a function of formal corporate relationships; instead, the inquiry is "grounded in 'economic reality[.]'" *Barfield* v. *N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008). Generally, this analysis focuses on "whether the alleged employer [i] had the power to hire and fire the employees, [ii] supervised and controlled employee work schedules or conditions of employment, [iii] determined the rate and method of payment, and [iv] maintained employment records." Id. at 142.

As stated above, Clipper Realty, as a publicly traded Real Estate Investment Trust ("REIT"), owns a number of subsidiaries including, as relevant here, Clipper 107 CH LLC and Clipper Realty Construction LLC. Dkt. No. 157-2. As a part of the REIT, Clipper Realty's subsidiaries own and manage several residential properties as a collective, specifically:

4

     i.   10 West 65th Street, New York, New York 10023
    ii.   50 Murray Street, New York, New York 10007
   iii.   53 Park Place, New York, New York 10007
   iv.   1955 1st Avenue, New York, New York 10029
    v.   107 Columbia Heights, Brooklyn, New York 11201
   vi.   3301 Foster Avenue, Brooklyn, New York 11210
  vii.   141 Livingston Street, Brooklyn, New York 11201
 viii.   250 Livingston Street, Brooklyn, New York 11201
   ix.   1403 New York Avenue, Brooklyn, New York 11210

See Exhibit 1, Declaration of Clipper Realty Chief Financial Officer Lawrence Kreider.

Plaintiffs' arguments for a single integrated enterprise rest exclusively on "a function of formal corporate relationships" and is not grounded in economic reality, as required by precedent in this Circuit. *Barfield, supra.*

In applying the economic reality test to the facts in the record, it is clear that Clipper Equity LLC is not the "employer" of any of the Plaintiffs or witnesses in this case. Israel Lugo and Christopher Cabreja both state that they were hired by Marc Gordon, an employee of 50 Murray Acquisitions LLC. Dkt. No. 81 at ¶ 1; Dkt. No. 159 at ¶ 1. Marc Gordon himself states that he hired Plaintiff Sanchez, Larry Hutchinson, and Stacey Buie and this is not disputed. Ex. 4 at ¶ 33. Though Plaintiff Sanchez alleges that he would be told to cover shifts at 50 Murray Street, this is disputed. Ex. 4 at ¶ 37. Plaintiffs Sanchez and Cabreja's claims regarding pre-shift, post-shift, and lunch break work, while disputed, all specifically state that their supervisor Marc Gordon, an employee of 50 Murray Acquisitions LLC and not Clipper Equity LLC, was the individual allegedly directing this off-the-clock work. *See* Dkt. No. 84, 159. This is true for the alleged witnesses Israel Lugo and Larry Hutchinson as well. *See* Dkt. No. 81, 82. The pay rates for all Plaintiffs were set by the Collective Bargaining Agreement between Plaintiffs' union and Clipper 107 CH LLC. Dkt. No. 31-1. Plaintiffs have not proven that Clipper Equity LLC was in any way their employer in any sense, and an analysis of the economic reality test reveals the same.

In this Circuit, "the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances." *Murray v. Miner,* 74 F.3d 402 (2d Cir. 1996). "However, regardless of the degree of control necessary to support a finding that two corporations acted as a single employer, the policy giving rise to the single employer doctrine is not implicated at all in the absence of an employer-employee relationship between the plaintiff and the affiliate of the defendant at the time of the alleged wrong." *Id.* Because there is no employer-employee relationship between Plaintiffs and Clipper Equity LLC, as all of the terms and conditions of their employment were controlled by Clipper 107 CH LLC and/or Clipper Realty Construction LLC, and the alleged off-the-clock work was directed solely by Marc Gordon, who is not himself an employee of Clipper Equity LLC, it is unfair, improper, and prejudicial to expand the class to include anyone for whom Clipper Equity LLC may have served as a Third Party Administrator for purposes of payroll or Human Resources. *See, generally, Murray, supra*. Thus, none of the entities/buildings that are not a part of the REIT should be included as a part of Plaintiffs' proposed class. Because Clipper Equity LLC's involvement with the Non-REIT entities does not give rise to a joint enterprise, and Clipper Realty's subsidiaries do not own the Non-REIT buildings, it would be prejudicial and improper to hold Clipper Realty liable for any potential liabilities of the Non-REIT entities (the buildings that are not owned by the REIT's subsidiaries).

