**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RODNEY SANCHEZ, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

                Plaintiff,

        v.

CLIPPER REALTY, INC.,
     d/b/a CLIPPER REALTY,
CLIPPER REALTY OP L.P.,
     d/b/a CLIPPER REALTY OP L.P.
CLIPPER REALTY CONSTRUCTION LLC,
CLIPPER 107 CH LLC,
     d/b/a CLOVER HOUSE,
CLIPPER EQUITY LLC,
     d/b/a CLIPPER EQUITY,

                Defendant.

Case No.: 21-cv-08502

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

C.K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs*
*and the Class*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

  I.    ARGUMENTS.................................................................................................................. 1

    A.  DEFENDANTS FAIL TO PRESENT ANY REASONABLE CONFLICTING INTERPRETATIONS OF THE EVIDENCE SUBMITTED BY PLAINTIFFS.............1

    B.  IT IS APPROPRIATE TO ADJUDICATE PLAINTIFFS' SUMMARY JUDGMENT MOTION WITH THE MOTION FOR CLASS CERTIFICATION AND DEFENDANTS WILL NOT BE DEPRIVED AN OPPORTUNITY TO MOVE FOR DECERTIFICATION .........................................................................................................2

    C.  DEFENDANTS ARE OPERATED AS A SINGLE INTEGRATED ENTERPRISE WITH COMMON EMPLOYMENT PRACTICES .........................................................3

    D.  THERE IS NO GENUINE DISPUTE THAT DEFENDANTS' WAGE PRACTICES RESULTED IN SHORTFALLS AND ARE APPLICABLE TO ALL CLASS MEMBERS ........................................................................................................................5

        i.   Defendants' meal break deductions............................................................. 5

        ii.  Defendants' rounding ..................................................................................... 8

    E.  THERE IS NO GENUINE DISPUTE THAT THE TIME SHAVED HOURS WERE COMPENSABLE AND NOT DE MINIMIS.....................................................................9

    F.  THERE IS NO GENUINE DISPUTE THAT PLAINTIFFS AND CLASS MEMBERS WERE MANUAL WORKERS  ENTITLED TO BE PAID ON A WEEKLY BASIS .10

    G.  THERE IS NO GENUINE DISPUTE THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR NOTICE AND STATEMENT CLAIMS .......10

    H.  PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR LIQUIDATED DAMAGES AND A THREE-YEAR STATUTE OF LIMITATIONS...........................................................................................................11

  II.    CONCLUSION............................................................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Addison* v. *Huron Stevedoring Corp.,*
204 F. 2d 88, 95 (C.A. 2, 1953) ........................................................................................ 9

*Anderson* v. *Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946) .......................................................................................................... 9

*Bello v. Pro-Line Pumping Corp.,*
2023 U.S. Dist. LEXIS 106676, *26 (E.D.N.Y. June 20, 2023) ...................................... 11

*Chao v. Gotham Registry, Inc.,*
514 F.3d 280, 288 (2d Cir. 2008).................................................................................... 7

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP,*
735 F.3d 114, 123 (2d Cir. 2013).................................................................................... 1

*Glenn L. Martin Nebraska Co.* v. *Culkin,*
197 F. 2d 981, 987 (C.A. 8, 1952) .................................................................................. 9

*Guthrie v. Rainbow Fencing Inc.,*
113 F.4th 300, 2024 U.S. App. LEXIS 22103 (2d Cir. 2024) .................................. 10, 11

*Hawkins* v. *E. I. du Pont de Nemours & Co.,*
12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955) ........................... 9

*Hernandez v. JRPAC Inc.,*
2016 U.S. Dist. LEXIS 75430, *18 (S.D.N.Y. June 9, 2016) ........................................ 8

*Kuebel v. Black & Decker Inc.,*
643 F.3d 352 .................................................................................................................. 7

*Yu G. Ke v. Saigon Grill, Inc.,*
595 F. Supp. 2d 240 (S.D.N.Y. 2008)............................................................................ 2

**STATUTES**

NYLL § 191 ......................................................................................................................... 10
NYLL § 195 ........................................................................................................................... 2

**REGULATIONS**

12 N.Y.C.R.R. § 146-2.1 ....................................................................................................... 2
29 C.F.R. § 785.47 ................................................................................................................. 9

Plaintiffs submit this Reply Memorandum in response to Defendants' Opposition to Plaintiffs' Motion for Summary Judgment [ECF 192] ("Opposition").