Further, with regard to Clipper Realty and its subsidiaries, a court must consider whether "an employee, formally employed by one entity, . . . has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity." *Brown v. Daikin Am., Inc.*, 756 F.3d 219 (2d Cir. 2014). "Although no one factor is determinative . . . control of labor relations is the central concern." *Murray, supra.* Here, Plaintiffs' union negotiated a CBA with Clipper 107 CH LLC, and not with Clipper Realty. Dkt.

6

No. 31-1. Further, Plaintiffs themselves all claim that Marc Gordon, <u>who was not</u> a Clipper Realty employee, was directing their work on-site, and. Mr. Gordon, an employee of 50 Murray Acquisitions, confirms this and states that for anyone working "beyond scheduled hours, [he] always made sure that they were compensated for the extra time" thereby demonstrating his and thereby 50 Murray Acquisition's control over payroll and overtime for the Plaintiffs. Ex. 4 at ¶ 35. Thus, holding Clipper Realty, as a holding company, responsible for the actions of a subsidiary is improper in this instance, as Clipper Realty had no involvement with the Plaintiffs' employment whatsoever.

### IV. <u>Plaintiffs' Motion for Summary Judgment Should Be Denied As There Remains Genuine Dispute of Material Facts</u>

In their motion for partial summary judgment, Plaintiffs make a number of convoluted and interwoven assertions that confuse and cobble together different legal principles in order to make their argument, but the claims are unavailing for purposes of summary judgment.

### A. <u>Defendants' Neutral Rounding Policies Are Permitted</u>

"Rounding practices are not *per se* unlawful under the FLSA." *Tay v. New York,* 2024 U.S. Dist. LEXIS 173097 (S.D.N.Y. 2024) (citing *Neor v. Acacia Network, Inc.*, 2023 U.S. Dist. LEXIS 20754 (S.D.N.Y. 2023)). Rounding policies only violate the FLSA "where they systematically undercompensate employees." *Tay v. New York,* 2024 U.S. Dist. LEXIS 173097 (S.D.N.Y. 2024)(citing *Boone v. PrimeFlight Aviation Servs., Inc.*, 2018 U.S. Dist. LEXIS 28000 (E.D.N.Y. 2018); *Vasquez v. Victor's Café 52nd St., Inc.*, 2019 U.S. Dist. LEXIS 165963 (S.D.N.Y. 2019)).

"The FLSA permits employers to use rounding policies to track employees' paid hours, "provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."" *Grande v. 48 Rockefeller Corp.*, 2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. 2023)(quoting 29 C.F.R. §

785.48(b)). "The same standard applies to rounding claims brought under NYLL." *Grande v. 48 Rockefeller Corp.*, 2023 U.S. Dist. LEXIS 140490 (S.D.N.Y. 2023)(collecting cases).

During her deposition, Senior Vice President Isabella Benjamin testified explicitly that the rounding policy is neutral both on its face and as applied:

> Q. Okay. Do you believe those hours accurately reflect people's
>
> actual hours worked?
>
> A. I believe that there was a courtesy provided, so within a 10, 15-
>
> minute range window of folks getting to work, whether late or not.

Plaintiff's Exhibit G, Deposition Transcript of Isabella Benjamin at 40:16 – 22.

Ms. Benjamin's deposition testimony shows that Defendants had a policy and practice of providing a grace period to employees of 10 to 15 minutes surrounding the start or end of their shift, either early or late, to round that time.

Here, Plaintiff have not met their burden on summary judgment to prove that Defendants' rounding polices are impermissible or that it resulted, over a period of time, in failure to compensate employees properly for all the time that they have actually worked. The Fair Labor Standards Act itself explicitly contemplates this, stating:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b)

8

Thus, the retention of rounded pay records is not itself a violation of the Fair Labor Standards Act and is instead explicitly permitted. Plaintiffs' attempt to lump in those alleged employees for whom no time records were located with those for whom rounded pay records were properly retained to argue that Defendants failed "to provide records for at least 70.67% of the class" should fail as improperly lumping two entirely different groups of individuals in order to manipulate the statistics to bolster their record keeping argument, despite these issues being unrelated.

For these reasons, Plaintiffs' argument for summary judgment on the alleged failure to maintain time records must fail.