## I.    ARGUMENTS

### A.    DEFENDANTS FAIL TO PRESENT ANY REASONABLE CONFLICTING INTERPRETATIONS OF THE EVIDENCE SUBMITTED BY PLAINTIFFS

Defendants argue, if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact, summary judgment shall be denied." Opposition at 1. However, Plaintiffs have submitted ample evidence confirming on-the-records wage shortfalls to Plaintiffs and Class Members that eliminates differing interpretations. Defendants have no defenses because the violations are clear for everyone to see.

Indeed, Defendants have not even attempted to articulate a conflicting interpretation in response to evidence showing that Defendants: (i) failed to pay Class Members all wages owed by automatically deducting 1-hour meal breaks even when employees' punch records show their breaks were significantly shorter (*see* ECF 156 at 7), and (ii) altered Class Members punch records to ensure that employees were paid for exactly 8 hours shifts (regardless of actual hours worked) (*see* ECF 156 at 3). Plaintiffs and other Class Members have attested to shortfalls based on Defendants' various illegal wage practices. *See* generally Sanchez Decl.; Lugo Decl.; Hutchinson Decl.; Buie Decl.; Cabreja Decl. Defendants have not argued that the violations are not representative of Class Members as a whole, or that class-wide summary judgment is unwarranted.

Under NYLL, it is Defendants' burden to refute the allegations. "[W]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013). An employer who fails to maintain and preserve records for each employee for at least six years,

will find themselves having the burden of rebutting the contentions of their employee. *See* N.Y. Lab. L. § 195; 12 N.Y.C.R.R. § 146-2.1; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008).

B. <u>IT IS APPROPRIATE TO ADJUDICATE PLAINTIFFS' SUMMARY JUDGMENT MOTION WITH THE MOTION FOR CLASS CERTIFICATION AND DEFENDANTS WILL NOT BE DEPRIVED AN OPPORTUNITY TO MOVE FOR DECERTIFICATION</u>

Contrary to Defendants' argument, it is not inappropriate to adjudicate Plaintiffs' summary judgment motion with the motion for class certification. Opposition at 1, 2. While the Court must decide the class certification motion before the summary judgment motion, the fact that both motions were briefed simultaneously is irrelevant. Prospective Class Members may be less likely to opt-out once they see the lawsuit is meritorious, but this is not a bad consequence, and certainly not unfair to Defendants. The initial briefing schedule on the motions were proposed jointly months ago, included overlapping dates, and was So Ordered by the Court (*see* ECF 144, 145). Defendants did not object.

Granting Plaintiffs' motion for summary judgment on a class-wide basis will not deprive Defendants of an opportunity and right to decertify the FLSA Collective. The Court certified the collective on June 6, 2024. Defendants have not moved for decertification or even indicated an intent to do so. Any failure of an opportunity to move to decertify the collective results solely from Defendants' delay. Regardless, the facts and evidence underlying Plaintiffs' motions dictate whether they will be granted, not when the Court adjudicates them, and if the Court denies Plaintiffs' summary judgment motion, Defendants will be more likely to succeed at decertifying the collective.

Additionally, nothing will prevent Defendants from deposing opt-in Plaintiffs, or attempting to "establish an evidentiary basis for defenses []." Opposition at 3. However, there is

2

not much Defendants or anyone can say to change the fact that Defendants' records show undisputed underpayments.

C. DEFENDANTS ARE OPERATED AS A SINGLE INTEGRATED ENTERPRISE WITH COMMON EMPLOYMENT PRACTICES

Defendants' deposition testimony provided ample evidence of Defendants' operation as a single integrated enterprise and satisfied all the *Carter* factors. Defendants have not responded to these admissions. The supporting evidence was detailed in Plaintiffs' moving motion, with the most salient provided below.