B. **Plaintiffs Have Failed to Show That Plaintiffs Were Not Properly Compensated**

Plaintiffs argue, again without a citation to a single case precedent, that Defendants' policies and practices regarding the automatic deduction of time for employees' unpaid lunch breaks was somehow impermissible, but the exact opposite is true.

"Automatic meal deduction policies are not *per se* illegal." *Yingcai Hong v. JP White Plains, Inc.*, 2025 U.S. Dist. LEXIS 28915 (S.D.N.Y. 2025). "[E]mployers utilizing such policies "may legally shift the burden to their employees to cancel the automatic deduction if they work through an unpaid meal break." *Nakahata v. New York-Presbyterian Healthcare Sys.*, 2012 U.S. Dist. LEXIS 127824 (S.D.N.Y. 2012). If any employees conducted any work during an uncompensated meal break, even one that is automatically deducted, the burden is on the employee to report that work, as only working time that the employer "knows or has reason to know" is occurring is compensable. *See, generally, Nakahata v. New York-Presbyterian Healthcare Sys.*, 2012 U.S. Dist. LEXIS 127824 (S.D.N.Y. 2012); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011).

9

Plaintiffs claim in their motion for summary judgment that "employees are seen to have been forced to continue work long before their automatically deducted break ends." Dkt. No. 156 at 8. However, there is no evidence cited to support this allegation. Nowhere in the Plaintiffs' motion or in the record is there any evidence that employees were forced to clock back in during their lunch break and continue to work, but were subsequently not compensated for that time. *See, generally,* Plaintiffs' Motion at Dkt. No. 156. On this issue too, the text of the Fair Labor Standards Act is instructive:

> In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded.

29 C.F.R. § 785.48(a).

To the extent that any employees did voluntarily clock-in prior to the expiration of their full uncompensated meal period, there is no evidence in Plaintiffs' motion or in the record that those individuals advised Defendants that they were doing so, as is required, or that any employee performed compensable work during that time, whenever it may have occurred. *See, generally,* Plaintiffs' Motion at Dkt. No. 156.

Specific to Plaintiff Sanchez, his assertions regarding Marc Gordon are disputed by Mr. Gordon himself. Plaintiff Sanchez claims that Mr. Gordon would "ask us to clean the mess left by the construction crew, take out some garbage that was left behind, sweep debris from the sidewalk, or anything to keep us busy." Dkt. No. 84 at ¶ 11. Despite that this is physically impossible in the "10 to 15 minutes" Plaintiff claims he would arrive early to his shift, as discussed more thoroughly below, Mr. Gordon disputes this fact, stating "Employees were never asked to perform work before their shift. The ten to fifteen minutes prior to the shift are designated for changing into their

uniforms. There is no additional time for other tasks, and I would never ask an employee to do uncompensated work." Ex. 4 at ¶ 38. Plaintiff claims that "[a]bout once a week, manager Marcus Gordon would hold a 30-45 minute meeting during which everyone would be clocked out. Mr. Gordon scheduled these meetings to occur during lunch breaks and/or at the end of employees scheduled shift. This time also was never compensated." Dkt. No. 84 at ¶ 13. This too is disputed by Mr. Gordon who states that "I held a weekly meeting every Wednesday. I never asked employees to clock out for the meeting, and did not hold it during employee lunch breaks. The lunch breaks are staggered to ensure coverage; therefore, a meeting during lunch would not be possible, as there is no single time when everyone is on break. I usually held these meetings from 2:00 p.m. to 2:30 p.m., and employees were compensated for this time. If an employee was on their lunch break during this meeting, the other employees filled them in on what was discussed at the meeting." Ex. 4 at ¶ 39. These clear disputed issues of fact between Plaintiff and Mr. Gordon warrant the denial of Plaintiff's motion for summary judgment.

Additionally, with respect to Plaintiff Cabreja, his declaration testimony regarding his lunch shifts is not credible. Mr. Cabreja stated that he would "perform manual work as a porter employed at Clover House, with his main duties including basic cleaning, power washing the sidewalk, gathering every single garbage in the building and taking it outside, and doing maintenance on the premise. For the rest of the week, [he] would perform physical duties as a Doorman, such as holding doors and handling and transporting packages for tenants." Dkt. No. 159 at ¶ 6. Mr. Cabreja goes on to state that an unidentified manager would have him work through the lunch break around two to three times a week having to "sit at [his] work desk while eating and working simultaneously." The statements regarding the alleged demanding and physical nature of his work responsibilities cannot be harmonized with the allegation that he was forced to

11

sit at a desk during his lunch break while eating and working simultaneously. This irreconcilable conflict in statements necessitates disregarding Mr. Cabreja's declaration.