(i)     All of the buildings are owned and operated by CLIPPER REALTY LP and CLIPPER EQUITY LLC. *See* **Exhibit G**, Benjamin Dep. at 8-16.

(ii)    All the buildings share the same executive management teams. *See id*. at 6:13-15; 16:17-19; 14:11-13; 17:10-14; 17:4-8.

(iii)   All of the buildings use a common handbook. *See id*. at 63:1-13. All employees of the various Departments are subject to the same employee manual. *See id*. at 63:1-13.

(iv)    All of the buildings used the same payroll system and policies for Class Members. *See id*. at 34:1-17.

(v)     Defendants centrally maintain records for all Class Members. *See id*. at 50:18-22; 57:9-16 and 58:14-18.

(vi)    The determination of policies, their enforcement, and compliance comes from centralized management. *See id*. at 34:18-35:5; 38:14-39:2; and 64:15-22.

(vii)   All Covered Employees were subject to the same human resources, payroll department, and compliance efforts. *See id*. at 32:12-23.

Defendants' arguments that they are not a single integrated enterprise are meritless. *See* Opposition at 3-6. However, that some putative class members may be subject to different union agreements, or that Defendants operate the buildings through subsidiary LLCs does not defeat a finding that Defendants are a single integrated enterprise. That the subsidiaries do not own the Non-REIT buildings (*i.e.*, those buildings that are not part of the Clipper Realty trust) is irrelevant.

3

As shown, Clipper Realty LP and Clipper Equity LLC, provide the same services and are ultimately responsible for setting and administering the wage and hour policies of Class Members at all locations. Defendants' argument that Clipper Equity LLC only performed Human Resources work is meritless, since it was the Human Resource department common to both Clipper Realty LP and Clipper Equity LLC that instituted the unlawful common payroll system.

Notwithstanding the overwhelming evidence, Defendants argue, "the policy giving rise to the single employer doctrine is not implicated at all in the absence of an employer-employee relationship between the plaintiff and the affiliate of the defendant at the time of the alleged wrong." Opposition at 6. However, Defendants do not argue that while the cited deposition testimony supporting a finding that Defendants operated as a single integrated enterprise is true, it was inapplicable when Plaintiff was employed. Since courts look at integration at the time of the wrong, not at a later time, there is no reason not to conclude that Defendants were an integrated enterprise. Similarly, Defendants' contention that "holding Clipper Realty [] responsible for the actions of a subsidiary is improper in this instance" because Plaintiffs were directed on-site by Mr. Gordon who was an employee of 50 Murray Acquisitions, is irrelevant. Defendants' witness testified that all of Defendants' entities were operated under centralized control. *See* **Exhibit G** at 34:18-35:5; 38:14-39:2; and 64:15-22.

Under the single integrated enterprise doctrine, it is irrelevant that Plaintiffs did not work at all of Defendants' locations because the operative considerations turn on *the entities' relationship to each other*, eliminating the need to plead a direct employment relationship, or other relationship of control, with each corporate defendant. A plaintiff must plead a direct employment relationship with at least *one* of the entities alleged to form part of the single integrated enterprise, lest plaintiff have no connection of any kind with the enterprise. But beyond pleading this, the

4

issue is the entities' relationship to each other, *not* their relationship to the plaintiff. Plaintiffs have provided ample evidence demonstrating Defendants' common operation, common application of polices and interrelation.