Finally, this issue is inappropriate for decision on summary judgment because "work during meal breaks is compensable under FLSA if 'predominantly' for the employer's benefit." *Lundy v. Catholic Health Sys. Of Long Island Inc.,* 711 F.3d 106, 112 (2d Cir. 2013). "This is a flexible standard that is necessarily fact-bound." *Perkins v. Bronx Lebanon Hosp. Ctr.,* 2016 U.S. Dist. LEXIS 151364 (S.D.N.Y. 2016), *aff'd* 715 F.App'x 103 (2d Cir. 2018). "[I]n determining whether a meal break is compensable, courts consider the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the employee's duties during the meal period, the frequency of meal period interruptions, and whether employees are allowed to resume an interrupted break." *Id.* The determination of these disputed issues is for a trier of fact and thus inappropriate for summary judgment.

There is, therefore, genuine dispute of material facts over Plaintiffs' and the proposed class's allegations regarding the uncompensated meal periods, and thus summary judgment is inappropriate on this issue.

## C. Any Alleged Uncompensated Time Is Noncompensable

"[T]he Second Circuit recognized in *Kavanagh v. Grand Union Co., Inc.* that "not all work-related activities constitute work or employment that must be compensated under the FLSA." *Bethune v. TW Telecom Holdings, Inc.,* 2011 U.S. Dist. LEXIS 24514 (S.D.N.Y. 2011)(citing *Kavanagh v. Grand Union Co., Inc.*, 192 F.3d 269 (2d Cir. 1999). "The Portal-to-Portal Act exempts employers from compensating employees under the FLSA 'for or on account of time spent 'traveling to and from the actual place of performance of the principal activity or activities' of employment and any activities which are 'preliminary to or postliminary to said principal activity

12

or activities." *Bethune v. TW Telecom Holdings, Inc.,* 2011 U.S. Dist. LEXIS 24514 (S.D.N.Y. 2011)(quoting *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944); 29 U.S.C. § 254(a)). This Court has articulated that incidental activities such as "checking in and out and waiting in line to do so, changing clothes, washing up or showering, and waiting in line to receive pay checks are not compensable under FLSA absent a showing that such activities involve specialized tools or equipment or the donning/doffing of unique protective gear so intrinsically connected to the employee's principal activity." *Stewart v. Hudson Hall, LLC*, 2012 U.S. Dist. LEXIS 73173 (S.D.N.Y. 2021)(citing *Haight v. The Wackenhut Corp.*, 692 F.Supp 2d 339 (S.D.N.Y. 2010); *Steiner v. Mitchell,* 350 U.S. 247 (1956)(internal quotations omitted).

Plaintiff Sanchez states in his declaration that, prior to clocking in, he would receive a walkie-talkie from the building's doorman/concierge, ride an elevator down into the building's basement, pick up and put on required uniforms and get equipment and gear prior to clocking in. *See* Dkt. No. 84 at ¶ 10. Larry Hutchinson stated similarly. *See* Dkt. No. 82 at ¶ 5. Israel Lugo provided a similar statement of events. *See* Dkt. No. 81 at ¶ 6. Significantly, none of these activities are compensable work activities. *Bethune v. TW Telecom Holdings, Inc.,* 2011 U.S. Dist. LEXIS 24514 (S.D.N.Y. 2011)(quoting *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944); 29 U.S.C. § 254(a)).

Additionally, Plaintiff Sanchez's declaration regarding his alleged uncompensated work is not credible and should be disregarded in its entirety. Mr. Sanchez states that "[t]o make sure we clock-in on-time, we would typically arrive ten (10) to fifteen (15) minutes early. During our pre-shift time, Manager Mark Gordon would ask us to clean the mess left by the construction crew, take out some garbage that was left behind, sweep debris from the sidewalk, or anything else to keep us busy." Dkt. No. 84 at ¶ 11. However Mr. Sanchez also states that prior to clocking in, he

13

would receive a walkie-talkie from the building's doorman/concierge, ride an elevator down into the building's basement, pick up and put on required uniforms and get equipment and gear prior to clocking in. *See* Dkt. No. 84 at ¶ 10. It is simply not possible for an individual perform these alleged tasks like take out garbage, clean up construction mess, sweep the sidewalk, or any other alleged tasks, then receive a walkie-talkie from a doorman, ride an elevator down to the basement, get dressed and pick up equipment and gear and then clock in all within ten to fifteen minutes of his scheduled shift.