D. <u>THERE IS NO GENUINE DISPUTE THAT DEFENDANTS' WAGE PRACTICES RESULTED IN SHORTFALLS AND ARE APPLICABLE TO ALL CLASS MEMBERS</u>

i. ***Defendants' meal break deductions***

Defendants' production shows that Class Members were on the clock and still not paid for all punched time because Defendants' 1-hour automatic meal break deduction exceeded the actual time employees were clocked out for breaks. For example, Plaintiffs provide the records for Class Member Jose A. Gomez.

| Date | Date Worked | In | Out | Department | Job | Task | Hours | Type | Hours | Pay Type | Hours | Amount | Type | Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mon, 04/18/2016 | Mon 04/18/2016 | 7:45 AM | 12:05 PM | | | | 4.33 | Work Time | 8.75 | Regular | 8.42 | 0.00 | Break | 1.00 |
| | Mon 04/18/2016 | 12:45 PM | 5:10 PM | | | | 4.42 | Break Time | 0.67 | | | | | |
| | | | | | | | | Total Time | 9.42 | Pay Totals | 8.42 | 0.00 | Total | 1.00 |
| Date | Date Worked | In | Out | Department | Job | Task | Hours | Type | Hours | Pay Type | Hours | Amount | Type | Hours |
| Tue, 04/19/2016 | Tue 04/19/2016 | 7:44 AM | 12:05 PM | | | | 4.35 | Work Time | 8.68 | Regular | 8.33 | 0.00 | Break | 1.00 |
| | Tue 04/19/2016 | 12:44 PM | 5:04 PM | | | | 4.33 | Break Time | 0.65 | | | | | |
| | | | | | | | | Total Time | 9.33 | Pay Totals | 8.33 | 0.00 | Total | 1.00 |
| Date | Date Worked | In | Out | Department | Job | Task | Hours | Type | Hours | Pay Type | Hours | Amount | Type | Hours |
| Wed, 04/20/2016 | Wed 04/20/2016 | 7:45 AM | 12:04 PM | | | | 4.32 | Work Time | 8.78 | Regular | 8.47 | 0.00 | Break | 1.00 |
| | Wed 04/20/2016 | 12:45 PM | 5:13 PM | | | | 4.47 | Break Time | 0.68 | | | | | |
| | | | | | | | | Total Time | 9.47 | Pay Totals | 8.47 | 0.00 | Total | 1.00 |
| Date | Date Worked | In | Out | Department | Job | Task | Hours | Type | Hours | Pay Type | Hours | Amount | Type | Hours |
| Thu, 04/21/2016 | Thu 04/21/2016 | 7:50 AM | 12:05 PM | | | | 4.25 | Work Time | 8.50 | Regular | 8.20 | 0.00 | Break | 1.00 |
| | Thu 04/21/2016 | 12:47 PM | 5:02 PM | | | | 4.25 | Break Time | 0.70 | | | | | |
| | | | | | | | | Total Time | 9.20 | Pay Totals | 8.20 | 0.00 | Total | 1.00 |
| Date | Date Worked | In | Out | Department | Job | Task | Hours | Type | Hours | Pay Type | Hours | Amount | Type | Hours |
| Fri, 04/22/2016 | Fri 04/22/2016 | 7:53 AM | 12:05 PM | | | | 4.20 | Work Time | 8.37 | Regular | 6.58 | 0.00 | Break | 1.00 |
| | Fri 04/22/2016 | 12:52 PM | 5:02 PM | | | | 4.17 | Break Time | 0.78 | Overtime | 1.57 | 0.00 | | |
| | | | | | | | | Total Time | 9.15 | Pay Totals | 8.15 | 0.00 | Total | 1.00 |

The above time records demonstrate that Mr. Gomez is recorded as working by Defendants for hours greater than his actual compensated hours:

- 4/18/2016, Defendants record 8.75 hours (exclusive of break time), with a break from 12:05 PM – 12:45 PM, listed as 0.67 hours. **Defendants still automatically deducted a 1-hour break**.

- 4/19/2016, Defendants record 8.68 hours (exclusive of break time) with a break from 12:05 PM – 12:44 PM, listed as 0.65 hours. **Defendants still automatically deducted a 1-hour break**.

- 4/20/2016, Defendants record 8.78 hours (exclusive of break time) with a break a break from 12:04 PM – 12:45 PM, listed as 0.68 hours. **<u>Defendants still automatically deducted a 1-hour break</u>**.

- 4/21/2016, Defendants record 8.50 hours (exclusive of break time) with a break a break from 12:05 PM – 12:47 PM, listed as 0.70 hours. **<u>Defendants still automatically deducted a 1-hour break</u>**.