There is, therefore, genuine dispute of material facts over Plaintiffs' and the proposed class's allegations regarding whether any alleged unpaid work was truly compensable and thus summary judgment is inappropriate on this issue.

### D. Any Additional Alleged Uncompensated Time Is *De Minimis*

It is well settled that in order to be entitled to compensation for work performed under the Fair Labor Standards Act when "matter[s] in issue concern[] only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act." *Reich v. New York City Transit Authority*, 45 F.3d 646 (2d Cir. 1995)(quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946). This applies as well to the New York Labor Law. *See Bergman v. Kids by the Bunch Too, Ltd.*, 2018 U.S. Dist. LEXIS 27119 (E.D.N.Y. 2018)(articulating that defendants plausibly assert a meritorious *de minimis* defense as to NYLL claims); *Perez v. G & P Auto Wash Inc.,* 930 F. Supp. 2d 423 (E.D.N.Y. 2013)(discussing the *de minimis* exception under the FLSA and NYLL).

Plaintiff Sanchez's time records cited in support of the motion for summary judgment, when accounting for the lawfully deducted uncompensated one hour of break time, exhibits the

14

definition of *de minimis* time. *See* Dkt. No. 156 at 6. The standard deviation of this sampling from the paid hours over the course of this pay period equates to 57.6 seconds of underpayment. *Id.*

E. **Plaintiffs' Biweekly Pay Claims Are Inappropriate for Resolution on Summary Judgment**

Section 191 of the New York Labor Law states that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NY CLS Lab. § 191. NYLL § 190(4) defines "manual worker[,]" who is required to be compensated weekly, to mean "a mechanic, workingman or laborer."

Plaintiffs argue that "it is not in dispute that Class Members (i.e. concierges, porters, handymen) were all manual workers required to be paid on a weekly basis." Dkt. No. 156 at 9. However this is not accurate. Whether or not an individual qualifies as a manual worker is a fact-intensive inquiry. *Balderramo v. Go N.Y. Tours Inc.,* 668 F.Supp. 3d 207 (S.D.N.Y. 2023)(quoting *Liu v. Chan,* U.S. Dist. LEXIS 130553 (E.D.N.Y. 2022). The New York Department of Labor has long interpreted the term to include "employees who spend more than 25 percent of their working time performing physical labor." N.Y. Dep't of Labor Opinion Letter, No. RO-09-0066 (May 21, 2009). "[T[he New York Department of Labor has instructed that whether an employee is a "manual worker" is determined by looking at the duties performed by the worker, not the job title or written description assigned to such work." *Levy v. Endeavor Air Inc.,*, 638 F.Supp. 3d 324 (E.D.N.Y. 2022)(citing N.Y. Dep't of Labor Counsel opinion Letter RO-09-0066 (May 21, 2009)).

With regards to potential class members employed as concierges, the entirety of Plaintiffs' arguments that they "spent the majority of their workday engaging in manual work" is the response to a single question during Ms. Benjamin's deposition:

15

Q: So when I go into my building like during the daytime, I'm like wow, the amount of packages is amazing, and the guy is telling me that's like almost his entire job. Is that true for your concierges?

A: Yes.

Plaintiffs' Exhibit G, Deposition Transcript of Isabella Benjamin at 67:14-68:8.

This agreement that "the amount of packages is amazing" is insufficient to prove for purposes of summary judgment that an individual employed as a concierge spends more than 25 percent of their working time performing physical labor.