- 4/22/2016, Defendants record 8.37 hours (exclusive of break time) with a break a break from 12:05 PM – 12:52 PM, listed as 0.78 hours. **<u>Defendants still automatically deducted a 1-hour break</u>**.

**Exhibit T**, Dkt. 157-25.

Due to Defendants' automatic 1-hour meal break deduction, when employees' clock out for breaks shorter than one hour, they are still deducted for a full 1-hour meal break. Thus, despite Defendants recording for Mr. Gomez 43.08 hours of "Work Time[,]" Defendants only compensated him for his scheduled time—40-hours exactly. Class Members were subjected to the same unlawful practice. *See* **Exhibit R** (Summary of Sampled Class Members Records). Plaintiffs and Affiants attested that they suffered lost wages from Defendants' automatic meal break deductions. *See* Sanchez Decl. ¶ 12; Lugo Decl. ¶¶ 8-9; Hutchinson Decl. ¶ 6; Buie Decl. ¶ 4; Cabreja Decl. ¶ 7-8.

Defendants argue "[t]o the extent that any employees did voluntarily clock-in prior to the expiration of their full uncompensated meal period, there is no evidence in Plaintiffs' motion or in the record that those individuals advised Defendants that they were doing so, as is required, or that any employee performed compensable work during that time, whenever it may have occurred." Opposition at 10. However, Plaintiffs' allegation is that they did engage in work during that time. *See* Sanchez Decl. ¶ 12; Lugo Decl. ¶¶ 8-9; Hutchinson Decl. ¶ 6; Buie Decl. ¶ 4; Cabreja Decl. ¶ 7-8. Defendants' records show employees on the clock, but not being paid for all hours worked.

Additionally, Defendants' understanding of the law regarding automatic meal break deductions is completely wrong. Defendants argue, "If any employees conducted any work during

6

an uncompensated meal break, even one that is automatically deducted, the burden is on the employee to report that work, as only working time that the employer "knows or has reason to know" is occurring is compensable." Opposition at 7-8. However, here the burden does not shift to employee to report such time as working, and Defendants are wrong that the only way they could have known about a failure to compensate is through an employee report. The time records of Class Members' punch-ins and punch-outs for the meal breaks already inform Defendants that they are engaging in uncompensated work.

For example, Class Member Mr. Gomez was always automatically deducted a full 1-hour meal break even though his punch records show breaks lasting 0.67 hours, 0.65 hours, 0.68 hours, 0.70 hours, and 0.78 hours.  *See* **Exhibit T**, ECF 157-25. This is only an example of a single week but was not limited to only this week or only one Class Member. *See* **Exhibit R**. Defendants knew or had reason to know that employees were being deducted for 1-hour meal breaks for breaks lasting only about 40 minutes. Defendants therefore had the burden to pay employees for the time worked and cannot claim ignorance because the evidence of employees taking breaks for shorter times than the automatic meal break deductions is readily available. "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *see Kuebel v. Black & Decker Inc.*, 643 F.3d 352 at 363. Moreover, ("[a]n employer who has [actual or constructive] knowledge that an employee is working, and who does not desire the work [to] be done, has a duty to make every effort to prevent its performance," and "[t]his duty arises even where . . . the employee fails to report his . . . hours") (citations omitted). *See Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 288 (2d Cir. 2008).

7

Defendants' flawed understanding of the law was applied to all locations resulting in Class Members suffering underpayments which Defendants clearly knew about. Defendants have not argued that the violations detailed in Plaintiffs' Motion are not representative of Class Members as a whole, or that class-wide summary judgment is unwarranted.