Further, Plaintiffs claim that "Class Members all had the same job duties (depending only on position and not location of work)," but as courts in this Circuit and the New York Department of Labor has stated, "whether an employee is a "manual worker" is determined by looking at the duties performed by the worker, not the job title or written description assigned to such work." *Levy v. Endeavor Air Inc.,*, 638 F.Supp. 3d 324 (E.D.N.Y. 2022)(citing N.Y. Dep't of Labor Counsel opinion Letter RO-09-0066 (May 21, 2009)). Thus, whether any specific concierge spends more than 25 percent of their working time performing physical labor due to "an amazing amount of packages" is going to vary greatly depending on the location the concierge works depending on the number of residents, and the shift on which the concierge works as there would understandably be fewer deliveries to facilitate on an overnight shift than on a day shift. Ms. Benjamin testified that concierges are "generally sitting" at the desk and "announcing guests" and "receiving packages." Plaintiffs' Exhibit G at 67:19 – 68:2. It is likely that an overnight concierge is spending an overwhelming amount of their shift sitting at the desk and occasionally announcing guests, and less than 25% of working time engaged in manual labor relating to packages. However, that is a fact-specific inquiry ill-suited to summary judgment. *Balderramo v. Go N.Y. Tours Inc.,* 668 F.Supp. 3d 207 (S.D.N.Y. 2023)(quoting *Liu v. Chan,* U.S. Dist. LEXIS 130553 (E.D.N.Y. 2022).

16

Additionally, Plaintiffs' motion for summary judgment is silent as to the duties of the doormen that they claim to intend to represent as a part of the purported class.

Finally, Plaintiffs claim that an employee entitled to damages pursuant to Section 198(1-a) of the NYLL is entitled "to recover the full amount of any underpayment as well as reasonable attorney's fees, prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional payment of liquidated damages equal to one hundred percent of the total amount of the wages found to be due." Dkt. No. 156 at 7 – 8 (citing NYLL § 198(1-a)). However since the pendency of this motion practice this is no longer the case. On May 9, 2025, Governor Hochul signed into law a bill amending Section 198(1-a) removing the availability of liquidated damages under Section 191 where, like here, the employer paid the employee wages on a regular payday, no less frequently than semi-monthly. The amended statute now states, in relevant part, that "Such violations shall be subject to damages as follows: no more than one hundred percent of the lost interest found to be due for the delayed payment of wages calculated using a daily interest rate for each day payment is late based on the annual rate of interest then in effect…" NY CLS Labor § 198(1-a(i)). Pursuant to the bill, "[t]his act shall take effect immediately and shall apply to causes of action pending or commenced on or after such date." NYS Budget Bill, S3006-C, Part U § 2. Thus, Plaintiffs are not entitled to liquidated damages equal to one hundred percent of the total amount of the wages found to be due, and instead are, if successful, at most entitled to the lost interest found to be due.

Thus, a genuine dispute of material facts exists and summary judgment is inappropriate as to Plaintiffs' alleged frequency of pay claims.

F.  **Summary Judgment is Inappropriate on Plaintiffs' Wage Statements and Notices Claim**

Plaintiffs go to great lengths in an attempt to distinguish themselves from the plaintiff in *Guthrie*, for whom the Second Circuit affirmed the dismissal of his claim for damages stemming from an alleged violation of the Wage Theft Prevention Act because he did not have Article III standing to pursue that claim and that supplemental jurisdiction did not apply, and that he, like all plaintiffs, and like the Plaintiffs here, must meet the injury-in-fact requirements resulting from an alleged failure to provide wage notices and wage statements separate and apart from the statutory harm.

Plaintiffs here, like the Plaintiff-Appellant in *Guthrie*, do not have standing to pursue this claim in federal court and have not alleged an injury-in-fact resulting from the alleged failure to provide the wage notices and wage statements. The Plaintiff-Appellant in *Guthrie* alleged that Defendant-Respondent failed to pay him minimum and overtime wages and provide proper wage notices and wage statements. *Guthrie v. Rainbow Fencing Inc.*, 2022 U.S. Dist. LEXIS 224799 (E.D.N.Y. 2022). Defendant-Respondent defaulted and as a result provided no records to rebut Guthrie's allegations. *Id.* Guthrie alleged that he worked 44.5 hours when he worked five days per week and 54.5 hours when he worked six days per week, and was compensated between $12.50 and $17.50 per hour. *Id.* Guthrie provided a damages calculation table for both his minimum wage and overtime wage claims, and because of the default, the District Court awarded those damages calculated, along with liquidated damages. *Id.* However, the District Court dismissed Guthrie's wage notice and wage statement claims under NYLL § 195 because he did not meet the requirements of Article III standing, supplemental jurisdiction was not appropriate, and there was no injury-in-fact regardless of standing. *Id.*