### ii.    *Defendants' rounding*

Defendants' rounding policies cannot explain the wage shortfalls to Class Members. First, Defendants' rounding does not explain Defendants' failure to accurately record Class Members' hours worked and instead simply invent hours to result in employees being paid for exactly 8 hours per day. *See* **Exhibit S**; *see also* **Exhibit R**.  Many of the sampled employees such as Brandon Jimenz (**Exhibit S** at 149) and Memia Shkelzen *(id.* at 639), had their clock records manipulated to show **exactly** 8 hours of compensable work to the minute for nearly every day of their employment. For over half of the sampled Class members, 90% of their workdays were manipulated to look as if the workday lasted 8-hours. *See* **Exhibit S**; *see also* **Exhibit R**. Defendants also admitted to automatically clocking Class Members in and out for 8 hours a day. *See* **Exhibit G** at 39:15-40:15; 40:21-42:3. Courts have declined to accept at face value the "metronomic consistency" of time records that "are implausibly identical, week in and week out." *Hernandez v. JRPAC Inc.*, 2016 U.S. Dist. LEXIS 75430, *18 (S.D.N.Y. June 9, 2016).

Second, Defendants' contention that their rounding policy complied with the law does not justify Defendants treating meal breaks clearly lasting about 40 minutes as a 1-hour break and deducting a full 1-hour from Class Members' time worked. For example, for Class Member Jose A. Gomez, Defendants always automatically deducted a full 1-hour meal break from his time worked when his punch-in and punch-outs show breaks lasting 0.67 hours, 0.65 hours, 0.68 hours, 0.70 hours, and 0.78 hours.  *See* **Exhibit T**, Dkt. 157-25. *See* **Exhibit R** (Summary of Sampled Class Members Records).

E.    THERE IS NO GENUINE DISPUTE THAT THE TIME SHAVED HOURS WERE COMPENSABLE AND NOT DE MINIMIS

While it may be the case that, under 29 C.F.R. § 785.47, "[i]n recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded [as] courts have held that such trifles are de minimis" (*see Anderson* v. *Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946)), this is not the case here, and Defendants' electronic time keeping records demonstrate that as a practical administrative matter, they were capable of precisely recording all time worked for payroll purposes.

Here, the daily time shaved hours cannot be considered de minimis. For example, for Class Member Mr. Gomez, Defendants always automatically deducted a full 1-hour meal break from his time worked when his punch-in and punch-outs show breaks lasting 0.67 hours, 0.65 hours, 0.68 hours, 0.70 hours, and 0.78 hours. *See* **Exhibit T**, Dkt. 157-25. *See also* **Exhibit R**. (Sampled Class Members Records). "An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him. *See Glenn L. Martin Nebraska Co.* v. *Culkin,* 197 F. 2d 981, 987 (C.A. 8, 1952), cert. denied, 344 U.S. 866 (1952), rehearing denied, 344 U.S. 888 (1952), holding that working time amounting to $1 of additional compensation a week is "not a trivial matter to a workingman," and was not de minimis; *Addison* v. *Huron Stevedoring Corp.,* 204 F. 2d 88, 95 (C.A. 2, 1953), cert. denied 346 U.S. 877, holding that "To disregard workweeks for which less than a dollar is due will produce capricious and unfair results." *Hawkins* v. *E. I. du Pont de Nemours & Co.,* 12 W.H. Cases 448, 27 Labor Cases, para. 69,094 (E.D. Va., 1955), holding that 10 minutes a day is not de minimis.

9

F. <u>THERE IS NO GENUINE DISPUTE THAT PLAINTIFFS AND CLASS MEMBERS WERE MANUAL WORKERS  ENTITLED TO BE PAID ON A WEEKLY BASIS</u>

Defendants dispute whether concierges were manual workers. However, deposition testimony from Defendants' witness confirms there is no dispute regarding concierges. **"Q:** They're I guess dealing with the packages? **A:** Yes. Announcing guests…Mostly receiving packages **Q:** So when I go into my building like during the daytime, I'm like wow, the amount of packages is amazing, and the guy is telling me that's like almost his entire job. Is that true for your concierges? **A:** Yes. *See* **Exhibit G** at 67:14-8. There is no conceivable scenario where handling packages does not qualify as manual work. Moreover, Defendants' witness agreed that handling packages was "like almost the entire job" for Defendants' concierges. Surely if it is almost their entire job it is certainly over 25% and qualifies them as manual workers. Defendants also do not limit this statement to any specific building, making summary judgment on Plaintiffs' manual worker claim applicable class-wide at all of Defendants' locations. *See Id*. Defendants remaining arguments regarding the amendments to NYLL § 191 are premature since Plaintiffs are not seeking damages at this time, but only summary judgment as to liability.