On appeal, the Second Circuit affirmed the District Court's dismissal of the § 195 claim. While Plaintiffs here are correct that the Circuit Court stated that "[t]he lack of such notices and

18

statements might impair 'an employee's ability to seek relief for violations they may not have information about…'" Plaintiffs misapply the two-part holding in *Guthrie* which addressed both standing and injury-in-fact. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). The Second Court explicitly rejected this type of "informational injury" as insufficient in a § 195 claim to confer federal jurisdiction because there was no injury-in-fact alleged apart from the informational injury. Plaintiffs' allegations in their amended complaint mimic those allegations in the complaint in *Guthrie,* alleging that "Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL." Dkt. No. 34, First Amended Complaint at ¶ 74. Plaintiff Buie claims that "I do not recall receiving paystubs from Clipper, but if my paystubs contained my actual hours, and not the inaccurate hours list on the documents I reviewed, it would have been clear to me and others that I was not being paid for all hours worked." Dkt. No. 158 at ¶ 6. Plaintiff Cabreja claims that "[i]f our paystubs contained our actual hours, and not the inaccurate hours list on the documents I reviewed, it would have been clear to me and others that we were not being paid for all hours worked." Dkt. No. 159 at ¶ 12. This Court has repeatedly held that "where a Plaintiff merely alleges a failure to receive accurate wage notices without alleging a resulting injury, Article III standing is not satisfied," and explicitly rejected the type of informational injury Plaintiffs claim here. *Garzon v. Bldg. Servs. Inc.*, 2025 U.S. Dist. LEXIS 126441 (S.D.N.Y. 2025)("While the Complaint does allege that Defendants' record keeping practices were intended to, and did in fact, disguise the actual number of hours Plaintiff worked, in order to avoid paying her for her full hours worked and overtime due it does not allege that she "would have acted differently had [she] received the wage notices and statements as required.")(cleaned up)(internal quotations and citations removed)(quoting *Pinheiro v. Interior Mogul LLC*, 2024 U.S. Dist. LEXIS 155942 (S.D.N.Y. 2024)("The Complaint does

19

speculate that, on information and belief, Defendants did not provide the requisite notices and statements to disguise the actual number of hours the Plaintiff worked and to avoid paying the minimum wage rate for all hours worked and overtime wage for all hours worked over forty (40) hours in a work week. But Pinheiro does not allege or assert that he was duped in any way or that he would have acted differently had he received the wage notices and statements as required.)(internal quotations and citations removed)

Here, as in *Guthrie*, *Garzon*, and *Pinheiro*, Plaintiffs have not alleged, much less proven for purposes of summary judgment, that any "concrete downstream harm" was suffered as a part of the alleged statutory violation. *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). As such, there is no showing here of additional concrete downstream harm sufficient to confer jurisdiction for these claims on this Court.

For this, and all reasons stated above, summary judgment is inappropriate on Plaintiffs' alleged wage notice and wage statement claims under NYLL § 195.

G. **Plaintiffs are Not Entitled to Summary Judgment on Their Claims for Liquidated Damages**

"Under the FLSA and NYLL, a plaintiff who is owed minimum or overtime wages may recover an additional equal amount as liquidated damages." *Pastrana v. Mr Taco LLC*, 2022 U.S. Dist. LEXIS 172937 (S.D.N.Y. 2022). "Plaintiffs may not, however, recover "duplicative liquidated damages for the same course of conduct" under both the FLSA and NYLL" *Id*. (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). "The court may reduce or deny liquidated damages if the employer can show that "the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing it was not a violation of [FLSA]." *Id*. (quoting 29 U.S.C. § 260). "Similarly, under the NYLL, an employee is entitled to liquidated damages equal to the amount of the overtime pay "unless the employer proves a good faith basis

for believing that its underpayment of wages was in compliance with the law." *Id.* (quoting NYLL § 198(1-a)).

Nevertheless, Plaintiffs are not entitled to Summary Judgement on their claim for liquidated damages under FLSA or NYLL. A district court has "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective `good faith' with objectively `reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Id.* at 150 (quoting 29 U.S.C. § 260). "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Herman v. RSR Sec. Services Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999). *See also Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987) ("The defense requires plain and substantial evidence of at least an honest intention to ascertain what the [FLSA] requires and to comply with it.").