G. <u>THERE IS NO GENUINE DISPUTE THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR NOTICE AND STATEMENT CLAIMS</u>

Defendants argue that "Plaintiffs here, like the Plaintiff-Appellant in Guthrie, do not have standing to pursue this claim in federal court and have not alleged an injury-in-fact resulting from the alleged failure to provide the wage notices and wage statements." Opposition at 18. However, Defendants argument misinterpret the Second Circuit's decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 2024 U.S. App. LEXIS 22103 (2d Cir. 2024).

In that case, the Second Circuit criticized some lower courts for recognizing standing for WTPA violations "on the theory that 'the concrete harm necessary for Article III standing is captured in the legislative purpose of the WTPA,'" observing that this approach was expressly

10

rejected by the Supreme Court in *TransUnion*. *Id*. at *13-14. The Second Circuit also clarified that there was no categorical Article III bar on WTPA claims observing that other "district courts have imposed too high a burden on plaintiffs-employees in § 195 cases." *Id*. at *15. Instead of adopting either of the more extreme approaches, the Second Circuit, "agree[d] with those district courts that have held that a plaintiff must show some causal connection between the lack of accurate notices and the downstream harm." *Id*. at *14. The Second Circuit specifically acknowledged the possibility that a "lack of [WTPA] notices and statements might impair an employee's ability to seek relief for violations they may not have information about" and merely concluded that plaintiff Guthrie had failed to adequately allege this in his complaint. *Id*. at *17 (internal quotes and citations omitted). Here, it is clear that Plaintiffs have indeed alleged that Defendants' violations impaired their ability to seek relief due to a lack of information. *See* Sanchez Decl. [ECF 84]; Lugo Decl. [ECF 81]; Hutchinson Decl. [ECF 82]; Buie Decl. [ECF 158]; Cabreja Decl. [ECF 159].

Defendants' records also show that for many Class Members they either failed to provide any wage notices or provided blank forms for Class Members to sign. Dkt. 156 at 12-13. Defendants' records also show that they failed to provide accurate wage statements to Class Members due to the time shaving alleged by Plaintiffs and proven by Defendants' records. Plaintiffs are therefore entitled to summary judgment on their notice and statement claims.

H. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIMS FOR LIQUIDATED DAMAGES AND A THREE-YEAR STATUTE OF LIMITATIONS

Defendants argue that "[t]he court may reduce or deny liquidated damages if the employer can show that "the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing it was not a violation of [FLSA]." Opposition at 20. Defendants also note that the standard is similar under NYLL. *Id*. at 20-21. But here, there are no good faith grounds for making up time entries or for deducting 1 hour for meal breaks when

11

employees' records show them as only taking breaks lasting about 40 minutes. *See* **Exhibit T**, **Exhibit R**. Defendants actions were clearly willful because the punch records showed that Class Members were on the clock, so should have been paid for their time. A three-year statute of limitations applies.

## II. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Plaintiffs' motion for summary judgment be granted in its entirety.

Dated: New York, New York

     August 25, 2025

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By:    */s/ C.K. Lee*
       C.K. Lee, Esq. (CL 4086)

       148 West 24th Street, 8th Floor
       New York, NY 10011
       Tel: (212) 465-1188
       Fax: (212) 465-1181
       *Attorneys for Plaintiffs,*
       *FLSA Collective Plaintiffs,*
       *and the Class*

**WORD COUNT CERTIFICATE**

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York. This certificate certifies that the document complies with the word count limit. Compliance relied on the word count of the word-processing system used to prepare the document. The total number of the words in this Memorandum, exclusive of the caption, table of contents, table of authorities and signature block is 3,497 words.

Dated: August 25, 2025                     /s/ *C.K. Lee*
                                           C.K. Lee, Esq.

13