Here, Plaintiffs FLSA and NYLL claims stem exclusively from Defendants policies regarding time rounding and automatic break deductions. *See, generally,* Dkt. No. 154; 34. However, as explained more thoroughly above, "[r]ounding practices are not *per se* unlawful under the FLSA." *Tay v. New York,* 2024 U.S. Dist. LEXIS 173097 (S.D.N.Y. 2024) (citing *Neor v. Acacia Network, Inc.*, 2023 U.S. Dist. LEXIS 20754 (S.D.N.Y. 2023)). Neither are automatic break deductions. *Yingcai Hong v. JP White Plains, Inc.*, 2025 U.S. Dist. LEXIS 28915 (S.D.N.Y. 2025). Nonetheless, this Court has repeatedly held that, "when there are disputed issues of fact with respect to liability … there are likewise disputed issues of fact rendering any finding as to liquidated damages or willful infringement premature." *Perry v. City of New York,* 2018 U.S. Dist. LEXIS 49773 (S.D.N.Y. 2018); *Murray v. City of New York*, 2020 U.S. Dist. LEXIS 22783 (S.D.N.Y. 2020)("Plaintiffs' summary judgment motion is denied as to their claimed FLSA violations, and it is therefore premature to reach the question of whether any hypothetical violation

21

occurred in good faith and was grounded in the City's reasonable belief that it had complied with the law."); *Inclan v. N.Y. Hosp. Grp., Inc.,* 95 F.Supp 3d 490 (S.D.N.Y. 2015)( "Courts in this Circuit have generally left the question of willfulness to the trier of fact.").

Here, Defendants have shown that they acted in good faith with objectively `reasonable grounds' for believing that its acts or omissions, if any, did not violate the FLSA and that their violations, if any, were not willful. The practice of time rounding and automatic break deductions are not in and of themselves unlawful, and even assuming *arguendo* that these policies did result in an alleged underpayment, that does not meet the willfulness or lack of good faith standards necessary to impose liquidated damages at the summary judgment stage. *Pastrana v. Mr Taco LLC*, 2022 U.S. Dist. LEXIS 172937 (S.D.N.Y. 2022).

Thus, Plaintiffs are not entitled to summary judgment on this issue.

## H. Plaintiffs Are Not Entitled to Summary Judgment on the Statute of Limitations Issue

Under the FLSA, the general statute of limitations for minimum wage and overtime claims is two years. 29 U.S.C. § 255(a). However, if the employee proves that the employer's violation is willful, the limitations period is increased to three years. *Id.*; *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). To make out a willful violation, the employee must establish "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). However, the category of willful conduct does not encompass conduct that is "merely negligent" or "unreasonabl[e]." *Id.*; *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir.1995).

Similarly to questions of liquidated damages, "[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact." *Ramirez v. Rifkin,* 568 F. Supp. 2d 262, 268

22

(E.D.N.Y. 2008). Again, even assuming *arguendo* that any underpayment occurred, which Defendants deny, "[b]ecause of the difficulty in discerning, as a matter of law, whether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, courts in this Circuit have generally left the question of willfulness to the trier of fact." *Perry v. City of New York*, 2018 U.S. Dist. LEXIS 49773 (S.D.N.Y. 2018); *Inclan v. N.Y. Hosp. Grp., Inc.,* 95 F.Supp 3d 490 (S.D.N.Y. 2015)( "Courts in this Circuit have generally left the question of willfulness to the trier of fact.").

Thus, Plaintiffs are not entitled to summary judgment on this issue as material facts are in dispute that require a trier of fact to evaluate.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court deny Defendants' motion to dismiss in its entirety.

Dated: July 28, 2025
Syosset, New York

Respectfully submitted,

**BELL LAW GROUP, PLLC**

/S/ Adam P. Grogan

By:    _____

Adam P. Grogan, Esq.
Paul A. Bartels, Esq.
*Attorneys for Defendants*
116 Jackson Avenue
Syosset, New York 11791
Tel.: (516) 280-3008

23

## WORD COUNT CERTIFICATE

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities and signature block is 7,359 words.

Dated: July 28, 2025

/S/ Adam P. Grogan

_____

Adam P. Grogan, Esq.

24